UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                        :

CONSTRUTORA NORBERTO ODEBRECHT S.A.,     :

       Plaintiff,                 :

    - v. -                       :

GENERAL ELECTRIC COMPANY, GENERAL     :   07 Civ. 8014 (CM)
ELECTRIC INTERNATIONAL, INC., GE
INFRASTRUCTURE, INC., GE POWER SYSTEMS,  :
INC., GE ENERGY LLC and GE HYDRO POWER, INC.,
                        :

       Defendants.              :

                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT

Richard A. Rothman, Esq.
Vernon Broderick, Esq.
David W. Dummer, Esq.
Jessie B. Mishkin, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Counsel for Defendants General Electric Company, General Electric International, Inc., GE Infrastructure, Inc., GE Power Systems, Inc., GE Energy LLC And GE Hydro Power, Inc.,*

**Dated: September 20, 2007**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

ARGUMENT ........................................................................................................ 11

I.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF
     FILED THIS ACTION IN VIOLATION OF AN EXCLUSIVE FORUM
     SELECTION CLAUSE ................................................................................... 11

    A.   The Second Circuit Has a "Strong Policy" Favoring the
          Enforcement of Forum Selection Clauses............................................ 11

    B.   The MOM Is Expressly Subject To the Terms of the NDA .................... 13

    C.   Plaintiff's Claims Arise Under the NDA .............................................. 14

II.  EVEN ASIDE FROM THE EXCLUSIVE FORUM SELECTION
     CLAUSE, THIS CASE NEVER SHOULD HAVE BEEN FILED IN THE
     U.S. AND SHOULD BE DISMISSED ON FORUM NON
     CONVENIENS GROUNDS............................................................................. 15

    A.   Plaintiff's Choice Of Forum Is Entitled To Little Deference ................. 16

    B.   Brazil Is An Adequate Alternative Forum ............................................ 17

    C.   The Balance of the Private and Public Interest Factors Identified In
          Gulf Oil Weighs Overwhelmingly In Favor of Brazil............................. 18

III. THE COURT SHOULD IMPOSE SANCTIONS BY REASON OF
     PLAINTIFF'S IMPROPER FILING AND CONTINUATION OF THIS
     LAWSUIT IN NEW YORK............................................................................ 23

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

Page

## CASES

In re 60 E. 80th St. Equities, Inc., 218 F.3d 109 (2d Cir. 2000) ........................................24

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) ................................................................23

Esheva v. Siberia Airlines, No. 06 Civ. 11347, 2007 WL 1879179 (S.D.N.Y.
    June 28, 2007) ........................................................................................................20

Fagan v. Deutsche Bundesbank, 438 F. Supp. 2d 376 (S.D.N.Y. 2006) ..........................20

First Union Nat'l Bank v. Paribas, 135 F. Supp. 2d 443 (S.D.N.Y. 2001),
    aff'd sub nom, First Union Nat'l Bank v. Arab African Int'l Bank,
    48 Fed. App'x 801 (2d Cir. 2002) ............................................................ 16, 17,
    ............................................................................................................................19, 20

Gross v. British Broad. Corp., 386 F.3d 224 (2d Cir. 2004) .............................................18

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) ....................................................15, 16, 18,
    ...................................................................................................................... 21, 22

Iragorri v. United Techs. Corp., 274 F.3d 65 (2d Cir. 2001) ...................................16, 17, 18

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) ...........................................11, 12

Medoil Corp. v. Citicorp, 729 F. Supp. 1456 (S.D.N.Y. 1990) .........................................11

Mendes Junior Int'l Co. v. Banco Do Brasil, S.A., 15 F. Supp. 2d 332
    (S.D.N.Y. 1998) ......................................................................................................18

Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007) ...............................................12

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) ............................................................17

Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,
    991 F.2d 42 (2d Cir. 1993) .....................................................................................14

Rogen v. Memry Corp., 886 F. Supp. 393 (S.D.N.Y. 1995) .............................................11

Schlaifer Nance & Co. v. Warhol, 194 F.3d 323 (2d Cir. 1999) ......................................24

Tel. Sys. Int'l, Inc. v. Network Telecom PLC, 303 F. Supp. 2d 377 (S.D.N.Y.
    2003) ......................................................................................................................20

**TABLE OF CONTENTS**
**(continued)**

**Page**

<u>In re Union Carbide Corp.</u>, 634 F. Supp. 842 (S.D.N.Y. 1986) ........................................22

<u>Van Der Velde v. Philip Morris, Inc.</u>, No. 02 Civ. 783, 2004 WL 48891
       (S.D.N.Y. Jan. 9, 2004)..........................................................................16, 17

**RULES AND STATUTES**

Fed. R. Civ. P. 11 ...................................................................................................23

Fed. R. Civ. P. 12 ...................................................................................................12

28 U.S.C. § 1406....................................................................................................12

28 U.S.C. § 1927................................................................................................23, 24

This is a motion on behalf of all defendants seeking (1) dismissal of the Complaint filed by Plaintiff Construtora Norberto Odebrecht S.A. ("CNO"), and (2) the imposition of sanctions.

## PRELIMINARY STATEMENT

This is an extraordinary lawsuit in which a Brazilian corporation has brought suit in this District asserting claims for breach of agreements pertaining to a Brazilian infrastructure project, in which the Brazilian government has been intimately involved, based on events that occurred in Brazil. The agreements are governed by Brazilian law and include a mandatory forum selection clause that required the plaintiff to sue in its own home court — the Central Court of the City of São Paulo. Nevertheless, on the eve of the Rosh Hashanah holiday, plaintiff sued in New York and sought a TRO, which was denied by this Court on September 13. It was immediately clear from plaintiff's own submissions to this Court that all the significant events relating to this dispute occurred in Brazil, and that virtually all the party and non-party witnesses reside there. It was equally clear from plaintiff's own submissions that Brazil has a paramount interest in adjudicating this dispute, while New York has none.

What was not apparent from plaintiff's Complaint or TRO submission — but is very clear now — is that the reason plaintiff had disregarded the mandatory forum selection clause and sued here is that plaintiff is the subject of a major antitrust investigation in Brazil in which the Brazilian antitrust agency, the Secretariat of Economic Law (the "SDE"), had been investigating plaintiff's conduct in connection with the very non-compete clause it seeks to enforce against GE here. Anticipating an adverse decision from the SDE in Brazil, plaintiff came running to this Court to

circumvent the SDE's authority by seeking a ruling that would give plaintiff a pretext to enforce the exclusivity clause against GE even if the SDE invalidated it.

In denying plaintiff's TRO motion, this Court properly made clear that it had no intention of interfering with or stepping on the toes of the Brazilian government. Moreover, even plaintiff's counsel acknowledged at the hearing that if the SDE took action in Brazil it would be "game" in New York, with plaintiff's only recourse being to appeal the SDE's decision in Brazil. Nevertheless, what happened next was even more extraordinary: On the morning after the TRO hearing, the SDE issued an Order (the "SDE Order") in which it found that there was significant evidence that plaintiff had indeed violated the Brazilian antitrust laws; opened a formal investigation against plaintiff; and issued a provisional remedy which immediately cancelled the exclusivity clause. The SDE Order gave plaintiff five days to appeal in Brazil. Remarkably, despite these events, plaintiff refused to voluntarily dismiss this action, and continued to threaten GE with the exclusivity clause even as it pursued an appeal in Brazil and will now be required to defend itself and the exclusivity clause in the formal investigation in Brazil.

As demonstrated below, it is readily apparent that this case never should have been brought here, and plaintiff's attempt to use this Court as an instrument to circumvent and frustrate the Brazilian Government's investigation was improper from the outset and has only grown more so since the TRO hearing. The Complaint should be dismissed for two independent reasons. First, it was filed in clear violation of the exclusivity clause contained in the Non Disclosure Agreement (the "NDA") between these parties. And, while plaintiff has attempted to circumvent the requirement that it sue in Brazil by purporting to sue under a "Minutes of Meeting" agreement between the

2

parties (the "MOM"), rather than the NDA, this transparent ploy is futile because (1) the MOM is expressly subject to the terms of the NDA; and (2) plaintiff's principal claims arise under the NDA in any event (Point I, *infra*). <u>Second</u>, even aside from plaintiff's violation of the exclusivity clause, the Complaint should be dismissed on <u>forum non conveniens</u> grounds, as plaintiff's decision to sue in New York was an exercise in blatant forum shopping, and all the private and public interest factors relevant to a <u>forum non conveniens</u> determination weigh overwhelmingly — indeed entirely — in favor of Brazil (Point II, *infra*). In fact, because it is clear that neither this Court nor GE should have been burdened with this lawsuit, including this motion, the Court should impose substantial sanctions against plaintiff (Point III, *infra*).

## STATEMENT OF FACTS

The facts which demonstrate that this case was filed and has been maintained in the United States improperly are clear from the Complaint and the motion papers filed by plaintiff itself in this Court, from the documents annexed to those papers, and from the recent Order and report (the "Technical Note") issued by the SDE in Brazil. They are not subject to reasonable dispute.

***The Rio Madeira Project*** — This dispute concerns the Rio Madeira Project (the "Project"), which calls for the construction and operation of two hydroelectric power plants at two locations on the Madeira River in Brazil. (Declaration Of José Bonifácio Pinto Júnior In Support Of Plaintiff's Motion For A Temporary Restraining Order And A Preliminary Injunction ("Pinto Decl.") at ¶ 4.)  The Project is part of the "Economic Growth Acceleration Plan proposed by the Brazilian Government to address the country's expected infrastructure needs over the next decade."  (<u>Id.</u>) The Brazilian government has played a central role in the project since its inception, in part because the

project "will use public lands and waterways," and "will require a government concession to operate the resulting power facility." The Brazilian government required "that three separate preliminary studies be conducted and accepted by the Brazilian Government before the government will set a date to auction the concession." (Id. at ¶ 9.)

As Plaintiff has asserted, the Project is of critical importance to Brazil and its citizenry for multiple reasons. The plants will provide "state-of-the-art hydroelectric power plants" with minimal environmental impact and will generate power to meet the growing demand for power in Brazil, where the GDP is expected to grow at 4% per year and the energy demand increase an average of 5% per year each over the next ten years. (Pinto Decl. at ¶¶ 29-30; Memorandum of Law In Support of Plaintiff Construtora Norberto Odebrecht S.A.'s Motion For A Temporary Restraining Order And Preliminary Injunction ("Plaintiff Mem.") at 6.)

***The Non-Disclosure Agreement (NDA ) And the Minutes Of Meeting Agreement (MOM)*** — There are two agreements at issue in this dispute: (1) the NDA (also sometimes referred to as the "Confidentiality Agreement"), dated May 16, 2005, and (2) the MOM, dated January 11, 2006. The NDA contains an exclusive forum selection clause that required that this case be brought in Brazil. Thus, the parties agreed in the NDA that "the central court of the City of São Paulo" would have "jurisdiction to resolve any disputes arising from the [NDA], ***to the exclusion of any other***, no matter how privileged." (NDA at ¶ 19; emphasis added.) In light of the importance of the Project to Brazil and its citizenry, the inclusion of this clause made perfect sense and, indeed, it would have been anomalous for the parties to have selected any other forum.

The MOM expressly provided that *"This MOM is subject to the Confidentiality Agreement [i.e., the NDA] signed by the parties and currently in force."*

4

(MOM at ¶ 5(a); emphasis added.) The MOM also provided that in the event that GE exited the construction consortium, it would continue to "maintain the Confidentiality Agreement until its expiry and further agrees not to pursue this Project with any other Party." Id. Other than through its incorporation of the terms of the NDA, the MOM contained no provision regarding the confidentiality of any information exchanged by the parties concerning the Project.

*The "Exclusivity Clause"* — The exclusivity obligation that plaintiff seeks to enforce in this action consists of the clause from paragraph 5(a) of the MOM quoted immediately above, as well as one other which similarly provided that if no equipment supply contract was executed "then this MOM shall expire and GE agrees not to pursue this project with any other parties." (See MOM at ¶ 5(o).) CNO also entered into confidentiality and exclusivity agreements with other suppliers of turbines and generators. (Pinto Decl. at ¶¶ 38, 41; Technical Note, Section II.1.4C at ¶ 104 (Technical Note translation is attached to the Broderick Affidavit as Exhibit A).) But for these agreements, these suppliers would be free to enter into consortiums with other entities in competition with CNO.

*GE's Voluntary Withdrawal From Participation In The Project With CNO* — On March 15, 2006 — less than two months after entering into the MOM — GE informed CNO that it was voluntarily withdrawing from participation in the Project with CNO. (Pinto Decl., Ex. G.) As the SDE has initially found, as of GE's withdrawal the prevailing flow of information had been mostly from GE to CNO and that any information provided by CNO was largely stale or now public in any event. (Technical Note, § II.1.4C at ¶ 114.)

*The SDE Investigation of Plaintiff and its Exclusivity Clauses* — By no later than June 2007, the SDE commenced a review to determine whether CNO had used the exclusivity

5

clauses contained in its agreements with GE and other suppliers to restrain competition in the bidding for the Project. (Technical Note, § I.2 at ¶ 7.) In addition to CNO's agreements with GE, the SDE has also been investigating its agreements with VA Tech Hydro Brasil Ltda., Alstom Hydro Energia Brasil Ltda., and Voith Siemens Hydro Power Generation Ltda. (Technical Note, § II.1.4C at ¶ 104.) CNO was not only fully aware of the SDE's review, but provided documents and other information to SDE in connection with it. (Technical Note, § I.2 at ¶ 7.)

***CNO's New York Lawsuit and TRO Application*** — Although GE had made clear to CNO, among others, that it intended to honor its exclusivity commitment under the MOM unless and until the SDE invalidated the clause, CNO filed this lawsuit on the eve of Rosh Hashanah alleging that GE had violated the exclusivity clause of the MOM by joining forces in Brazil with two other Brazilian companies — Camargo Corréa S.A. and IESA Equipamentos e Montagens, S.A. ("IESA") — to form a competitive consortium.

Although plaintiff purported to sue for only a breach of the exclusivity clause in the MOM, a cursory review of the Complaint and TRO affidavits immediately confirmed that virtually all of plaintiff's allegations concern the alleged misuse of confidential information. (See Broderick Aff., Ex. B.) As noted above, however, only the NDA — *not* the MOM — provided for protection of confidential information, and it soon became apparent that plaintiff was purporting to sue under the MOM in the hope of circumventing the forum selection clause contained in the NDA, the only references to which were buried in two reduced-font footnotes in plaintiff's papers. Plaintiff also failed to disclose to this Court that the SDE was in the midst of an investigation — in which plaintiff had made submissions to the Government — to determine whether the very exclusivity clause plaintiff sought to enforce here violated Brazil's competition laws. A review of the SDE's Technical Note, which describes the SDE's extensive investigation,

confirms that plaintiff's failure to make full disclosure of the SDE investigation to this Court was extremely problematic. (See Broderick Aff. Ex. A.) The SDE Report also reflects that CNO's failure to make important disclosures regarding this matter has not been limited to this proceeding, as the SDE noted that CNO had failed to disclose the existence of the GE exclusivity/non-compete agreement to the SDE, despite an unambiguous request requiring such disclosure. (Technical Note, Section I.3.4 at ¶ 51.) Finally, CNO also failed to disclose that Marcelo Antonio Muriel, an attorney who submitted an affidavit in support of CNO's TRO application, has personally been representing GE in active litigation and has a clear conflict of interest.[1]

One thing that *was* immediately clear from plaintiff's Complaint and TRO papers was that, aside from the initial negotiation of the NDA and the MOM (as to which CNO identified one U.S. witness in Schenectady), the events relating to the wrongful conduct alleged in the Complaint occurred in Brazil. Moreover, virtually all the significant witnesses for purposes of any trial of this case reside in Brazil — including non-party witnesses who would not be subject to subpoena in New York, such as employees of Furnas, IESA, Camargo Corréa, VA Tech Hydro Brasil Ltda., and Alstom Hydro Energia Brasil Ltda. (See e.g., Compl. at ¶¶ 4-6, 23, 24, 26, 51, 52, 58, 79, 81-85, 90, 95.) In addition, various representatives of the Brazilian government who have been involved in the Project would also be important witnesses, not to mention expert witnesses who would have to testify as to Brazilian law. (See e.g., Compl. ¶¶ 22-24, 26, 29-32, 34-38.)

***The TRO Hearing*** — The TRO hearing was held on the morning of September 13, 2007. (A copy of the September 13, 2007 TRO hearing transcript is attached to the Broderick

---

[1] Moreover, CNO has failed to withdraw Mr. Muriel's affidavit or to confirm that he has been removed from this case, even after the conflict was brought to counsel's attention and such confirmation was requested.

Affidavit as Exhibit C.) At that hearing, counsel for GE explained the nature of the SDE investigation to the Court and expressed suspicion that the only discernable reason why CNO, a major Brazilian company, would disregard the forum selection clause which designated its own home court as the exclusive forum was to set up a conflict between this Court and the SDE, whose ruling was anticipated. (See Broderick Aff., Ex. C at 4, 13.) Counsel also provided the Court with four pages of excerpts from CNO's own motion papers (See Broderick Aff., Ex. B.) demonstrating that the gravamen of the Complaint consists of alleged violations of the NDA's confidentiality clauses. (Broderick Aff., Ex. C at 9-11.) Counsel also explained that independent of the mandatory forum selection clause, the case was subject to dismissal on forum non conveniens grounds. (See id. at 16-20.)

At the conclusion of the hearing, the Court denied the TRO motion. (Id. at 28-29.) Although it declined to dismiss the case sua sponte, it did make clear that it had no intention of interfering with the proceedings of the Brazilian government and would be interested in knowing how quickly the SDE intended to act. As the Court stated:

> And I am really concerned and I have been concerned since I started reading papers about some sort of investigation about what that investigation is. And your papers don't really tell me what it is or what is going on in Brazil and how this relates to that Brazilian investigation.
>
> **************************************************
>
> I don't know how much the Brazilian government is willing to share with an American court, but I am not interested in stepping on the toes of the Brazilian government and would certainly be interested to know what they are about and how quickly they are likely to resolve this matter.

(Id. 24, 30). In response to the Court's inquiry about the investigation in Brazil, CNO's counsel made clear that if the SDE took action to invalidate the exclusivity clause, CNO's only recourse would be to appeal that ruling in Brazil:

> If there is a decree that GE is free, despite this enforceable contract, fine, that's the game. You have an appeal in Brazil. But our focus here, until the Brazilian government acts, then this is an enforceable contract and they should stand clear.

(Id. at 25.)

***The SDE Decision And CNO's Improper Continuation Of This Lawsuit*** — On the very next morning, the SDE issued its Order declaring the "*immediate cancellation*" of the exclusivity clause in the MOM and ordering that CNO would be liable for 100,000 Reais per day [roughly $53,000 a day] as a fine for non-compliance with the Order. (Emphasis added). The SDE also released a 42 page Technical Note. In addition, the SDE Order, among other things: (1) accepted the Technical Note; (2) initiated a formal investigation of whether CNO had violated Brazilian antitrust laws; (3) partially canceled the exclusivity clauses between CNO and the other suppliers of turbines and generators. (SDE Order (Broderick Aff., Ex. D)); and (4) provided that CNO would have 5 days to appeal the SDE Order.

In issuing the Order, the SDE adopted the analysis contained in the Technical Note, which contradicts allegations that CNO has made here. For example, the Technical Note states that (1) the flow of confidential information was mostly from GE to CNO; (2) most of the information provided by CNO is now publicly available in feasibility studies; and (3) the other information CNO provided is outdated. (See Technical Note, II.1.4C at ¶ 114.) In addition to explaining the basis for the Order, the Technical Note confirmed that CNO had provided documents and other information to the SDE in an attempt to defend and justify the exclusivity clauses that the SDE had canceled. (See Technical Note, II.1.4C at ¶¶ 100-114.)

The timing of the Order tended to confirm GE's suspicion as to why CNO filed its TRO motion on the eve of the Holiday — and that it was indeed seeking to use this Court to circumvent and/or frustrate the proceedings of the Brazilian government. That became even clearer in the ensuing days. Nevertheless, in light of the action taken by SDE — and the statements made by both the Court and plaintiff's counsel at the TRO hearing — GE assumed that CNO would promptly appeal the SDE Order in Brazil and dismiss its U.S. lawsuit, relieving the Court and GE of the need to devote any further resources to this duplicative proceeding in New York. GE was wrong, however, as CNO refused to dismiss its lawsuit. In doing so, it claimed that despite the unambiguous language in the SDE Order providing for the "immediate cancellation" of the exclusivity clause, and the daily fine for non-compliance with the Order, the Order was merely a "recommendation" to another Brazilian agency — the CADE. (A copy of the email from Howard L. Vickery, Esq. to Richard A. Rothman, Esq., dated September 15, 2007, is attached to the Broderick Affidavit as Exhibit E.)) CNO then went further and, in clear disregard for the SDE Order, threatened that it would seek to hold GE liable if it acted in accord with the Order.

On the same day — September 17— CNO filed an appeal from the SDE Order in the form of a mandamus petition with a court in Brazil. GE understands that the mandamus papers were filed under seal, and is thus unaware of the arguments CNO has made in those papers. Regardless of the positions CNO has taken, however, or the outcome of its appeal, the appeal highlights the fact that Brazil has a paramount interest in resolving this dispute; that there are active proceedings in Brazil regarding the validity

of the contractual clause plaintiff seeks to enforce here; and, that plaintiff's resort to this

Court was improper to begin with and has grown even more so with each passing day.

## ARGUMENT

**I.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FILED THIS ACTION IN VIOLATION OF AN EXCLUSIVE FORUM SELECTION CLAUSE**

The exclusive forum selection clause contained in paragraph 19 of the

NDA provided that: "The Parties elect the central court of the City of São Paulo as

having jurisdiction to resolve any disputes arising from the Agreement, ***to the exclusion***

***of any other***, no matter how privileged." (NDA at ¶ 19 (emphasis added)). As a matter of

law, this contractual clause is enforceable, and plaintiff filed this case in knowing

violation of it. Moreover, plaintiff's transparent attempt to avoid the exclusive forum

selection clause by purporting to sue under the MOM rather than the NDA is groundless

because: (1) the MOM is expressly subject to and incorporates the terms of the NDA; and

(2) in any event, plaintiff's own submissions to this Court confirm that its principal

claims actually arise, if at all, under the NDA.

### A.     The Second Circuit Has a "Strong Policy" Favoring the Enforcement of Forum Selection Clauses

The Second Circuit has a "strong policy" of enforcing forum selection

clauses. See Rogen v. Memry Corp., 886 F. Supp. 393, 395 (S.D.N.Y. 1995). Such

clauses are "prima facie valid and should be enforced unless enforcement is shown by the

resisting party to be 'unreasonable' under the circumstances." Medoil Corp. v. Citicorp,

729 F. Supp. 1456, 1459 (S.D.N.Y. 1990) (quoting M/S Bremen v. Zapata Off-Shore Co.,

407 U.S. 1, 10 (1972)). "If the clause is the product of 'arm's length negotiation by

experienced and sophisticated businessmen,' it should be enforced absent 'some compelling and countervailing reason.'" Id.

When a party disregards a contractual forum selection clause that exclusively designates a foreign venue and commences litigation in a U.S. federal court, the case is subject to dismissal under either 28 U.S.C. § 1406(a), Rule 12(b)(6), or Rule 12(b)(3) of the Federal Rules of Civil Procedure. The Second Circuit employs a four-part test to evaluate dismissal. See Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). The Court first asks three questions:

1.    Was the clause reasonably communicated to the party resisting enforcement?

2.    Is the clause mandatory or permissive?

3.    Are the claims and parties involved in the suit subject to the forum selection agreement?

Id. If the Court determines that the clause was communicated to the resisting party, is mandatory, and covers the claims and the parties, "it is presumptively enforceable." Id. The Court then ascertains whether the resisting party has rebutted the presumption by showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. (citing Bremen, 407 U.S. at 15).

In this case, plaintiff does not deny, nor could it, that the forum selection clause was "reasonably communicated" to it and that it was aware of the clause. Nor is there any question that the clause was mandatory, as the parties explicitly selected the Central Court of the City of São Paulo "*to the exclusion of any other.*" (NDA at ¶ 19 (emphasis added)) Similarly, plaintiff, a sophisticated Brazilian corporation, cannot contend that the selection of Brazil as the exclusive forum for the resolution of disputes

regarding this major Brazilian infrastructure project was unreasonable or unjust. Rather, plaintiff has attempted to avoid the exclusive forum selection clause by purporting to sue under the MOM, rather than the NDA, and contending that the claims in its Complaint are not subject to the forum selection clause in the NDA. This attempt to circumvent the mandatory forum selection clause is groundless for two independent reasons.

**B.      The MOM Is Expressly Subject To the Terms of the NDA.**

First, as previously noted,  ¶ 5(a) of the MOM expressly provided that it was subject to the NDA: *"This MOM is subject to the Confidentiality Agreement signed by the parties and currently in force."* In the face of this clear contractual language, plaintiff has claimed that the NDA was merely a temporary arrangement, and that "the January 11, 2006 Agreement [i.e., the MOM] was a wholly separate contract from the confidentiality agreement signed with the GE Joint Venture." (Compl. at ¶ 62.) Both arguments are specious. The NDA, signed in 2005, has a six-year term (NDA at ¶ 8) and, if anything, it was the MOM that was temporary. It expressly provided that the NDA would remain in effect even if GE did not enter the Construction Consortium that is the subject of the MOM. (MOM at ¶  5(a).)

With respect to the meaning of the clause of the MOM which expressly provided that the MOM is subject to the NDA, the Court's observation at the September 13 Hearing was on the mark:

> [M]y instinct as an American lawyer is to say that that imports the terms of the non-disclosure agreement into the MOM, and it means that the scribe who was scribbling down this agreement didn't have to rewrite all of those terms, they just incorporate them by reference. That, it seems to me, is the most logical reading of the English words which are the only ones I can read . . . .

13

(Sept. 13 Tr. at 23.) In fact, the Second Circuit (interpreting New York law) has held that a *"subject to"* clause followed by a capitalized document title, as is the case here, incorporates that document. See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 47 (2d Cir. 1993). Moreover, plaintiff's attempt to ignore this critical clause and to contend that the MOM and the NDA are wholly separate contracts was flatly contradicted by its own assertion in support of its TRO application that "because of the nature of the Project, the exclusivity and confidentiality provisions are dependent on each other . . . ." (Pinto Decl. ¶ 75.) Likewise, Mr. Pinto's September 5, 2007 letter to GE, which is specifically referenced in the Complaint (¶ 88) and attached to Mr. Pinto's Declaration (as Exhibit N) confirms that plaintiff's representation to this Court that the NDA and the MOM were "wholly separate contracts" is false.

Because the MOM was expressly subject to the terms of the NDA, plaintiff's commencement of this case in New York constituted a clear violation of the mandatory forum selection clause contained in paragraph 19 of the NDA.

### C.  **Plaintiff's Claims Arise Under the NDA.**

As the affidavit of Marcelo Antonio Muriel submitted in support of plaintiff's TRO application states, Brazilian courts will enforce a mandatory forum selection clause contained in an agreement to the extent that a claim is "arising from" the agreement. (Muriel Aff. at ¶ 7.) While plaintiff has attempted to avoid the NDA's forum selection clause by purporting to sue for breach of the MOM, rather than the NDA, a cursory review of their Complaint and TRO motion papers confirms that virtually all their allegations concern the supposed misuse of confidential information and actually arise, if at all, under the NDA.

14

During the September 13 Hearing, GE's counsel provided the Court with four pages of excerpts from plaintiff's own motion papers (Broderick Aff., Ex. B) which make crystal clear that plaintiff's attempt to mis-label its legal claim notwithstanding, its allegations of wrongdoing clearly arise under the NDA. (See, e.g., Pl. Mem. at 3, 17-18, 21; Pinto Decl. ¶¶ 16, 22.) A cursory review of the Complaint should remove any remaining doubt on that score. Moreover, those claims arise *exclusively* under the NDA, if at all, because contrary to plaintiff's erroneous contention that in the MOM "General Electric agreed . . . to keep confidential any proprietary information it received from CNO" (Pl. Mem. at 14; see also Compl. ¶ 70), the MOM does <u>not</u> contain a separate confidentiality provision. Rather, the only protection for confidential information under the MOM is based on the confidentiality provisions of the NDA which are incorporated into the MOM by ¶ 5 (a) of the MOM — just like the mandatory forum selection clause.

In short, in light of *both* the express incorporation of the NDA into the MOM *and* the substance of plaintiff's claims, which arise under the NDA, it is clear that plaintiff's attempt to do an end run around the Brazilian Government by suing here constituted a clear violation of the parties' mandatory forum selection clause. Accordingly, the Complaint should be dismissed at once.

## II.   <u>EVEN ASIDE FROM THE EXCLUSIVE FORUM SELECTION CLAUSE, THIS CASE NEVER SHOULD HAVE BEEN FILED IN THE U.S. AND SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.</u>

<u>Forum</u> <u>non</u> <u>conveniens</u> is a common law doctrine that permits dismissal of a lawsuit when jurisdiction and venue are proper, but an alternative forum would best serve the convenience of the parties and the principles of justice. See <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 507 (1947). In assessing the appropriateness of a <u>forum</u> <u>non</u>

conveniens dismissal, courts engage in a three-step process, with the "first level of inquiry" being a determination of the level of deference to afford the plaintiff's choice of forum. Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir. 2001). Next, the court considers whether there is an adequate alternative forum. Id. Finally, the court must weigh a series of public and private interest factors – first articulated by the Supreme Court in Gulf Oil – to determine whether to retain the case or dismiss it in favor of the alternative forum, with no single factor or group of factors being dispositive. See id. at 73-74; see also First Union Nat'l Bank v. Paribas, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001), aff'd sub nom, First Union Nat'l Bank v. Arab African Int'l Bank, 48 Fed. App'x 801 (2d Cir. 2002).

As explained below, CNO's choice of this New York forum was an exercise in blatant forum shopping which is entitled to little, if any, deference. Moreover, all of the relevant public interest and private factors weigh overwhelmingly, indeed entirely, in favor of Brazil, which is clearly an adequate forum and where the Government is already deeply involved in the resolution of this dispute.

### A.    Plaintiff's Choice Of Forum Is Entitled To Little Deference.

As the Second Circuit held in its *en banc* decision in Iragorri, the degree of deference to be attributed to a plaintiff's chosen forum "moves on a sliding scale depending on several relevant considerations," including the plaintiff's and the lawsuit's connections to that forum. 274 F.3d at 71; see also Van Der Velde v. Philip Morris, Inc., No. 02 Civ. 783, 2004 WL 48891, at *1 (S.D.N.Y. Jan. 9, 2004) (same). The "weaker the connection between a plaintiff's U.S. activities, even those of a U.S. plaintiff, and the events at issue in the lawsuit, the more likely it is that defendants attacking the plaintiff's

choice of a U.S. forum will be able to marshal a successful challenge to that choice."
First Union Nat'l Bank, 135 F. Supp. 2d at 448.

In this case, plaintiff is a Brazilian corporation, based in Brazil, and the dispute relates entirely to a Brazilian infrastructure project that is subject to agreements governed by Brazilian law. All of the events that allegedly constitute the unlawful conduct alleged in the Complaint occurred in Brazil, where the Government is in the midst of a major investigation of plaintiff's conduct. There is no genuine connection between plaintiff's U.S. activities and the events at issue in this forum.

Moreover, as the Second Circuit stressed in Iragorri: "[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands." 274 F.3d at 72. In this case, it is now clear that plaintiff had no legitimate basis for bringing this case in New York and that it did so as a tactical move to circumvent the adverse order it anticipated — and has now received — from the SDE in Brazil. It is difficult to envision a more inappropriate exercise in forum shopping. Plaintiff is at the bottom of Iragorri's sliding scale, and its choice of forum should be accorded virtually no deference.

**B.     Brazil Is An Adequate Alternative Forum.**

An alternative forum is generally adequate if: (1) the defendants are amenable to service of process there; and (2) the forum permits litigation of the subject matter of the parties' dispute. See Van Der Velde, 2004 WL 48891, at *2. Only in "rare circumstances," where the remedy is "clearly unsatisfactory," will courts find the alternative forum inadequate. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981). Courts in this Circuit have deemed Brazil to be an adequate alternative forum for the

adjudication of the very cause of action asserted here. See, e.g., Mendes Junior Int'l Co.

v. Banco Do Brasil, S.A., 15 F. Supp. 2d 332, 338 (S.D.N.Y. 1998) ("Brazil is

determined to be an adequate alternative forum for this litigation" of claims that included

breach of contract) (citing Manela v. Garantia Banking, Ltd., 940 F. Supp. 584, 591

(S.D.N.Y. 1996)). Moreover, the Brazilian government is already conducting proceedings

— in which plaintiff is participating — regarding the enforceability of the very

contractual provision at issue in this case.

    **C.**    **The Balance of the Private and Public Interest Factors Identified In**
            ***Gulf Oil* Weighs Overwhelmingly In Favor of Brazil.**

    The balancing of the private and public interest factors identified in Gulf

Oil is the most important part of a forum non conveniens analysis. Gross v. British Broad.

Corp., 386 F.3d 224, 232 (2d Cir. 2004). In this case, both the private and public factors

weigh entirely in favor of Brazil.

    1. *The Balance of Private Factors* — The following is a list of the private

factors courts consider: (1) the relative ease of access to sources of proof; (2) the

availability of a compulsory process to secure the attendance of unwilling witnesses; (3)

the cost of obtaining the attendance of witnesses; (4) the possibility of viewing the

premises, if relevant to the action; and (5) all other practical problems that make trial of a

case easy, expeditious and inexpensive. See Iragorri, 274 F.3d at 73-74 (citing Gulf Oil,

330 U.S. at 508). In balancing the Gulf Oil private factors, courts must focus on the

precise issues that would have to be tried. Id. at 74. While there is no "algorithm that

assigns precise weights to the factors that inform forum non conveniens determinations"

(First Union Nat'l Bank, 135 F. Supp. 2d at 448), in this case *all* the factors weigh heavily in favor of Brazil.

First, even if the Brazilian government were to reverse course and find that the exclusivity clause at issue in this case is not unlawful, plaintiffs' own Complaint and TRO motion confirm that all the events relating to plaintiff's claim that it has been breached occurred — and virtually all of the relevant witnesses reside – in Brazil. For example, Plaintiff has alleged that GE's alleged breach of the NDA took place because of its participation in Brazil in a consortium being led by a Brazilian company Camargo Corrêa, with other Brazilian participants. (Compl. ¶ 4; Pinto Decl. ¶ 77.) The relevant events occurred, and the witnesses are located, in Brazil. (See also, Pinto Decl. ¶ 39 (CNO sent an invitation letter to the "GE Joint Venture" between two Brazilian corporations); ¶40 (NDA is between Brazilian corporations); ¶ 67 (alleging breach of the NDA due to communications among GE Joint Venture Brazilian employees, Brazilian corporation and Brazilian government).) Conversely, Plaintiff has pointed to only a single witness in the U.S., Jeffrey Weiner — and he is alleged to have been involved primarily in aspects of the negotiation of the Agreements and in GE's withdrawal from the Project from his GE office in Schenectady — not in the supposedly wrongful conduct. (Pinto Decl. ¶¶ 45, 62-65, 71-73.)

Second, it is equally clear from plaintiffs' own submissions to this Court that important non-party witnesses, who would not be subject to subpoena in New York, reside in Brazil and could not be compelled to testify here. Those witnesses would include the officers and employees of the following non-parties that plaintiffs have placed at the center of this dispute: Alstom Hydro Energia Brasil Ltda., VA Tech Hydro Brasil

Ltda., Voith Siemens Hydro Power Generation Ltda. (Pinto Decl. ¶ 56), IESA Equipamentos e Montagens, S.A., and Camargo Corrêa (Pinto Decl. ¶ 77). As such, a trial here "unquestionably would deprive the finder of fact of the live [trial] testimony of unwilling [foreign] witnesses" (First Union Nat'l Bank, 135 F. Supp. 2d at 450) and "diminish the fact-finder's ability to base a verdict on a full understanding of the facts." (Tel. Sys. Int'l, Inc. v. Network Telecom PLC, 303 F. Supp. 2d 377, 383 (S.D.N.Y. 2003)). The unavailability of compulsory process to secure the attendance of key witnesses is a significant factor that weighs in favor of dismissal. See, e.g., First Union Nat'l Bank, 135 F. Supp. 2d at 450 (the "focus on the availability of compulsory process for unwilling witnesses reflects a strong preference for live trial testimony"); Fagan v. Deutsche Bundesbank, 438 F. Supp. 2d 376, 383 (S.D.N.Y. 2006) (where "there is no compulsory process available to this Court by which the attendance of unwilling witnesses in Germany could be compelled," that factor weighed in favor of dismissal).

Third, even if attendance of all the Brazilian party and non-party witnesses could be compelled, the cost, inconvenience and disruption of bringing them for a trial in New York would be enormous — and entirely avoidable if this dispute is litigated in Brazil. Esheva v. Siberia Airlines, No. 06 Civ. 11347, 2007 WL 1879179, at *5 (S.D.N.Y. June 28, 2007) (Balance of factors weighed strongly in favor of dismissal where litigation would "add enormously to the expense of the litigation for all concerned" due to translation costs and travel for plaintiffs and witnesses). Finally, plaintiff's Complaint and affidavits make clear that virtually all of the relevant party and non-party documentary evidence is in Brazil, including the confidential information disclosed within the EPC Consortium referenced in ¶ ¶ 55-57 of the Pinto Declaration.

In short, all of the private factors weigh entirely in favor of Brazil, and there is no nexus between New York and plaintiff's claim for breach of either the MOM or the NDA. Moreover, analysis of the <u>Gulf Oil</u> public interest factors dictates even more unequivocally that plaintiff's attempt to maintain this case in Brazil is inexcusable.

2. ***The Balance of Public Interest Factors*** —The public interest factors considered in conducting a <u>forum</u> <u>non</u> <u>conveniens</u> analysis include: (1) court administrative difficulties; (2) burdens on the jury pool; (3) the forum's interest in having local disputes decided at home; and (4) the appropriateness of trying a case in a forum familiar with the law governing the action. <u>Gulf Oil</u>, 330 U.S. at 508-09.

It is incontrovertible that Brazil has a compelling interest in adjudicating this dispute, which concerns a major infrastructure project that is part of the government's long-term infrastructure plan and, as plaintiffs submissions to this Court assert, will have a significant impact on the public interest in Brazil (<u>See</u> p 3-4 *supra;* Pinto Decl. ¶¶ 4, 9, 29; Compl. ¶¶ 1, 18, 19, 22-26, 29-33, 42, 43.)

Brazil's interest in this matter is accentuated further by the fact that, as plaintiff was well aware when it filed this case in New York, the Brazilian government already was in the process of investigating plaintiff's conduct with respect to the very exclusivity clause it seeks to enforce here. Moreover, not only has plaintiff participated in that process, but the SDE has now found that there is significant evidence that plaintiff has indeed used this clause, and others like it, to restrain competition in Brazil. It has also now opened a formal investigation in which plaintiff will be required to present its defense to the Government's charges, and the validity of the exclusivity clause under Brazilian law will be conclusively determined.

Finally, in light of the issues that have already surfaced regarding both the procedural and substantive laws of Brazil — including those associated with the SDE's investigation and Order — it would be more appropriate to have this dispute adjudicated by a court well-versed in Brazilian law. See Gulf Oil, 330 U.S. at 509 (finding it more appropriate to have a case heard in a forum "at home with the . . . law that must govern the case"); see also In re Union Carbide Corp., 634 F. Supp. 842, 866 (S.D.N.Y. 1986) ("[Gulf Oil] and Piper explicitly acknowledge that the need of an American court to apply foreign law is an appropriate concern on a forum non conveniens motion, and can in fact point toward dismissal."). Litigation of this case in New York would entail a time consuming, costly, and unnecessary battle of experts over the procedural and substantive issues of Brazilian law implicated by the parties' claims and defenses.

In sharp contrast to Brazil's compelling interest in this matter, New York has no significant interest in this dispute regarding competition within Brazil concerning the auction for a domestic Brazilian project. There is no reason why New York should devote scarce judicial and other public resources to this dispute. More importantly, there are important reasons why this Court should *not* involve itself in this matter. Thus, it is now clear that plaintiff came running to this Court in anticipation of a decision by the SDE that the exclusivity clause it seeks to enforce violated Brazil's competition laws. The SDE has now issued a decision finding that there is significant evidence of such a violation, and plaintiff is persisting in this litigation in order to circumvent and frustrate the SDE process. This Court properly admonished plaintiff at the September 13th hearing that it had no interest in "stepping on the toes" of the Brazilian government, and it should not do so now. Rather, as plaintiff's counsel acknowledged at the hearing, its recourse

now is to appeal the SDE Order, which it apparently is doing. This case never should have been filed in New York and should be dismissed at once.

**III.    THE COURT SHOULD IMPOSE SANCTIONS BY REASON OF PLAINTIFF'S IMPROPER FILING AND CONTINUATION OF THIS LAWSUIT IN NEW YORK.**

In its September 17, 2007 Memorandum, the Court indicated that it would be "perfectly amenable" to "imposing *substantial* sanctions for any violations of Rule 11 that might have been committed — if the time of the Court and an opposing counsel are wasted needlessly." (Sept. 17, 2007 Memo at 1; emphasis in original (a copy of the Memo is attached to the Broderick Affidavit as Exhibit F.)) Despite GE's diligent efforts to avoid the necessity for this motion, we respectfully submit that the valuable time and resources of both the Court and GE have been needlessly wasted — from the outset of this litigation, and certainly since the September 13 TRO hearing. Although a Rule 11 motion is not yet ripe because the Rule requires a 21-day waiting period (and a separate motion), GE respectfully submits that the Court can and should award costs, expenses, and attorneys' fees pursuant to both its inherent authority and 28 U.S.C. § 1927.

Courts have the inherent power to impose sanctions that derives from the fact that courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Courts may also impose sanctions under 28 U.S.C. § 1927, which provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

To impose sanctions pursuant to its inherent authority, the Court must find: "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." See Schlaifer Nance & Co. v. Warhol, 194 F.3d 323 (2d Cir. 1999). Imposing sanctions under § 1927 requires a similar finding. It authorizes the imposition of sanctions upon "a finding of conduct constituting or akin to bad faith" on the part of an attorney. In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000) (internal citations omitted). As with sanctions imposed pursuant to a court's inherent power, bad faith may be inferred "only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Id. (internal citations omitted). In practice, the only meaningful difference between the two types of sanctions is that a sanction made pursuant to the Court's inherent power may be made against a party, an attorney, or both, while a sanction under § 1927 may be only against the attorney. See Schlaifer, 194 F.3d at 337.

As detailed in the prior sections of this brief, this case never should have been brought in New York; it was filed here for an improper purpose; it was conducted without adequate disclosure of important matters to the Court; and, it was improperly continued even after the SDE's September 13 Order removed any possible doubt that this case should not proceed here. More specifically:

- Plaintiff did not have a good faith basis to file suit in the Southern District of New York — it did so, and sought a TRO, to circumvent or frustrate the Brazilian government's investigation of plaintiff and in violation of a mandatory forum selection clause.

- In bringing this case and seeking the TRO, Plaintiff failed to disclose to the Court that the SDE was investigating (1) whether plaintiff had violated Brazil's competition laws by means of the very exclusivity clause (and others like it) that

Plaintiff was asking this Court to enforce; and (2) whether that exclusivity clause should be invalidated.

- Plaintiff filed an affidavit of Mr. Muriel, who has personally been representing GE in an active litigation for the past two years. Moreover, plaintiff has refused to withdraw the affidavit and to remove Mr. Muriel from this litigation even after being informed of his conflict.

- Plaintiff refused to dismiss this case — and forced GE to make this motion — even after the SDE had issued an order canceling the exclusivity provision upon which plaintiff's Complaint is based, and had opened a formal investigation that will determine the validity of the exclusivity clause, and even after plaintiff had begun to prosecute an appeal of the SDE Order in Brazil. In light of those developments, we submit that there was no way plaintiff could harbor a good faith belief that continuing this litigation in New York was appropriate.

In sum, throughout this case, plaintiff has engaged in behavior that has flaunted the Federal Rules of Civil Procedure and abused the resources of this Court. Such abuses should not be tolerated.

## CONCLUSION

For the foregoing reasons, we respectfully submit that the Court should dismiss the Complaint in its entirety and impose substantial sanctions on account of the improper filing and continuation of this case in this jurisdiction.

Dated: September 20, 2007
      New York, New York

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

Richard A. Rothman (RR-0507)
Vernon S. Broderick (VB-4332)
David W. Dummer (DD-4158)
Jessie B. Mishkin (JM-0855)
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
*Counsel for Defendants General Electric Company, General Electric International, Inc., GE Infrastructure, Inc., GE Power Systems, Inc., GE Energy LLC and GE Hydro Power, Inc.*

25