# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

CONSTRUTORA NORBERTO ODEBRECHT S.A.,

Plaintiff,

v. 07 CV 8014(CM)

GENERAL ELECTRIC COMPANY, et al.,

Defendants.

------------------------------------x

New York, N.Y.
September 12, 2007
10:35 a.m.

Before:

HON. COLLEEN McMAHON

District Judge

APPEARANCES

BOIES, SCHILLER & FLEXNER LLP
Attorneys for Plaintiff
BY: HOWARD L. VICKERY
AMY L. NEWHARDT
CHRISTOPHER A. WIMMER

WEIL, GOTSHAL & MANGES LLP
Attorneys for Defendants
BY: RICHARD A. ROTHMAN
VERNON BRODERICK
KEVIN F. MEADE

THE COURT: First of all, I apologize for my voice. Whatever it was that brought me down has finally felled me. I woke up at 3 in the morning with a very, very sore throat and a lot of congestion so I will try to use this microphone.

Second, yesterday was the eve of an important holiday so, of course, I expected an order to show cause to arrive and it did. But as my law clerks were gone for the holiday, I read every word of your papers myself, Mr. Vickery, including your exhibits. So I don't think that I need to hear from you. I think I need to hear from Mr. Rothman.

MR. ROTHMAN: Should I use the podium or would you prefer here?

THE COURT: I actually prefer that you use the podium. The mike situation is better.

MR. ROTHMAN: Thank you, your Honor.

I received a call in this matter last night sometime around 9 o'clock.

THE COURT: 9? That late?

I sent them out to tell you at 4. I said it was no secret where General Electric was.

MR. ROTHMAN: They may have contacted somebody at GE. I received a call sometime around 9 o'clock.

We are very new to this matter. My knowledge of the facts are, obviously, sketchy. We have not spoken to witnesses, but I can say that we have read their papers. And

based on their papers alone, I think it is clear that the TRO should be denied. In the first instance, it is difficult to understand how they believe they could come into a New York court and seek a TRO.

THE COURT: Are you suggesting that I don't have jurisdiction? Obviously, the issue has popped out at me because I have read the papers.

MR. ROTHMAN: Yes. There is an exclusive forum selection clause.

THE COURT: In the contract between the Brazilian joint venture and the plaintiff?

MR. ROTHMAN: In the non-disclosure agreement and the other agreement, the memorandum of meeting, I believe it is called, the MOM, is specifically subject to the confidentiality agreement. That forum selection clause required them to bring any claims in Brazil, which was their own court, regarding a major project with government involvement that is ongoing in Brazil. I think, your Honor, one has to ask the question that popped out at you and popped out at us: Why would a Brazilian plaintiff with a contract governed by Brazilian law with a Brazilian forum selection clause come running to the New York court?

THE COURT: Probably because they hired Mr. Vickery.

MR. ROTHMAN: I don't think so.

THE COURT: Although he could have gone to Connecticut

or Schenectady.

MR. ROTHMAN: Absolutely.

The only apparent answer that occurs to us or our client is that this is an attempt to do an end-run around a major investigation that is going on in Brazil which is being conducted by the SDE, the Brazilian antitrust authorities. And the SDE is in the process of investigating not just this contract but other contracts which Odebrecht apparently entered into containing non-competes with other suppliers and potential competitors for this project. That investigation, which is referenced in veiled terms but never explained to the court in the papers, is not only ongoing but I understand that a ruling is expected shortly. That investigation may well result in a determination that the very contracts that they seek to enforce here are invalid.

And so as we try to understand why they are here, rather than going to their own home court and honoring the forum selection clause, it looks to us like there is a danger that they are trying to lure this Court into setting up a situation where there is an order of a New York court respecting the enforceability of the very contracts that the Brazilian government and the SDE in particular are investigating.

In any event, I will come back to the forum selection clause. We believe that the Court does not have jurisdiction,

that they have clearly violated the forum selection clause and that, in addition, over and above that, the case should be dismissed on forum non conveniens grounds for obvious reasons, in any event.

With respect to the agreements, they also have not brought to the Court's attention that the non-disclosure agreement contains a liquidated damages clause which clearly gives them an adequate remedy of law. It contains no provision for injunctive relief.

THE COURT: That is the non-disclosure agreement. How about the January 11 agreement?

MR. ROTHMAN: Again, your Honor, if you look at the M-O-M agreement, it does not --

THE COURT: We will call it the MOM.

MR. ROTHMAN: All right. We will call it the MOM.

The MOM does not contain either a provision for injunctive relief or a liquidated damages clause.

THE COURT: I didn't remember one.

MR. ROTHMAN: But it says in paragraph 5A, if you have the MOM --

THE COURT: With lots of notes.

MR. ROTHMAN: -- if you look at paragraph 5A of the MOM it says expressly, the MOM is subject to a confidentiality agreement signed by the parties and currently in force. If GE does not enter the construction consortium or exit the

construction consortium under any provision of this MOM, then GE shall maintain a confidentiality agreement until its expiry and further agrees not to pursue this project with any other party. So the confidentiality agreement contained a liquidated damages clause and the MOM was expressly subject to its terms.

THE COURT: I am not quite sure what that means.

MR. ROTHMAN: What it means is that these two agreements -- let me step back, your Honor. I want to touch on one introductory point, and then if I could delve into forum selection clause and the agreements.

One thing that is important to note here is that GE has no intention of doing anything other than honoring the terms of the non-compete, the exclusivity agreement, provided that the SDE doesn't invalidate it. Indeed, if you look at the exhibits that they have presented to the Court, they are consistent with that, that GE has said to them and to the SDE that it will honor the exclusivity provisions. To the extent that the SDE invalidates them, GE will make a business decision as to what to do. It has made no decision now.

But under those circumstances and, again, their exhibits show there is no risk of violation of the exclusivity with which they are threatened. There is no urgency. Nothing is going to happen for weeks. They have an adequate remedy as well and they have no business being in this court.

As I will now go through in a little more detail,

looking at nothing but their papers, we don't think that they have any basis for a TRO under any aspect of the governing test.

Turning to the non-disclosure agreement, as you have seen, your Honor, it provides explicitly in paragraph 19 that this agreement is construed under and governed by Brazilian law. The parties elected the central court of the city of Sao Paulo as having jurisdiction to resolve any dispute arising from the agreement, to the exclusion of any other, no matter how privileged.

So what do they say about it?

They have put in an affidavit of a Brazilian lawyer and he has said, first, that this is a -- I think he said it was a preliminary or a temporary agreement that was meant to be in place only until the MOM was signed.

Well, that is utterly baseless, your Honor, because if you look at the confidentiality agreement, and it sounds like you read it carefully, paragraph 8 says, and I quote: "The confidentiality established in this agreement shall remain in effect for six years beginning on the signature date hereof."

THE COURT: That sounds temporary, six years, in the great scheme of things.

MR. ROTHMAN: In the great scheme of things, I now come back --

THE COURT: I know what you are saying and you are

absolutely right. This is not some sort of an interim agreement.

MR. ROTHMAN: This was not a letter of intent. It was a signed agreement with a six-year term.

THE COURT: Among three Brazilian corporations.

MR. ROTHMAN: If you look at anything, it was the MOM that was the temporary agreement because, for instance now, directing your attention to paragraph 1 of the MOM, it says in the second paragraph: "Due to the size, complexity and dynamics of the project, it is understood that this agreement does not entirely cover or include all pertinent contract elements."

THE COURT: I wonder if that meant that you were going to argue that it was not a contract.

MR. ROTHMAN: I have not studied it long enough to take a position one way or another, but what I do know is that, in other places in the agreement, it makes clear again in 5A that it was subject to the confidentiality agreement. And even if this agreement expired, the confidentiality agreement survived.

Then what is the next thing that the Brazilian lawyer says?

First of all, there is not a single cite to a Brazilian statute to support what he is saying. But even more substantively, I think it is clear from the face of his

affidavit and the Pinto affidavit that they lose on their papers because what has he said? He says that the Brazilian courts would enforce the non-disclosure confidentiality clause with respect to claims arising from the agreement.

They then try to argue these two agreements are entirely distinct, and we are not really complaining about the violations of the confidentiality agreement. But, your Honor, I would submit to you that that is totally baseless.

And if I could approach, one of the things that we did last night in the little bit of time that we had was to go through their papers and just pull out the quotes from their affidavits and their briefs which make crystal clear that the gravamen of their claim is that they are threatened with a breach or there has been an alleged breach of the confidentiality agreement.

So, for instance, just take a look at the first one of -- and I am not going to read them all -- their brief says at page 3: "Not only would General Electric bring its technical resources and expertise to the consortium, it would also inevitably make use (if it has not done so already) of the highly confidential and proprietary information developed by CNO at great effort and expense, including information that is crucial to the turbine design, the technical centerpiece of the entire project."

They then say at page 18 -- and I am just picking at

random now -- "General Electric, however, is privy to the very information that makes CNO's plans far superior to those of any company. Thus, were General Electric to directly or indirectly assist a competitor of CNO, CNO's hard earned advantages could be lost."

I will just look at one more. If you look at the Pinto affidavit, and we will take a look at 2, page 27, and that's on page 3 of our excerpt: "CNO further explained that because of the nature of the project, the exclusivity and confidentiality provisions are dependent on each other, and that it would not be possible for General Electric to participate in a competing bid for the Rio Madeira project without directly or indirectly using information covered by the confidentiality agreement."

Finally, Mr. Pinto says at page 29, "Given the limited time available before the auction date to potential bidders who only began developing a bid in the last year, the most important thing that General Electric can bring to a competing group is not its technical ability to manufacture turbines -- a niche that can be filled by any number of entities throughout the world -- but its knowledge of confidential and proprietary information regarding CNO's design and bid."

So I don't know how they can stand here with a straight face and represent to a Court that their claims are not claims that arise from the confidentiality agreement or

that these agreements are separate and distinct.

THE COURT: One of the things that occurred to me that subject to amend was that it could have made the parties to the January 11th agreement, the MOM, parties to the confidentiality agreement which they originally weren't, although I am not sure exactly which General Electric parties are parties to the MOM. I think it is GE Brazil and somebody up in Schenectady, but I am not sure. But another thing that had occurred to me that subject to amend was that the MOM incorporated by reference the terms of the confidentiality agreement rather than setting them out. But I don't know what a Brazilian lawyer would tell me. Certainly, the Brazilian lawyer who gave the affidavit here kind of danced around that issue. If I had a Brazilian lawyer here I would be asking him some very specific questions about court interpretations of the subject too under Brazilian law.

MR. ROTHMAN: Had they sued in Brazil as they agreed to do, we wouldn't have a battle over it, they would simply be going to a Brazilian court over a rudimentary question. This MOM, as I said, doesn't really implicitly incorporate the confidentiality agreement; it does so expressly.

So even under his interpretation they are bound by that confidentiality agreement. They were required to bring those claims in Brazil. I think that it is difficult to envision a more flagrant violation even under their interpretation of the forum selection clause which New York

courts, federal courts strictly enforce.

THE COURT: Except when they don't. There is that whole line of cases starting with Judge Friendly's case where we don't. I can't remember the name of Judge Friendly's case.

MR. ROTHMAN: I think there is a pretty good stream of cases that says, where you have two sophisticated parties entering into an exclusive forum selection clause, absent good reason, the courts will respect it. And here -- and I am going to come to forum non conveniens in a moment -- this isn't a case where two Yugoslavian parties picked New Jersey for no good reason. They are a major Brazilian company, as I said, involved in a major government project in Brazil. It was a perfectly logical and understandable forum for the parties to select. They did so for a very good reason.

Now, I mentioned the SDE investigation.

THE COURT: I have a lot of questions about that.

MR. ROTHMAN: This is my understanding of the investigation. As I say, this is what I have learned since 9 o'clock last night. My understanding is that they entered into similar agreements.

THE COURT: "They" being the plaintiff?

MR. ROTHMAN: They being the plaintiff, with various suppliers who were potential competitors for this project, and that there is an investigation underway by the SDE which is the Brazilian antitrust authorities and which will determine or

which could determine that these contracts, that this contract, among others, is anti-competitive and invalid.

I don't know more than that, but what it does reflect is that this is a matter in which the Brazilian government not only has a paramount interest by virtue of the nature of the project, but because there is an ongoing investigation. And they knew that when they decided to ignore the forum selection clause and when they decided to come into this court seeking an extraordinary remedy, that being a TRO.

As I said, we don't see any legitimate reason why they came in here other than to do an end-run around that investigation and to put this Court in a position where it potentially is in conflict with the presiding antitrust agency of the Brazilian government.

Turning now to the elements that they have to prove to get a TRO, and I know your Honor is familiar with them, first, we believe it is clear that they have an adequate remedy at law by virtue of the liquidated damages clause which is paragraph 18 of the non-disclosure agreement. And it says breach of the non-disclosure obligations established herein shall result in a compensatory fine of, I believe it is 20 million reas -- which is the Brazilian unit of currency -- to be paid by the party in violation to the other party.

Your Honor, I think it is one of the most well-established tenets of law of injunctions that where you

have a claim for monetary damages -- and here it is a liquidated damages clause -- you have no irreparable harm.

Our client's position is that they have not violated the non-disclosure agreement. But if the plaintiffs want to challenge that, they have an adequate remedy at law and they have to seek it, we believe, in Brazil.

Second, they have no risk of irreparable harm because, as we have told the SDE and as their exhibits reflect, we have no intention of bidding for so long as this contract is in place. Unless and until the SDE were to invalidate it, it is GE's position and its intention -- and it has made that clear -- that it will continue to honor the exclusivity provision. As I said, their exhibits show that.

If you look, for instance, at the letter from ISEA which seems to be the single thread upon which this motion hangs from, it is clear, and now looking at their letter --

THE COURT: I forgot what exhibit number that is.

MR. VICKERY: Exhibit O, your Honor.

THE COURT: Thank you.

MR. ROTHMAN: Do you have it?

THE COURT: I have to say, in 22 years of practicing and judging, this is the first time I have ever seen a letter, a record about a non-compete in which the defendant and the third party whose interests are impacted by the non-compete both acknowledge that the non-compete exists. That's a new one

on me.

MR. ROTHMAN: So we have never denied that the non-compete exists. As you can tell from this letter, if you look at the last paragraph on the first page, it says, "As you learned from press reports and the process carried out by the SDE (secretariat of economic law), GE is legally impeded by a non-compete clause in a document signed with Construtora Norberto Odebrecht, which is protected under a non-disclosure agreement. Should GE not be released from this commitment, either through an SDE decision or a release from the Construtora Norberto Odebrecht consortium, it will be difficult for our consortium to participate in the Madeira River bid process, thus causing the free competition desired by the government to be unfeasible."

THE COURT: A little lobbying there.

MR. ROTHMAN: Yes. A little lobbying to the government, but it is reflecting the fact that, as we have told them, as we have told the SDE, as is undisputed, there is no threat of a violation of the exclusivity clause. Indeed, their only claim, really, is that they will be or allegedly have been injured by a violation of a non-disclosure agreement which takes you right back to the exclusive forum selection clause.

So, your Honor, this is essentially their case, this letter. And this letter, if anything, undercuts them because it shows that, with respect to the threat of irreparable harm,