UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

————————————————————————————— :
                                                              :
CONSTRUTORA NORBERTO ODEBRECHT S.A.,      :
                                                              :
                        Plaintiff,              :            Civil Action No.
                                                              :            07-8014 (CM)
v.                                                          :
                                                              :
GENERAL ELECTRIC COMPANY, GENERAL      :
ELECTRIC INTERNATIONAL, INC., GE                :
INFRASTRUCTURE, INC., GE POWER                  :
SYSTEMS, INC., GE ENERGY LLC and               :
GE HYDRO POWER, INC.,                                  :
                                                              :
                        Defendants.            :
————————————————————————————— :

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

September 27, 2007

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
(212) 446-2300 (phone)
(212) 446-2350 (fax)

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 5

I.    NO FORUM SELECTION CLAUSE GOVERNS THIS DISPUTE ................................. 5

    A.    The Forum Selection Clause Of The Confidentiality Agreement Does Not
    Apply To The Exclusivity Clause ...................................................................... 6

        1.    The MOM Expressly Limits The Incorporation Of The Confidentiality
        Agreement ................................................................................................ 6

        2.    Ambiguity Cannot Be Resolved On A Motion To Dismiss ................................. 8

    B.    CNO Has Sued For GE's Breach Of The MOM ........................................................ 9

II.   THIS CASE SHOULD NOT BE DISMISSED ON *FORUM NON CONVENIENS*
    GROUNDS ................................................................................................................... 10

    A.    CNO's Choice Of Forum Is Entitled To Substantial Deference ................................ 11

        1.    CNO Must Be Treated As An American Citizen For *Forum Non
        Conveniens* Purposes. .............................................................................. 11

        2.    Valid Reasons Dictated CNO's Choice Of Forum ............................................ 12

    B.    Brazil Is Not An Adequate Alternative Forum For This Dispute. .............................. 14

    C.    The Balance Of Private And Public Interests Provides No Basis To Disturb
    CNO's Choice Of Forum. ...................................................................................... 15

        1.    The Private Interests Favor New York. ......................................................... 16

        2.    The Public Interests Do Not Warrant Dismissal. ............................................ 18

        3.    The Ongoing Proceedings In Brazil Do Not Warrant Dismissal. ....................... 20

III.  GE'S DEMAND FOR SANCTIONS IS MERITLESS. ................................................... 20

    A.    CNO's Choice Of This Forum Was Made For Valid Reasons And Cannot
    Support Sanctions ............................................................................................... 21

    B.    CNO Disclosed Its Knowledge Of The SDE Investigation. ..................................... 22

    C.    Mr. Muriel's Participation In This Litigation As An Expert Witness On An
    Uncontested Issue Of Brazilian Law Does Not Create A Conflict Of Interest ......... 23

D.    CNO Did Not Act In Bad Faith By Declining GE's Demand To Withdraw The
Litigation....................................................................................................................24

CONCLUSION ...............................................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Borden, Inc. v. Meiji Milk Prods. Co., Ltd.*, 919 F.2d 822 (2d Cir. 1990)...................................15

*Bank of Credit and Comm. Int'l (Overseas) v. State Bank of Pakistan*, 273 F.3d 241
    (2d Cir. 2001)..............................................................................................................11

*Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974 (2d Cir. 1993)...................................11

*Braspetro Oil Services Co. v. Modec (USA), Inc.*, No. 06-20561, 2007 WL 1425851
    (5th Cir. May 11, 2007) ..........................................................................................13, 14

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)......................20

*CooperVision, Inc. v. Intek Integration Tech's, Inc.*, 7 Misc. 3d 592, 794 N.Y.S. 2d 812
    (Sup. Ct. Monroe Cty. 2005) .......................................................................................8

*D.C. USA Operating Co., LLC v. Indian Harbor Ins. Co.*, No. 07-CV-0116 (CM),
    2007 WL 945016 (S.D.N.Y. March 27, 2007) ...........................................................9

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168 (2d Cir. 2004) ......9

*Georgiadis v. First Boston Corp.*, No. 90 Civ. 7672 (PKL), 1994 WL 392229
    (S.D.N.Y. July 27, 1994) ...........................................................................................19

*Gross v. British Broad. Corp.*, 386 F.3d 224 (2d Cir. 2006) ................................................16, 18

*Guerini Stone Co. v. P.J. Carlin Construction Co.*, 240 U.S. 264 (1916)......................................6

*Hochroth v. William Penn Life Ins. Co. of New York*, No. 03 Civ. 7286 (RJH) (HBP),
    2003 WL 22990105 (S.D.N.Y. Dec. 19, 2003) ........................................................10

*In re Enron Corp. Securities, Derivative & ERISA Litig.*, 391 F. Supp. 2d 541
    (S.D. Tex. 2005).........................................................................................................8

*In re Public Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003).....................................10

*Iragorri v. United Tech. Corp.*, 274 F.3d 65 (2d Cir. 2001)....................11, 12, 13, 14, 15, 16, 18

*Korn Tech's, Inc. v. SKC Forspray Ltd.*, Civ. Act. No. 90-4721, 1990 WL 174377
    (E.D. Pa. Nov. 6, 1990)..............................................................................................22

*Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 501 (1947) ....................................16

*Mendes Junior Int'l. Co. v. Banco Do Brasil, S.A.*, 15 F. Supp. 2d 332 (S.D.N.Y. 1998)..........11

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983) ................................20

*Norex Petroleum Ltd. v. Access Ind's, Inc.*, 416 F.3d 146 (2d Cir. 2005)................ 11, 13, 14, 15

*Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ................................................................................. 16

*Pilkington Bros. P.L.C. v. AFG Industries Inc.*, 581 F. Supp. 1039 (D. Del. 1984).................... 15

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).......................................................... 10, 14, 15

*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) ............ 11, 14, 15, 18

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850 (2d Cir. 1997) ............. 20

*Progressive Casualty Insurance Co. v. C.A. Reaseguradora Nacional De Venezuela*,
991 F.2d 42 (2d Cir. 1993)................................................................................................... 7

*Ramirez de Arellano v. Starwood Hotels & Resorts*, 448 F. Supp. 2d 520 (S.D.N.Y. 2006)...... 10

*Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l. Arms, Inc.*, 466 F.3d 88
(2d Cir. 2006)..................................................................................................................... 20

*Schlaifer, Nance & Co. v. Warhol*, 194 F.3d 323 (2d Cir. 1999) ................................................. 21

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Serv.Corp.*, 421 F. Supp. 2d 741
(S.D.N.Y. 2006)................................................................................................................. 19

*Sussman v. Bank of Israel*, 56 F.3d 450 (2d Cir. 1995) ............................................................... 21

*Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999)............................................................. 9

*U.S. Fid. & Guar. Co. v. Braspetro Oil Serv. Co.*, No. 97 Civ. 6124 (JGK),
1999 WL 307666 (S.D.N.Y. May 17, 1999) .......................................................................... 18

*U.S. v. Int'l Bd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*,
948 F.2d 1338 (2d Cir. 1991)................................................................................................ 21

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) .............................................. 10

## STATUTES

28 U.S.C. § 1927...................................................................................................... 20, 21, 22

## OTHER AUTHORITIES

George A. Bermann, *Provisional Relief in Transnational Litigation*, 35 COLUM. J.
TRANSNAT'L L. 553, 598 (1997) ............................................................................................ 15

U.S. Dep't of State, *Treaties in Force* 2007 ............................................................................... 12

11 WILLISTON ON CONTRACTS § 30:25 (4th ed.) ........................................................................ 6

Plaintiff, Construtora Norberto Odebrecht S.A. ("CNO"), submits this memorandum in opposition to the motion to dismiss filed by defendants (collectively, "GE"). This memorandum is further supported by the: (1) Declaration of José Bonifácio Pinto Júnior dated September 12, 2007 ("First Pinto Decl."); (2) Supplemental Declaration of José Bonifácio Pinto Júnior dated September 27, 2007 ("Supp. Pinto Decl."); (3) Declaration of Howard Vickery dated September 27, 2007 ("Supp. Vickery Decl."); (4) Declaration of João Grandino Rodas dated September 27, 2007 ("Grandino Decl."); (5) Declaration of Ubiratan Mattos dated September 27, 2007 ("Mattos Decl."); and (6) Declaration of Alvaro Novis dated September 10, 2007 ("Novis Decl.").

## INTRODUCTION

In January 2006, CNO entered into an agreement with GE to join in a consortium, along with other partners, to support a bid on the construction of a hydroelectric facility in Brazil. (Exh. D to First Pinto Decl.) The agreement, entitled "Minutes of Meeting" ("MOM"), included provisions that bound the General Electric group – including General Electric Company and the other defendants here – to work exclusively with CNO on this project, and not "pursue" the project with any third party, if GE later withdrew from the consortium, which it did several months later. (*Id.* at §§ 5(a), 5(o); *see also* August 7, 2007 letter from GE to SDE, Exh. 4 to Mattos Decl. ("such provision applies to all companies in the General Electric group").) The GE entities covered by these provisions are located in or do business in New York. The GE employee who negotiated and signed the agreement is a U.S. citizen who works for GE in Schenectady, New York. (First Pinto Decl. at ¶¶ 45, 48-54 and Exhs. O, E.) The GE entities with the information and requisite technology to support such a bid, which were formerly CNO's partners and are now seeking to join a competitor, are in New York and several other European countries, but not in Brazil. (*See* August 7, 2007 letter from GE to SDE, Exh. 4 to Mattos Decl.; First Pinto Decl. at ¶¶ 42, 43.) The contract was negotiated between New York and Brazil. (First Pinto Decl. at ¶¶ 45, 49; Supp. Pinto Decl. at ¶¶ 5-11.)

When CNO sought assurances this summer that GE would honor the exclusivity agreement by not taking any action to "pursue" the Rio Madeira Project, CNO was told by senior officials at GE's marketing subsidiary in Brazil that those decisions would be made not in Brazil but by GE officials and entities in the U.S. (First Pinto Decl. at ¶¶ 72, 73; Novis Decl. at ¶¶ 4-6.)

GE does not dispute that the exclusivity provision is lawful under U.S. antitrust and contract laws; doubtless GE would not have signed the agreement if it believed the exclusivity provision violated either U.S. or Brazilian law. There is also no dispute that the exclusivity provision is contained in an otherwise binding contract. It is the type of provision routinely used in teaming agreements where groups combine to submit bids for large government-sponsored construction projects. Nonetheless, there is a dispute about whether GE is honoring its obligation to not "pursue" the Rio Madeira Project independent of the consortium. Despite GE's representations that it would honor its exclusivity obligations, CNO learned shortly before filing this Complaint that a competitor of CNO had informed the Brazilian government that it had been "working on the design of products and systems" for the project with engineers from GE for "over a year." (First Pinto Decl. at Exh. O.)

CNO's Complaint alleges that the exclusivity provision is enforceable in New York against New York entities; that there is evidence of a covert, ongoing breach of this provision by GE entities and their employees located in New York – not in Brazil; and that CNO is entitled to injunctive relief in New York to prevent such conduct by New York defendants.

The evening after the Court heard argument on the request for a TRO and set a schedule to brief a motion to dismiss, the Brazilian Secretariat for Economic Law ("SDE") issued a preliminary order (the "SDE Order") that barred implementation of the exclusivity clause and initiated a formal administrative process against CNO where CNO would be entitled to contest the charges and mount a defense. (*See* September 14, 2007 letter from H. Vickery to Hon. C. McMahon and attachments, attached as Exh. 1 to the Supp. Vickery Decl.) At the time the

Complaint was filed, CNO was not privy to either the timing or substance of the SDE Order that would exercise injunctive authority. (Supp. Pinto Decl. at ¶ 4; Mattos Decl. at ¶¶ 12, 13.)

The SDE Order was issued after a confidential investigation in which CNO was not permitted to review and respond to submissions by CNO's competitors and comments from government agencies. (Mattos Decl. at ¶ 14.) The SDE issued the preventive order based on a preliminary finding of sufficient evidence that an antitrust violation may be present. (*Id.* at ¶ 15.) The SDE Order was not a finding on the merits, and may well be withdrawn after CNO is finally given an opportunity to confront the arguments originally made behind closed doors. If the SDE concludes that there is evidence that the exclusivity clause was anti-competitive, it will make a referral to the Brazilian antitrust tribunal, the Administrative Council of Economic Protection ("CADE"). (*Id.* at ¶ 18; Grandino Decl. at ¶¶ 12, 18.) Only CADE can make a determination on the merits that the exclusivity agreement is invalid. (Mattos Decl. at ¶ 18; Grandino Decl. at ¶ 19.)

On the first business day after the SDE Order was published, a Brazilian federal court set it aside, effectively reinstating the non-compete provision. (*See* Exh. 7 to the Mattos Decl.) A federal prosecutor thereafter filed papers before the Brazilian federal court in support of the SDE Order, along with an amicus brief on behalf of CADE that also supported the SDE Order. (*See* Exh. 8 to Mattos Decl.) Four days later, last Thursday, September 20, at about the time that GE filed its memorandum in support of its motion to dismiss, the same federal court dissolved its stay, thus reinstating the SDE Order. (*See* Exh. 9 to Mattos Decl.) The court found that the stringent requirements for a writ of mandamus were not met. CNO has filed an appeal of this ruling to the intermediate federal court of appeal and a decision is expected in the next week. (Mattos Decl. at ¶¶ 24, 25.) CNO has also appealed the SDE Order to CADE. (Mattos Decl. at ¶ 25.)

It is not possible to predict how this process will unfold, *i.e.*, whether the SDE Order will be lifted and the exclusivity provision reinstated, or how long it will stay in effect. The timing of a final decision by CADE (the ultimate antitrust authority) on the validity of the

3

exclusivity clause in the MOM also is unknown. Given these circumstances, we do not believe it would be appropriate at this juncture to ask the Court to proceed to a preliminary injunction hearing, even though the harm to CNO is potentially enormous. However, we also do not believe that it is appropriate for this Court to dismiss this case since, if the clause is determined to be valid, CNO is entitled to seek relief in New York.

The issue presented by GE's motion is whether this Complaint belongs in this Court or in Brazil. GE's primary arguments are: (1) the forum selection clause in a separate confidentiality agreement was completely incorporated into the MOM, applying to all of the MOM's provisions including the exclusivity clause; and (2) the *forum non conveniens* doctrine dictates transfer to Brazil. Neither argument warrants dismissal of this case.

The MOM, which contains the exclusivity clause, has no forum selection clause. The disputed language at issue making the MOM "subject to" the Confidentiality Agreement does not incorporate all the provisions of that earlier, more limited agreement into the broad, commercial terms of the MOM; rather, on its face, the language appears to do no more than subject the full group of GE companies to the same confidentiality obligations previously agreed to only by a joint venture in Brazil partially owned by GE (the "GE Joint Venture"). The wholly separate "further agree[ment]" by GE not to pursue the Rio Madeira Project without CNO does not incorporate the totality of the terms of the prior Confidentiality Agreement. Sophisticated parties could have specifically provided for incorporation by reference of all terms of the prior agreement, or written into the MOM a forum selection clause, to avoid any ambiguity. They did not. In the face of any ambiguity arising from reasonable alternative readings of the MOM, the Court should not presume on a motion to dismiss that the parties unquestionably intended full incorporation.

Regarding GE's *forum non conveniens* argument, and as discussed more fully below, the Court should be aware of the following critical factors that triggered CNO's choice of forum:

First, the conduct by GE that CNO seeks to enjoin is not the physical manufacture of turbines in Brazil, but the provision to CNO's competitors of strategic, intellectual and technical

resources by GE's U.S.-based entities. In other words, the place of the ongoing breach of contract is not Brazil, but the U.S. and other countries. (First Pinto Decl. at ¶ 43; Exh. 4 to Mattos Decl.)

Second, when CNO attempted to resolve this issue through discussions with the CEO of GE's Brazilian-based marketing subsidiary, General Electric do Brasil, Ltda. ("GE Brazil"), CNO was told that the matter was being handled by the U.S.-based GE entities, not in Brazil. (First Pinto Decl. at ¶¶ 72, 73; Novis Decl. at ¶¶ 4-6.)

Third, if CNO had filed suit against GE in Brazil, it would not have been able to perfect service on the GE defendants in the U.S. by letters rogatory, the required method of service, before the scheduled date for the auction. (Grandino Decl. at ¶¶ 6, 72.) The only expeditious way to obtain effective relief against the GE defendants in the U.S. therefore was to bring an action in New York where the GE defendants could be served in accordance with the Federal Rules of Civil Procedure.

Fourth, discovery that GE's actions on the exclusivity clause were being directed from the U.S. left CNO effectively with only two choices: accept GE's actions as a *fait accompli* or seek relief in a venue and from a court with the power to timely preserve the status quo with respect to GE's New York and U.S. entities. It chose the latter course. Thus, the sole purpose of CNO's resort to this Court was to remedy a private wrong – a contractual breach – by a U.S. corporation subject to U.S. law. No other purpose could have been achieved, since CNO could do nothing in the U.S. to prevent an agency of a foreign state (Brazil) from exercising its enforcement powers, even if that exercise were improper.

## ARGUMENT

### I. NO FORUM SELECTION CLAUSE GOVERNS THIS DISPUTE.

The broad-based commercial MOM contains no forum selection clause within its four corners. GE nonetheless asks this Court to import into the MOM a forum selection clause found only in a previous Confidentiality Agreement signed eight months earlier by CNO and two Brazilian entities (the GE Joint Venture and IESA) that addressed only a single issue – the

confidentiality of certain materials provided by CNO to those Brazilian entities. Alternatively, GE asks the Court to hold that, despite the plain language of the Complaint, CNO actually is suing under the Confidentiality Agreement. Neither argument has merit.

### A. The Forum Selection Clause Of The Confidentiality Agreement Does Not Apply To The Exclusivity Clause.

The key question is whether the MOM incorporated, and is governed by, the entirety of the Confidentiality Agreement. To this end, it is worth observing the scope of the two agreements at issue: The Confidentiality Agreement is a narrow agreement between three Brazilian companies relating solely to the treatment of particular intellectual property materials provided by CNO to those Brazilian companies. In contrast, the MOM is a broad commercial agreement specifying technical and deal terms of a large, complicated equipment purchase contract. GE asks this Court to import into the MOM the entirety of the terms of the narrow, limited-purpose Confidentiality Agreement.

### 1. The MOM Expressly Limits The Incorporation Of The Confidentiality Agreement.

GE's sole support for this "tail-wagging-the-dog" argument is that the MOM contains the following clause: "This MOM is subject to the Confidentiality Agreement signed by the parties and currently in force." (Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("GE Br.") at 13.) But it is well settled that "where incorporated matter is referred to for a specific purpose only, it becomes part of the contract for that purpose only, and should be treated as irrelevant for all other purposes." 11 WILLISTON ON CONTRACTS § 30:25 (4th ed.). *See also Guerini Stone Co. v. P.J. Carlin Construction Co.*, 240 U.S. 264, 278 (1916) (reference in contract to "drawings and specifications made by the said architect" "was evidently for the mere purpose of what work was to be done, and in what manner done, by the subcontractor").

This principle applies here. By its plain terms, the MOM's reference to the Confidentiality Agreement between the GE Joint Venture, IESA and CNO was meant to do no more than obligate the broader GE group of companies to protect CNO's confidential and

6

proprietary information in the same manner as required of the GE Joint Venture. The

Confidentiality Agreement was incorporated because otherwise, only one of the myriad GE

companies involved in the project would have had an express confidentiality obligation. The

MOM also, however, contains other contractual terms between CNO and GE that go well

beyond the subjects of the Confidentiality Agreement. In particular, it is plain from the face of

the MOM that the parties expressly distinguished the concept of incorporating the

Confidentiality Agreement from the concept of adopting an exclusivity clause. Thus, Section

5(a) of the MOM provides:

> This MOM is subject to the Confidentiality Agreement signed by the parties and
> currently in force. If GE does not enter the Construction Consortium or exits the
> Construction Consortium under any provision of this MOM, then GE shall
> maintain the Confidentiality Agreement until its expiry and further agrees not to
> pursue this Project with any other party.

(Emphasis added.) Similarly, Section 5(o) of the MOM provides that "[i]f no equipment supply

contract is issued by the expiry of the Confidentiality Agreement, then this MOM shall expire

and GE agrees not to pursue this project with any other parties." (Emphasis added.) Thus, the

MOM makes clear that the exclusivity clause is a "further" agreement that outlives and is

independent of the Confidentiality Agreement.

GE relies on *Progressive Casualty Insurance Co. v. C.A. Reaseguradora Nacional De

Venezuela*, 991 F.2d 42 (2d Cir. 1993), to support its incorporation argument. However, in that

arbitration-clause case, the incorporation clause at issue was not expressly limited to but one of

many subject matters (*i.e.*, confidentiality) addressed in the broader contract. It also did not

expressly distinguish its incorporation provision from the other, key obligations of the contract

(*i.e.*, "and [GE] further agrees …). Here, the MOM both limits the scope of its incorporation of

the Confidentiality Agreement to the confidentiality obligations of GE and conceptually

distinguishes that limited adoption of the Confidentiality Agreement from GE's "further

agree[ment]" not to "pursue the Project." In short, *Progressive Casualty* simply does not stand

for the proposition that the words "subject to" always function to incorporate every term of

another agreement, regardless of the presence of express, limiting language to the contrary or the context of the business between the parties.

Moreover, in the absence of an express incorporation of the forum selection clause of the Confidentiality Agreement into the MOM for all purposes, New York law is clear that the forum selection clause will not be presumed to apply. *See, e.g., In re Enron Corp. Securities, Derivative & ERISA Litig.*, 391 F. Supp. 2d 541, 582 (S.D. Tex. 2005) (applying New York Law and holding, "under New York law an agreement must expressly state that a forum selection clause is incorporated by reference for such a clause to be enforceable"); *see also CooperVision, Inc. v. Intek Integration Tech's, Inc.*, 7 Misc. 3d 592, 599-600, 794 N.Y.S. 2d 812, 819 (Sup. Ct. Monroe Cty. 2005) (statement in supply agreement that a separate licensing agreement was to be considered as part of "the entire contract" between the parties did not incorporate a forum selection clause contained in the license agreement: "The mere reference to the Software License Agreement as part of the 'entire agreement' of the parties, without an express provision making the forum selection clause applicable to disputes arising under the Implementation Agreement, means that the parties intended that the forum selection clause be confined to the Software License Agreement.").

The MOM was negotiated between sophisticated parties who could have stated expressly that the Confidentiality Agreement, including its forum selection clause, would apply to the entirety of the MOM, or, alternatively, included an express forum selection clause in the MOM itself. They did neither. In these circumstances, the law does not permit an implication or presumption that the forum selection clause in a separate, narrow-purpose agreement, initially among only Brazilian entities, governs the choice of forum for a broader agreement involving a different group of parties, including GE's U.S. entities.

2.    Ambiguity Cannot Be Resolved On A Motion To Dismiss.

Even if GE's broad reading of the MOM's reference to the Confidentiality Agreement were plausible, that reading would do no more than establish an ambiguity in the MOM. When ruling on a motion to dismiss, the Court must resolve any contractual ambiguities in favor of the

plaintiff. *D.C. USA Operating Co., LLC v. Indian Harbor Ins. Co.*, No. 07-CV-0116 (CM),
2007 WL 945016, at *8 (S.D.N.Y. March 27, 2007); *Eternity Global Master Fund Ltd. v.
Morgan Guar. Trust Co.*, 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an
ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous
contract term is not dismissible on the pleadings."). Here, although CNO maintains that the
MOM limits the incorporation of the Confidentiality Agreement to the confidentiality
obligations of the GE group of companies, the clause is at the most ambiguous, and GE's
motion must be denied.

### B. CNO Has Sued For GE's Breach Of The MOM.

GE next argues that, even though CNO expressly sued for breach of the exclusivity
requirements of the MOM, this Court nonetheless should dismiss this action because CNO's
claims purportedly "actually" arise under the Confidentiality Agreement. (GE Br. at 14-15.)
According to GE, since: (1) the Complaint charges GE with sharing CNO's propriety
information with third parties; and (2) the MOM does not contain a stand-alone confidentiality
provision, CNO "must" be suing under the wholly separate Confidentiality Agreement. (GE Br.
at 15.)

This reasoning is specious. Although it is well settled that the sharing of confidential
information is a subset of (and evidence of) the behavior prohibited by an exclusivity clause,
*see, e.g., Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir. 1999) (non-competition
agreements are enforceable to prevent "disclosure of trade secrets" and "release of confidential
information"), it does not follow that the grievances are identical. Exclusivity agreements serve
a broader economic goal of encouraging team members to devote full effort and resources to the
project and preventing the misappropriation of the benefits of those joint efforts for use on
competing projects. Accordingly, the prohibition in the MOM against "pursuing" a competing
effort encompasses a far wider range of conduct than just protection of confidential information.
(*See, e.g.,* Compl. ¶¶ 90, 105.) "Pursuing" includes soliciting, negotiating, consulting, sharing

of information, including GE's own information, assisting and other activities leading up to and culminating in a signed contract.

GE is not free to rewrite the Complaint to suit its own purposes. "It is well established that the plaintiff is the 'master of his complaint' and may characterize his causes of action as he pleases." *Hochroth v. William Penn Life Ins. Co. of New York*, No. 03 Civ. 7286 (RJH) (HBP), 2003 WL 22990105, at *1 (S.D.N.Y. Dec. 19, 2003); *see also In re Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 332 (S.D.N.Y. 2003) (court and defendants must accept complaint as pleaded; defendants not entitled to "refashion and redraft" the complaint and then argue for dismissal of rewritten claims). CNO's claims are based on GE's breach of the exclusivity agreement within the MOM. GE's contention that CNO is "actually" suing based on another agreement that does not contain an exclusivity clause should be rejected.

## II. THIS CASE SHOULD NOT BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.

GE next argues that it would be more convenient for GE to litigate this suit in Brazil, notwithstanding that: (a) the defendants here are headquartered in and keep their primary places of business in this Circuit; (b) the conduct CNO seeks to enjoin is directed from this country; and (c) the primary witnesses regarding that technology, strategy and business conduct are located in the U.S. This Court previously has recognized that such a motion made by a local defendant is "a strange, indeed a counterintuitive, one." *Ramirez de Arellano v. Starwood Hotels & Resorts*, 448 F. Supp. 2d 520, 524 (S.D.N.Y. 2006) (denying *forum non conveniens* motion made by corporation headquartered in New York in litigation arising from events occurring in Spain). So too is GE's current motion. Although the hydroelectric facility at issue will be built in Brazil, the MOM itself – which governs the efforts of a consortium to support a bid for the project – is made with U.S. entities, concerns conduct in the U.S., and involves GE personnel from the U.S. This forum is proper and GE's motion should be denied.

The doctrine of *forum non conveniens* is to be used in "rare instances." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000). Indeed, a "plaintiff's choice of forum should rarely be disturbed." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). "Any

10

review of a *forum non conveniens* motion starts with 'a strong presumption in favor of the plaintiff's choice of forum.'" *Norex Petroleum Ltd. v. Access Ind's, Inc.*, 416 F.3d 146, 154 (2d Cir. 2005). *See also Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (*en banc*) (a court "should begin with the assumption that the plaintiff's choice of forum will stand").

With the presumption in favor of CNO's choice of forum in mind, this Court must engage in a three-step analysis of GE's motion. It must: (1) determine "the degree of deference properly accorded the plaintiff's choice of forum"; (2) consider "whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute"; and (3) balance "the private and public interests implicated in the choice of forum." *Norex*, 416 F.3d at 153. GE bears the burden of proof on all elements. *Bank of Credit and Comm. Int'l (Overseas) v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001).

**A.     CNO's Choice Of Forum Is Entitled To Substantial Deference.**

First, CNO is entitled to substantial deference in its choice of this forum to enforce the MOM. By treaty, CNO is entitled to the same rights as any U.S. citizen seeking relief from a U.S. court. CNO cannot timely obtain the relief it seeks from a Brazilian court, and the entities and conduct CNO seeks to enjoin all are located in the U.S.

### 1.     CNO Must Be Treated As An American Citizen For *Forum Non Conveniens* Purposes.

"[W]hen a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical *forum non conveniens* standards must be applied to such nationals by American courts." *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 981 (2d Cir. 1993). *See also Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 72 (2d Cir. 2003) (where a "foreign plaintiff was a beneficiary of a treaty with an explicit provision providing national access or treatment," "a foreign plaintiff [must] be treated on terms no less favorable than those applicable to U.S. nationals"). The U.S. and Brazil have such a treaty, *see* Treaty with Brazil, Dec. 12, 1828, U.S.-Brazil, art. XII, 8 Stat. 390, 392, which guarantees Brazilian citizens equal access to American courts. *Mendes Junior Int'l. Co.*

11

*v. Banco Do Brasil, S.A.*, 15 F. Supp. 2d 332, 337 (S.D.N.Y. 1998) ("Brazil and the United States have such a treaty guaranteeing Brazilian citizens access to United States courts equal to that of United States citizens."); *see also* U.S. Dep't of State, *Treaties in Force 2007*, "B," at 44 (available at www.state.gov/documents/organization/83018.pdf) (last visited Sept. 22, 2007). Accordingly, this Court must evaluate the deference owed CNO's choice of forum as though it were a domestic corporation.

2. Valid Reasons Dictated CNO's Choice Of Forum.

Courts in the Second Circuit apply a "sliding scale" to determine how much deference is owed the plaintiff's choice of forum. *Iragorri*, 274 F.3d at 71. "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Id.* at 71-72.

Here, although the successful bidder will construct a hydroelectric facility in Brazil, the MOM, the defendants here, and the conduct to be enjoined all have *bona fide* connections to the U.S.:

- GE is subject to general personal jurisdiction in New York.

- GE does not contest venue.

- General Electric's hydroelectric operations are centered in the U.S.

- Two critical GE witnesses to this dispute are located in Schenectady, New York:

  o Jeffrey Wiener, who negotiated the MOM on behalf of GE, purported to terminate it, and repeatedly acknowledged the enforceability of the exclusivity agreement contained therein. (First Pinto Decl. at ¶¶ 45, 48-54; 58; 69-70, Exhs. G and L.)

  o Stanley Smith, the General Manager for Power Generation Sales for GE Energy, who has been GE's key contact with the Brazilian government in recent months, and has made representations to the Brazilian government regarding GE's potential participation in the Rio Madeira Project. (Mattos Decl., Exhs. 3-5.)

12

- The engineers with the technical, financial and logistical expertise necessary to design the turbines and generators for the Project and pursue a bid on it – in violation of the MOM – are located outside Brazil. (*Id.* at Exh. 4.)

- GE has expressly represented to the Brazilian government that the GE Joint Venture located in Brazil does not have the technology necessary to design turbines and generators, (*id.*), meaning that any participation in the Rio Madeira Project, in breach of the exclusivity agreement, necessarily would involve GE's non-Brazilian entities. (Mattos Decl., Exh. 4.)

- The CEO of GE Brazil, when approached by CNO regarding this matter, expressly told CNO that the conduct and decision-making concerning whether GE would comply with the MOM would be made by GE's U.S. entities. (Novis Decl. at ¶¶ 4-6.)

- Had CNO initiated suit in Brazil, it would have had to serve process on GE in the U.S. by letters rogatory, a "process that can take up to a year or more." *See Braspetro Oil Services Co. v. Modec (USA), Inc.*, No. 06-20561, 2007 WL 1425851, at *5 (5th Cir. May 11, 2007). By that time, of course, it would have been too late to seek relief.

Under these circumstances, it was more than reasonable for CNO to choose to come to the U.S. (and to New York) to enforce the MOM. Indeed, CNO's "decision to litigate in New York, where all defendants were amenable to suit (and where most reside or are incorporated) is properly viewed as a strong indicator that convenience, and not tactical harassment of an adversary, informed its decision to sue outside its home forum." *Norex*, 416 F.3d at 155. Although a defendant's submission to foreign jurisdiction may affect the adequacy of the alternative forum and the balancing of private and public interests, "it does not alter the fact that plaintiff's own choice of a New York forum was motivated by genuine jurisdictional convenience and, as such, merits 'substantial deference' on any sliding-scale analysis." *Id.* at 156.

In addition, and despite GE's unsubstantiated finger-pointing, there is no indication that CNO has engaged in forum-shopping. There is no "tactical advantage resulting from local laws that favor the plaintiff's case." *Iragorri*, 274 F.3d at 72. As explained by the Hon. João Grandino, New York and Brazilian law are virtually identical in their treatment of exclusivity clauses in teaming agreements such as the MOM. (Grandino Decl. at ¶ 71; *see also* Exhibit A to the Affidavit of Vernon Broderick ("Broderick Aff.") at ¶ 69 (SDE states that under Brazilian

law, "[s]uch agreements are not anti-competitive *per se*"); Exh. 8 to Mattos Decl. at ¶ 4 (CADE amicus brief advocates "rigorous scrutiny" of exclusivity clauses, but does not contend that they are *per se* invalid; citing Herbert Hovenkamp's U.S. antitrust treatise). There also is no indication that CNO seeks the benefit of generous American juries, a local preference for CNO over GE, or to burden GE with expenses – other indicia of forum shopping recognized by the courts. *Iragorri,* 274 F. 3d at 72. CNO had legitimate reasons for choosing this forum, and CNO's choice therefore is owed substantial deference.

### B. Brazil Is Not An Adequate Alternative Forum For This Dispute.

Dismissal of this case is also inappropriate because Brazil is not an adequate alternative forum for this dispute. "A *forum non conveniens* motion cannot be granted absent an adequate alternative forum." *DiRienzo,* 294 F.3d at 29. "If the movant fails to carry [the] burden" of demonstrating the adequacy of the alternative forum, "the *forum non conveniens* motion must be denied regardless of the degree of deference accorded plaintiff's forum choice." *Norex,* 416 F.3d at 157.

A forum will "ordinarily" be adequate if "the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux,* 329 F.3d at 75. "In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative," and dismissal prohibited. *Piper Aircraft,* 454 U.S. at 254 n.22.

This is one of those occasions. As already noted, CNO seeks injunctive relief here instead of in Brazil because service of a Brazilian complaint on U.S. defendants through the use of required letters rogatory is a process which can take "up to a year or more." *Braspetro Oil,* 2007 WL 1425851, at *5. By that time, the bidding for the Santo Antonio – and possibly the Jirau – site would be long past, and CNO would be left without any effective relief. (Grandino Decl. at ¶ 73)[1] Enforcement in the U.S. of any injunctive relief obtained in Brazil prior to

---

[1] Accordingly, GE's contention that Brazil is an adequate alternative forum because it provides damage remedies for breach of contract against a Brazilian defendant, *see* GE Br. at 18, is inapt.

service on GE would be doubtful.  *See* George A. Bermann, *Provisional Relief in Transnational Litigation*, 35 COLUM. J. TRANSNAT'L L. 553, 598 (1997) ("U.S. courts have not often been asked to issue orders in support of the status quo in foreign country litigation, and their receptiveness to requests of this kind therefore cannot reliably be gauged."); *see also, e.g.*, *Pilkington Bros. P.L.C. v. AFG Industries Inc.*, 581 F. Supp. 1039, 1046 (D. Del. 1984) (refusing to enforce a preliminary injunction issued in the U.K.).  The Second Circuit has recognized that a defendant's proposed alternative forum is inadequate as a matter of law under such circumstances.  *See Borden, Inc. v. Meiji Milk Prods. Co., Ltd.*, 919 F.2d 822, 829 (2d Cir. 1990) (holding that dismissal on *forum non conveniens* grounds would be improper if plaintiff "were forced to wait years or even months to have a Japanese court review its application for some measure of temporary relief").  Brazil is thus not a "presently available" alternative forum, and dismissal is precluded.  *See Norex*, 413 F.3d at 159 ("We here clarify that a case cannot be dismissed on grounds of *forum non conveniens* unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute.").

Because the available remedies in Brazil are "clearly unsatisfactory," *Piper Aircraft*, 454 U.S. at 254 n.22, there is no adequate alternative forum.[2]  By submitting absolutely no evidence about the adequacy of Brazil as a forum, GE has failed to carry its burden to "demonstrate the availability of an adequate alternative forum," *Norex*, 416 F.3d at 157, and GE's motion to dismiss should be denied.

### C.  The Balance Of Private And Public Interests Provides No Basis To Disturb CNO's Choice Of Forum.

Finally, the balancing of private and public interests here does not give rise to a conclusion that this forum is "genuinely inconvenient and [Brazil] significantly preferable." *Iragorri*, 274 F.3d at 74-75.  The law is clear that, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *Pollux*, 329 F.3d at

---

[2] This absence of adequate relief is an absolute bar to *forum non conveniens* and accordingly cannot be the sort of "tactical advantage" that suggests improper forum shopping.  *Cf. Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996) (superior enforceability of U.S. judgment over Hong Kong judgment militated against dismissal).

71 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). CNO "should not ... [be] deprived of [its] choice of forum except upon defendants' clear showing that a trial in the U.S. would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience." *DiRienzo*, 294 F.3d at 30 (citing *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 501, 524 (1947)). This is a heavy burden and GE has not carried it.

### 1. The Private Interests Favor New York.

Private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses ...; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508. In determining whether these factors weigh in favor of a particular forum, the Court must:

> [F]ocus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues.

*Iragorri*, 274 F. 3d at 74.

The Issues To Be Litigated. This litigation is not about the substance of the Rio Madeira Project, but about the commitment of GE's U.S. entities not to compete against CNO. As the Second Circuit has recognized, when intangible rights are at issue, the physical origin of the dispute is of secondary importance to *forum non conveniens* analysis. "[T]he subject matter of this suit is not like a real property action with a physical connection to a particular location. Rather, the subject matter is creative work – intellectual property – and so the suit itself has less natural connection to any particular forum, leaving the convenience of the parties to be the primary consideration." *Gross v. British Broad. Corp.*, 386 F.3d 224, 233 (2d Cir. 2006). Here, CNO does not ask this Court to adjudicate the merits of the ongoing antitrust proceedings in Brazil, or to determine whether proper bid procedures are being followed. All CNO seeks is a ruling that the contract is enforceable under New York law, and a determination of whether GE's agreement in the MOM not to "pursue the Project" independent of the consortium covers a broader scope of conduct than publicly participating in a bid against CNO. Such conduct

would include, for example, consultation between GE's engineers and CNO's competitors, conduct that IESA has informed the Brazilian government has been going for a year. (*See* First Pinto Decl. at ¶ 77 and Exh. O.)

These are purely legal determinations. GE has admitted that it is bound by the MOM and that it prohibits all of the entities it controls from bidding on the Rio Madeira Project or selling equipment to a competing bidder. (*See* First Pinto Decl., Exh. G ("GE is withdrawing from the Rio Madeira Project without liability, except those commitments (exclusivity) defined in Section 5a of the Minutes of Meeting."); Mattos Decl., Exh. 4. (GE acknowledges that "the exclusivity "provision applies to all companies in the General Electric group"); *id.* (the GE Joint Venture, though released by CNO, "would not be able to use technology owned by other GE entities" because they are bound by the MOM).) The threat of breach having been demonstrated by CNO, *see* Memorandum of Law in Support of CNO's Motion for a Temporary Restraining Order and Preliminary Injunction ("CNO TRO Br.") at 32-34, all that is required is for this Court to enter an order of specific performance against GE's non-Brazilian entities, including General Electric Company.

Documents. CNO believes this matter can be adjudicated without substantial discovery of documents found only in Brazil. Even were this not the case, the Second Circuit has held that due to "advances in transportation and communication," "absent an explanation, less weight should be accorded" to the location of documents. *DiRienzo*, 294 F.3d at 30.

Witnesses. CNO believes this matter can be adjudicated without the need to compel the appearance of third-party witnesses from Brazil. CNO will voluntarily produce its own employees to the extent needed and the relevant GE witnesses are primarily in New York. This Court can direct GE to produce any of its remaining witnesses who are located in Brazil.

GE wrongly asserts that "virtually all of the relevant witnesses reside [] in Brazil." (GE Br. at 19.) GE established an entire team of non-Brazilian personnel to work with CNO on the Project. (First Pinto Decl. at Exh. C.) GE fails to mention that one member of this team is a central witness to GE's recent conduct – Stanley Smith, the General Manager for Power

Generation Sales for GE Energy, based in Schenectady, New York, and GE's key contact with the Brazilian government during the SDE investigation. Though GE contends that this Court would need to order discovery of other Brazilian companies that are involved in the consortium or that are preparing competing bids for the Project, there is no need to seek such third-party witnesses: GE's own witnesses will demonstrate any breach of the exclusivity agreement.

    Absence of Hardship to General Electric. The Second Circuit has emphasized that courts must be skeptical of defendants' motives for seeking *forum non conveniens* dismissal. That is, "defendants as much as plaintiffs may be concerned with litigation tactics or forum shopping rather than convenience, and may move for dismissal under *forum non conveniens* to further those goals." *Gross*, 386 F.3d at 233 (citing *Iragorri*, 274 F.3d at 75). Such skepticism is particularly justified here, where GE can show no hardship in being forced to litigate in its own home forum. GE litigates in this District regularly. Moreover, "given the amount of money involved in this case," a contract for the production of turbines and generators worth hundreds of millions of dollars at the time it was signed, "the costs of modern transportation and communications including translation and interpretation would be justified." *U.S. Fid. & Guar. Co. v. Braspetro Oil Serv. Co.*, No. 97 Civ. 6124 (JGK), 1999 WL 307666, at *18 (S.D.N.Y. May 17, 1999), *aff'd,* 199 F.3d 94 (2d Cir. 1999).

    All of the private factors therefore weigh in favor of maintaining jurisdiction in this forum. Even were this Court to determine that the private interests somewhat favor trial in Brazil, however, "[a]bsent proof that plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons, factors relating to convenience or expense generally weigh heavily in favor of the plaintiff's choice." *Pollux,* 329 F.3d at 71. CNO's choice should stand.

        2.  The Public Interests Do Not Warrant Dismissal.

    Finally, the balancing of the public interest factors does not warrant dismissal. The factors bearing consideration are court congestion, imposition of jury duty on a populace not interested in the outcome, the "local interest in having localized controversies decided at home" and the court's familiarity with the law to be applied. *Iragorri,* 274 F.3d at 74.

Three of these factors – court congestion, juror risks and interpretation of the MOM – favor neither party. GE has provided "no basis to assume how congested or not the relevant" Brazilian courts are compared to this Court, and thus "this factor is neutral." *Strategic Value Master Fund, Ltd. v. Cargill Fin. Serv.Corp.*, 421 F. Supp. 2d 741, 774 (S.D.N.Y. 2006). CNO currently seeks only equitable relief, for which no jury is required. GE has not argued that Brazilian law governs interpretation of the MOM, *see* GE Br. at 11-15 (applying New York law), or that Brazilian law would dictate a different result. This is yet another failure of proof that should be considered in weighing the interests of the respective fora. Nonetheless, even if Brazilian law did apply, questions regarding the interpretation of the MOM are identical under both U.S. and Brazilian law. (Grandino Decl. at ¶ 71.)

The fourth factor – the interest in having localized controversies resolved "at home" – is either in equipoise or favors resolution of this dispute in this District. New York's interest in this dispute is considerable. CNO's Complaint alleges that major U.S. companies formed in this country, including under the laws of New York, have breached, or are about to breach, a binding exclusivity agreement to which they voluntarily submitted. New York has an interest in "regulating the contractual obligations of corporate agents within its territory." *Georgiadis v. First Boston Corp.*, No. 90 Civ. 7672 (PKL), 1994 WL 392229, at *5 (S.D.N.Y. July 27, 1994). This, rather than the eventual destination of the contract's subject matter or parallel proceedings in Brazil, should be the polestar of this Court's analysis. *See Bigio*, 448 F.3d at 180 (reversing a grant of *forum non conveniens* where "the district court stated that 'Egypt's interest in deciding this controversy is significant,' whereas the suit is primarily over whether a U.S. company should be liable in damages"); *Overseas Programming*, 684 F.2d at 235 (reversing grant of *forum non conveniens* where the "District Court failed to identify the basic issue in the lawsuit ... [and so] erred in thinking that issues of foreign copyright law would so dominate the case as to make trial in the Southern District inappropriate").

19

### 3. The Ongoing Proceedings In Brazil Do Not Warrant Dismissal.

The thrust of GE's argument is that this Court should abjure its duty to exercise jurisdiction out of deference to the Brazilian government proceedings. (*See, e.g.,* GE Br. at 21-23.) Yet "[t]he mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l. Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "The task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification for the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction." *Id.* at 93 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25-26 (1983)). GE has not identified any such exceptional circumstances here, and none exist. Parallel proceedings "in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *Id.* at 92. This reasoning extends to foreign government proceedings as well. *See Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (affirming district court decision not to stay proceedings against Peru's state bank to permit it to complete negotiations with creditors stemming from currency crisis).

In light of the strong presumption in favor of a plaintiff's choice of forum, the substantial deference owed to CNO's legitimate bases for filing suit in New York, the relative inadequacy of Brazil's remedies, the roughly equal balancing of private and public factors, GE's failure to adduce any evidence in support of its motion and the federal courts' "virtually unflagging obligation ... to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, this Court should retain jurisdiction over this matter.

## III.  GE'S DEMAND FOR SANCTIONS IS MERITLESS.

Finally, GE asks this Court to impose sanctions under the Court's inherent powers and under 28 U.S.C. § 1927, which permits sanctions of any attorney who "multiplies the

proceedings in any case unreasonably and vexatiously."[3]  GE's burden on a motion for sanctions based either on "inherent power" or 28 U.S.C. § 1927 is extremely high.  "The Supreme Court has cautioned that because of the 'very potency' of a court's inherent power, it should be exercised with 'restraint and discretion.'"  *U.S. v. Int'l Bd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991).  For this reason, the Second Circuit demands a "particularized showing of bad faith" to justify the use of a court's inherent sanction power.  *Id*.  A party seeking sanctions must provide "clear evidence" that the other party's claims are "entirely without color *and* made for reasons of harassment or delay or other improper purposes."  *Sussman v. Bank of Israel*, 56 F.3d 450, 460 (2d Cir. 1995) (emphasis in original) (quotation omitted).  Similarly, "in the §1927 context, bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  *Schlaifer, Nance & Co. v. Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quotation omitted).

GE cannot come close to meeting this burden.  Indeed, GE's requests for sanctions are nothing more than an attempt to bully CNO into withdrawing an application to enjoin contract breaches by U.S. entities in the only forum where that relief can effectively be sought.

### A. CNO's Choice Of This Forum Was Made For Valid Reasons And Cannot Support Sanctions.

As an initial matter, a plaintiff's choice of forum is not the proper subject of sanctions.  *Sussman*, 56 F.3d at 457 ("Attorneys are not under an affirmative obligation to file an action in the most convenient forum; their only obligation is a proper forum.") (quotation omitted).  The defendants in *Sussman*, like the defendants here, moved for sanctions against the plaintiffs pursuant to the court's inherent powers, § 1927 and Rule 11, claiming that the plaintiffs had instituted their action in an inconvenient forum for an improper purpose.  *Id*. at 454.  The Court denied sanctions on all three grounds, holding that the district court's award of sanctions under its inherent powers and Rule 11 was an abuse of discretion and that the district court's refusal to

---

[3] In a separate motion that is not yet ripe, GE also has moved for sanctions under Fed. R. Civ. 11.  CNO will address the applicability of Rule 11 in response to that motion.

grant sanctions under § 1927 was proper. *Id.* at 451, 460. Similarly, it is inappropriate to award sanctions based on a party's interpretation of a forum selection clause. In *Korn Tech's, Inc. v. SKC Forspray Ltd.*, Civ. Act. No. 90-4721, 1990 WL 174377 (E.D. Pa. Nov. 6, 1990), a party sought Rule 11 sanctions based upon its opponent's supposed failure to provide the court with sufficient information regarding a potentially applicable contractual forum selection clause. The court declined, reasoning "[w]hile defendant's [sic] did give a rather strained interpretation of, and were rather selective in referring to, the provisions of the contractual agreement in advancing their arguments for dismissal, the defendants did not ignore the fact that the contractual agreement existed, nor did they hide the provisions of the contractual agreement from the court."

CNO has valid, good faith reasons for seeking to enforce its rights in New York, as explained in detail above. GE, of course, is subject to jurisdiction in the U.S. and in New York, and CNO, as plaintiff, has the legal right to pick its own forum, within the boundaries of the law. CNO reasonably chose the U.S., seeing it as the only forum in which it could obtain timely relief against the U.S.-based GE entities in support of the exclusivity obligation to which GE voluntarily subscribed. GE has not proved, and cannot ever prove under the facts of this case, that CNO's choice of forum was made in bad faith.

### B. CNO Disclosed Its Knowledge Of The SDE Investigation.

GE's criticism of the extent of CNO's disclosure of the SDE investigation is meritless. As this Court has recognized, CNO disclosed the fact of the SDE investigation in its moving papers. (*See* Sep. 13, 2007 Tr. at 24 ("And I am really concerned and I have been concerned since I started reading papers about some sort of investigation about what that investigation is."); *see also* First Pinto Decl., Ex. M ("We have been accused by Federal Government representatives of being obstacles to the participation of GE in the Rio Madeira Project as a result of actions of other potential investors and GE itself, according to information provided by the [SDE] itself…"); Ex. I (referring to the SDE's request for information and attaching a copy of the SDE's request); Ex. J (letter from CNO to GE objecting to GE's disclosure of the MOM,

22

a confidential document, to SDE); Ex. K (letter from GE to CNO concerning disclosure of information to the SDE).) CNO's counsel further disclosed to this Court at the hearing the extent of their knowledge of the SDE investigation. (*See* Sep. 13, 2007 Tr. at 25 ("I think what is going on in Brazil, to the extent that I know, is that competitors probably said we need more time and are objecting to this tying up of this area due to the consortium, so you go to the government and you lodge a complaint. The government has written letters. As far as I know, that's all that happened.").)

Accordingly, GE's complaint appears to be that CNO did not anticipate the actions of the SDE after the TRO hearing. As of the day of the first hearing before this Court, however, the SDE had instituted only the lowest, and most informal, of the three potential levels of investigation by the SDE. (Grandino Decl. at ¶¶ 13-14, 29.) Moreover, that proceeding, because of its informal state, was conducted confidentially, without notice to CNO of anticipated actions. (*Id.* at ¶¶ 15, 29, 32.) In addition, it is CADE, not the SDE, that has legal authority to issue merits decisions on whether a contract violates Brazil's antitrust laws. (*Id.* at ¶¶ 2, 18-19.) The ensuing action of the SDE – to skip the intermediate level of investigation, open the third level of investigation, and issue an injunctive order, all within 24 hours and within a single document, is highly unusual in Brazil, and of questionable validity. (*Id.* at ¶¶ 26-34.) Neither CNO nor its counsel knew or could have known that the SDE would take such extraordinary action immediately after CNO filed this suit. (Supp. Pinto Decl. at ¶¶ 3-4; Mattos Decl. at ¶¶ 12, 13; Supp. Vickery Decl. at ¶ 13.)

### C. Mr. Muriel's Participation In This Litigation As An Expert Witness On An Uncontested Issue Of Brazilian Law Does Not Create A Conflict Of Interest.

GE objects to the fact that CNO included in its opening papers an expert declaration setting forth several basic, non-controversial issues of Brazilian law made by an attorney who represents GE in unrelated litigation in Brazil. This, too, is not a valid ground for sanctions.

CNO was unaware of the facts giving rise to Mr. Muriel's purported conflict prior to its counsel receiving Mr. Broderick's letter on September 14, 2007. (Supp. Vickery Decl. at ¶ 4.) Immediately upon receiving Mr. Broderick's letter, CNO's counsel sought details concerning

23

Mr. Muriel's relationship with GE. (*Id.*) Mr. Muriel informed CNO and its counsel that his participation as a mere expert in this case in no way created a conflict of interest under Brazil's ethical rules, and provided legal authority in support of his position. (*Id.* at ¶¶ 5-6.) Based on the information CNO's counsel received from Mr. Muriel, CNO believes that no conflict of interest exists. Nonetheless, to avoid even the appearance of impropriety, CNO has supported this brief with declarations from a new expert, who as part of his opinion, has corroborated the content of Mr. Muriel's declaration. (Grandino Decl. at ¶ 71.) CNO has acted in good faith.

### D. CNO Did Not Act In Bad Faith By Declining GE's Demand To Withdraw The Litigation.

Finally, GE's contention that the Court should sanction CNO for not dropping this litigation immediately upon receipt of the SDE Order is nothing more than intimidation. The SDE Order is not a definitive ruling,[4] but merely a provisional remedy based on a finding of sufficient evidence reached after an investigation conducted behind closed doors. The SDE may vacate the injunction once CNO has had the opportunity to rebut the charges at the formal administrative hearing to be conducted by the SDE. Indeed, the SDE lacks the power to issue a final ruling. (Grandino Decl. at ¶¶ 18-19, 42.) Only CADE has the legal authority to declare the exclusivity provision of the MOM to be invalid. (*Id.* at ¶¶ 2, 6, 18-19.)

Moreover, acting on a writ of mandamus filed by CNO, a federal court in Brasilia stayed the SDE Order the very next business day after it was issued. (Exh. 7 to Mattos Decl.; Supp. Vickery Decl. at ¶ 14.) The federal court lifted its stay on September 20th, but CNO has appealed to an intermediate appeals court, and a ruling is expected in the next week. (Mattos Decl. at ¶ 23.)

---

[4] GE's contention that CNO has acknowledged that the SDE Order is final under Brazilian law is disingenuous and contrary to GE's own submissions to this Court. (*See* September 15, 2007 email from H. Vickery to R. Rothman, attached as Exh. E to the Broderick Aff. ("Our client does not believe that the SDE had the authority to invalidate the exclusivity clause or that the opinion expressed in the underlying report is definitive. It is nothing more than a referral to CADE, the body with authority over antitrust matters."); GE Br. at 25 (acknowledging that the SDE Order did no more than "open[] a formal investigation" into the potential antitrust implications of the MOM).)

24

CNO always has recognized that a final ruling by CADE could render the current action moot. (*See* Sep. 13, 2007 Tr. at 25 ("If there is a decree that GE is free, despite this enforceable contract, fine, that's the game. You have an appeal in Brazil. But our focus here, until the Brazilian government acts, then this is an enforceable contract and they should stand clear.").) Absent such circumstances, which have not occurred, CNO's determination to maintain this action is perfectly appropriate, and not sanctionable.

## CONCLUSION

For the reasons stated above, GE's Motion to Dismiss and the request for sanctions contained therein should be denied in their entirety. If the Court should decide that Brazil is a more convenient forum, dismissal should be conditioned on GE consenting to jurisdiction and agreeing to accept service of process.

Dated: September 27, 2007
      New York, New York

                Respectfully submitted,

                BOIES, SCHILLER & FLEXNER LLP
                By:    Donald L. Flexner
                       George T. Frampton, Jr.
                       Howard L. Vickery
                       Amy L. Neuhardt
                       575 Lexington Avenue, 7th Floor
                       New York, NY 10022
                       (212) 446-2300 (phone)
                       (212) 446-2350 (fax)