# EXHIBIT A

## NON-DISCLOSURE AGREEMENT

By this private instrument, the party of the first part:

(a)      **CONSTRUTORA NORBERTO ODEBRECHT, S.A.**, a corporation with principal place of business at Praia de Botafogo nº 300, 11º andar, Rio de Janeiro - RJ, Corporate Taxpayer No. (CNPJ) 15.102.288/0001-82, represented herein by its legal representatives whose signatures appear at the end hereof and have been identified, hereinafter referred to separately as **ODEBRECHT**;

and, as parties of the second part

(b)      **GE Hydro Inepar**, a corporation with principal place of business at Rodovia SP 340 – Campinas – Mogi Mirim – km. 118,5 – Building 11, Bairro Pau D'Alho, Condomínio CPQD in the City of Campinas, Corporate Taxpayer No. (CNPJ) 02.216.876/0001-03, represented herein by its legal representatives whose signatures appear at the end hereof and have been identified, hereinafter referred to separately as **GEHI**;

(c) **IESA – Projetos Equipamentos e Montagens S.A.**, with principal place of business in the City of Araraquara, State of São Paulo, at Rodovia Manoel de Abreu, s/n, km. 4,5, Zona Rural, Corporate Taxpayer No. (CNPJ) 29.918.943/0001-80, represented herein by its legal representatives whose signatures appear at the end hereof, hereinafter referred to as **IESA**.

**ODEBRECHT**, **GEHI**, and **IESA** will also be referred to hereinafter separately as ("Party") and together as ("Parties").

Whereas

(i)      ODEBRECHT has been developing studies for the implementation of the Madeira River Complex since 2001 and has conducted inventory studies and feasibility studies for the implementation of the two projects that constitute the Madeira River Complex, known as Jirau and Santo Antônio;

(ii)      ODEBRECHT is seeking partners to supply electromechanical equipment for the Madeira River Complex, either as consortium members or as subcontractors;

(iii)      ODEBRECHT has invited GEHI and IESA to submit a proposal to supply electromechanical equipment for the Madeira River Complex, referred to together as ("the Project"). To that end they will exchange information and hold meetings in order to become familiar with and evaluate the studies conducted by ODEBRECHT; and

(iv)      The information exchanged will include technical, commercial and financial data that is of strategic importance to the satisfactory progress of the Project;

Now therefore, the Parties resolve to enter into this Non-Disclosure Agreement ("Agreement"), to be governed by the following clauses and conditions:

4

1 – During the life of this Agreement, one Party (the "Disclosing Party") may furnish the other Party (the "Receiving Party") information that the Disclosing Party considers to be confidential or proprietary, including but not limited to ideas; concepts; formulas; strategic, commercial or financial data; data or information about the market, clients, partners, suppliers or equipment; documents; engineering plans and drawings, or even correspondence ("Confidential Information").

2 – The confidentiality that is the subject of this Agreement is intended to protect the rights and interests (of all kinds) of the Parties, in order to prevent the disclosure and improper use of the Confidential Information, for which reason the Parties undertake, irreversibly and irrevocably, to hold any and all Confidential Information in absolute secrecy.

    2.1    The Confidential Information shall be held in absolute secrecy by the Parties, including but not limited to their executives, directors, attorneys, employees, representatives, associates – in short, any natural person or legal entity directly or indirectly connected to any of the Parties.

3 – A Party may disclose all or part of the Confidential Information, or even the existence of this Agreement, only by prior, express and specific written authorization by the other Party.

4 – The Receiving Party is prohibited from disclosing information that has been developed on the basis of Confidential Information or, furthermore, from developing products, methods or services on the basis of either the Confidential Information or other information and knowledge obtained in the development of the purpose of this Agreement.

5 – Without prejudice to the provision in Clause 3 above, the Receiving Party may, without the consent of the Disclosing Party, reveal the Confidential Information, provided that said Confidential Information:

    a. Was demonstrably known by the Receiving Party prior to the date of disclosure by the Disclosing Party, in which event the Receiving Party shall notify the Disclosing Party, reporting and substantiating its knowledge prior to the disclosure by the other party; or

    b. Is in the public domain or becomes available to the public independent of any act or omission by the Receiving Party; or

    c. The disclosure is mandatory under current law or by court order, and provided that the Receiving Party gives written notice to the Disclosing Party prior to the disclosure.

6 – The Receiving Party shall be entitled to disclose the Confidential Information received under this Agreement without the prior written consent of the Disclosing Party, to persons who have an actual need to know such information in order to analyze and evaluate the Project, with due regard to the provision in Clause 2.1 above and provided that each of them, under terms satisfactory to the Disclosing Party,

is bound by the non-disclosure conditions of this Agreement. If requested, each Party shall have an obligation to notify the other Party, in writing, of the identities of its representatives who will have access to the Confidential Information.

7 –  When requested, the Parties shall acknowledge receipt of any Confidential Information that they receive from each other and undertake to return all Confidential Information within no more than thirty (30) days as of the date of the request by the Disclosing Party or the date of termination of this Agreement.

8 –  The confidentiality established in this Agreement shall remain in effect for six (6) years beginning on the signature date hereof. This interval may be renewed for equivalent lengths of time if the Madeira River Complex ("Project") has not been completely installed.

9 –  Any and all Confidential Information disclosed under this Agreement shall remain the sole property of the Disclosing Party. Therefore, any and all Confidential Information in tangible form must be returned to the Disclosing Party upon termination of the Agreement.

10 –  The Receiving Party is not authorized to reproduce any Confidential Information by any means or in any form, not even as backup, except reproductions inherent to the performance of its work, which shall likewise be considered to be Confidential Information.

11 –  A Party that for any reason decides to cease its participation in the Project, in the context of this Agreement, shall return all Confidential Information that it received, pursuant to Clause 7 hereof.

12 –  Failure by any of the Parties to comply with the provisions of the clauses of this Agreement shall result in the defaulting party being held liable for any direct damage caused to the innocent Party as a result of such noncompliance.

13 –  Notwithstanding any provision to the contrary, in no event shall any of the Parties be held liable toward the other, within the context of this Agreement, for loss of profits and/or indirect or consequential damages.

14 –  This Agreement does not create any rights, obligations, or any bond among the Parties, except for those of confidentiality and secrecy stipulated in this Agreement.

15 –  No Party may assign or in any other way transfer all or part of this Agreement, or any rights stemming herefrom, without the prior written consent of the other Parties, unless such assignment or transfer is made to an Affiliate, provided it is for the sole purpose of accomplishing the purpose of this Agreement.

16 –  The Parties shall notify each other, immediately and in writing, whenever they learn of any unauthorized use or disclosure of the Confidential

Information and shall cooperate with each other in regaining possession of the information and preventing its continued disclosure.

17 – It is expressly and irrevocably established that failure by any Party to exercise a right or option available to it under the Agreement, or consent to a delay in fulfillment of obligations by other Parties, shall not affect said rights or options, which may be exercised at any time and at its sole discretion, nor shall it alter the stipulated conditions of the Agreement.

18 – Breach of the non-disclosure obligations established herein shall result in a compensatory fine of R$20,000,000.00 (twenty million reals) to be paid by the Party in violation to the other Party.

19 – This Agreement is construed under and governed by Brazilian law. The Parties elect the central court of the City of São Paulo as having jurisdiction to resolve any disputes arising from the Agreement, to the exclusion of any other, no matter how privileged.

In witness whereof, the Parties sign this Agreement in three (3) counterparts of equal tenor and form, in the presence of two (2) witnesses, binding themselves, their heirs, and successors.

São Paulo, May 16, 2005

[three signatures]

**CONSTRUTORA NORBERTO ODEBRECHT, S.A.**

[signature and stamp] Ricardo Woitowicz, Director

[signature and stamp] Eduardo Ribeiro dos Santos, Commercial Director

**GE Hydro Inepar S.A.**

[two signatures]

**IESA – Projetos Equipamentos e Montagens S.A.,**

Witnesses:

1._____        2._____

Name:                                                          Name:

Taxpayer Identification Number (CPF)          Taxpayer Identification Number (CPF)

# TRANSLATORS' CERTIFICATE

I, Timothy Yuan, hereby certify that I speak and write both the Portuguese and English languages; that I have translated the foregoing 5/16/2005 Non-Disclosure Agreement Between CNO, IESA & GE/Inepar to the best of my ability; and that it is a true and correct translation to the best of my knowledge, information, and belief.

_____                    9/12/07
Signature                                           Date

Kavitha Reddy   9/12/2007

KAVITHA REDDY
NOTARY PUBLIC-STATE OF NEW YORK
No. 02RE6154611
Qualified in New York County
My Commission Expires October 23, 2010

## ACORDO DE CONFIDENCIALIDADE

Pelo presente instrumento particular, de um lado

a) **CONSTRUTORA NORBERTO ODEBRECHT S.A.**, sociedade anônima com sede na Praia de Botafogo, n.° 300, 11° andar, Rio de Janeiro – RJ, regularmente inscrita no CNPJ do MF sob n.° 15.102.288/0001-82, neste ato representada por seus representantes legais que ao final subscrevem e são identificados, doravante denominada isoladamente ("ODEBRECHT") e, de outro lado

b) **GE Hydro Inepar**, sociedade anônima, com sede na Rodovia SP 340 – Campinas – Mogi Mirim, km 118,5 – Predio 11, Bairro Pau D'Albo, Condomínio CPQD, na cidade de Campinas , inscrita no CNPJ sob o n° 02.216.876/0001-03 , neste ato representada por seus representantes legais que ao final subscrevem e são identificados, doravante denominada isoladamente GEHI.

c) **IESA – Projetos Equipamentos e Montagens S.A.**, com sede na cidade de Araraquara, Estado de São Paulo, na Rodovia Manoel de Abreu, s/n, km 4,5, Zona Rural, inscrita no CNPJ/MF sob no. 29.918.943/0001-80, neste ato representada por seus representantes legais que ao final subscrevem, a seguir denominada IESA.

ODEBRECHT, GEHI e IESA também serão doravante denominadas individualmente como ("Parte") e, em conjunto, como ("Partes").

Considerando que

(i)  a ODEBRECHT vem desenvolvendo estudos para a implantação do Complexo Rio Madeira desde 2001., tendo realizado os estudos de inventário e os estudos de viabilidade para a implantação dos dois empreendimentos que constituem o Complexo Rio Madeira, denominados Jirau e Santo Antonio;

(ii)  a ODEBRECHT está buscando parceiros para o fornecimento dos equipamentos eletromecânicos do Complexo do Rio Madeira, seja na qualidade de consorciado, seja na qualidade de subcontratado;

(iii)  a ODEBRECHT convidou a GEHI e a IESA para apresentar proposta para o fornecimento dos equipamentos eletromecânicos do Complexo do Rio Madeira, em conjunto denominadas ("Empreendimento") e, para tanto, farão um intercâmbio de informações e realizarão reuniões visando conhecer e avaliar os estudos até então desenvolvidos pela ODEBRECHT; e

(iv)  dentre as informações trocadas estarão dados técnicos, comerciais e financeiros, estratégicos para a boa condução do Empreendimento;

Resolvem as Partes celebrar o presente Acordo de Confidencialidade ("Acordo"), que se regerá pelas seguintes cláusulas e condições.

1- Durante a vigência do presente Acordo, uma Parte poderá entregar ("Parte Divulgadora") para a outra Parte ("Parte Receptora") informações que a Parte Divulgadora considere confidencial ou de sua propriedade, incluindo mas não se limitando a idéias; conceitos; fórmulas; dados estratégicos, comerciais ou financeiros; dados ou informações sobre o mercado, clientes, parceiros, fornecedores ou equipamentos; documentos; plantas e desenhos de engenharia ou até mesmo correspondências ("Informação Confidencial"). .

2- A confidencialidade de que trata o presente Acordo visa proteger os direitos e interesses (de todo gênero) das Partes, buscando impedir a revelação e a utilização indevida das Informações Confidenciais, motivo pelo qual as Partes obrigam-se de forma irretratável e irrevogável, a manter sob sigilo absoluto todas e quaisquer Informações Confidenciais.

    2.1- A Informação Confidencial deverá ser mantida em sigilo absoluto pelas Partes, incluindo, mas não se limitando a seus diretores, conselheiros, advogados, empregados, prepostos, associados, enfim, qualquer pessoa física ou jurídica que seja ligada direta ou indiretamente à qualquer uma das Partes.

3- Somente mediante autorização prévia, expressa e específica, por escrito, de uma das Partes, poderá a outra revelar, no todo ou em parte, a Informação Confidencial, bem como a existência do presente Acordo.

4- É vedado à Receptora revelar informação que tenha sido desenvolvida a partir de uma Informação Confidencial e, também, desenvolver produtos, métodos ou serviços com base tanto nas Informações Confidenciais, como nas demais informações e conhecimentos obtidos no desenvolvimento do propósito deste Acordo.

5- Sem prejuízo do disposto no item 3. acima, a Parte Receptora poderá, independentemente do consentimento da Parte Divulgadora, revelar a Informação Confidencial desde que a referida Informação Confidencial:

    a. Tenha sido comprovadamente conhecida pela Parte Receptora antes da data da revelação pela Parte Divulgadora, hipótese em que a Parte Receptora deverá notificar a Parte Divulgadora, informando e comprovando o seu conhecimento anterior à divulgação pela outra parte; ou

    b. Seja de domínio público ou torne-se disponível para o público independentemente da ação ou omissão da Parte Receptora; ou

    c. a revelação seja obrigatória por força da legislação vigente ou por força de ordem judicial, e desde que a Parte Receptora notifique por escrito a Parte Divulgadora anteriormente à revelação.

6- A Parte Receptora terá direito a revelar a Informação Confidencial, recebida nos termos do presente Acordo, sem o prévio consentimento escrito da Parte Divulgadora, para as pessoas que tenham efetiva necessidade de conhecer tais informações para fins de análise e avaliação do Empreendimento, observado o disposto no item 2.1. acima e desde que cada uma delas, em termos satisfatórios para a Parte Divulgadora, esteja

vinculada às condições de confidencialidade deste Acordo. Caso solicitado, cada Parte terá a obrigação de informar à outra Parte, por escrito, os seus prepostos que terão acesso à Informação Confidencial.

7- Desde que solicitado, as Partes darão recibo de toda Informação Confidencial que receberem uma da outra, e se comprometem a devolver todas as Informações Confidenciais no prazo máximo de 30 (trinta) dias, a contar da solicitação da Parte Divulgadora ou da data de encerramento do presente Acordo.

8- A confidencialidade estabelecida no Acordo vigorará pelo prazo de 6 (seis) anos, contado a partir da data de sua assinatura, podendo ser renovado por outros períodos equivalentes, caso o Complexo do rio Madeira ( "Empreendimento") não tenha sido implantado totalmente.

9- Toda e qualquer Informação Confidencial revelada conforme o Acordo permanecerá de propriedade exclusiva da Divulgadora. Assim, toda e qualquer Informação Confidencial em forma tangível deve ser devolvida à Divulgadora quando da extinção do Acordo.

10- A Receptora não está autorizada a reproduzir, inclusive em *back-up*, por qualquer meio ou forma, qualquer Informação Confidencial, exceto as reproduções que sejam inerentes ao desenvolvimento de seu trabalho, devendo as mesmas ser igualmente consideradas Informações Confidenciais.

11- A Parte que, de qualquer modo, decidir não mais participar do Empreendimento, no contexto do presente instrumento, deverá restituir toda a Informação Confidencial que receber na forma da cláusula 7ª do presente Acordo

12- O não cumprimento, por qualquer das Partes, do disposto nas Cláusulas do presente Instrumento implicará na responsabilidade da Parte inadimplente por quaisquer danos diretos causados à Parte inocente em decorrência de tal descumprimento.

13- Inobstante qualquer disposição em contrário, nenhuma das Partes em hipótese alguma será responsável perante a outra, no âmbito deste Acordo, por lucros cessantes e/ou danos indiretos ou conseqüenciais.

14- O presente Acordo não gera direitos, obrigações ou qualquer vínculo entre as Partes, à exceção daqueles de confidencialidade e sigilo estipulados neste Acordo.

15- Nenhuma Parte poderá ceder ou, de nenhuma outra forma, transferir, total ou parcialmente, o Acordo, ou quaisquer direitos decorrentes deste, sem o prévio consentimento por escrito das outras Partes, exceto se tal cessão ou transferência for feita a uma Afiliada, desde que para fins exclusivos de consecução do propósito deste Acordo.

16- As Partes deverão notificar uma à outra, imediatamente e por escrito, sempre que tomarem conhecimento de qualquer uso ou divulgação não autorizada da Informação

Confidencial, devendo cooperar entre si a recuperar a posse da informação e evitar que a mesma continue a ser divulgada.

17- Fica expressa e irrevogavelmente estabelecido que a abstenção do exercício, por qualquer das Partes, de direito ou faculdade que lhes assistem o Acordo, ou a concordância com o atraso no cumprimento das obrigações das outras Partes, não afetará referidos direitos ou faculdades, os quais poderão ser exercidos, a qualquer tempo e a seu exclusivo critério, e nem alterará as condições estipuladas no Acordo.

18- O descumprimento das obrigações de confidencialidade aqui estabelecidas, importará em multa compensatória, no valor de R$ 20.000.000,00 (vinte milhões de Reais), devida pela Parte infratora à outra Parte.

19- O presente Acordo é construído e regido pela legislação brasileira. As Partes elegem o Foro Central da Capital da cidade de São Paulo como competente para dirimir quaisquer questões oriundas do Acordo, com exclusão de qualquer outro, por mais privilegiado que seja.

Assim, por estarem justas e acordadas, as Partes firmam o presente Acordo em 3 (três) vias de igual teor e forma, na presença de 2 (duas) testemunhas, obrigando-se por si, seus herdeiros e sucessores.

São Paulo, 16 de maio de 2005.

CONSTRUTORA NORBERTO ODEBRECHT S.A.

GE Hydro Inepar S.A.

Ricardo Woitowicz
Diretor

EDUARDO RIBEIRO DOS SANTOS
Diretor Comercial

IESA – Projetos, Equipamentos e Montagens S.A.

Testemunhas:

1._____

Nome:

CPF:

2._____

Nome:

CPF: