UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CONSTRUTORA NORBERTO ODEBRECHT S.A., | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 07-8014 (CM) |
| v. | : | |
| | : | |
| GENERAL ELECTRIC COMPANY, GENERAL | : | |
| ELECTRIC INTERNATIONAL, INC., GE | : | |
| INFRASTRUCTURE, INC., GE POWER SYSTEMS, | : | |
| INC., GE ENERGY LLC and GE HYDRO POWER, INC., | : | |
| | : | |
| Defendants. | : | |

**SUPPLEMENTAL DECLARATION OF JOSÉ BONIFÁCIO PINTO JÚNIOR
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

JOSÉ BONIFÁCIO PINTO JÚNIOR, pursuant to 28 U.S.C. § 1746, declares as

follows:

1.  I am a Project Director of Construtora Norberto Odebrecht S.A. ("CNO"), the

    plaintiff in this action and the largest construction company in Brazil. I submit this

    supplemental declaration in opposition to General Electric's motion to dismiss the

    complaint. Unless otherwise specified, I have personal knowledge of the facts set

    forth in this Declaration.

**I.      FURTHER DETAILS CONCERNING CNO'S KNOWLEDGE OF THE
         SDE INVESTIGATION**

2.  At the time CNO filed the current action, CNO was on notice that the Secretariat for

    Economic Law ("SDE") had initiated a confidential investigation commencing in

    June 2007 into CNO's exclusivity agreements with suppliers for the Rio Madeira

Project, including the exclusivity provision in its January 11, 2006 Agreement with General Electric.

3. SDE conducted its investigation behind closed doors.  CNO responded to questions from SDE and made presentations on the Rio Madeira project, but there was no hearing and CNO was not given the opportunity to review or respond to factual statements or representations made by its competitors, including General electric, and other government agencies.  Likewise, CNO was not given a chance to review or comment on the report prepared by the SDE staff discussing the alleged anti-competitive effect of the exclusivity agreements entered into between CNO and (1) General Electric, and (2) its hydromechanical suppliers.

4. At the time that CNO filed the current action, CNO believed that SDE investigation was still in progress.  CNO had no knowledge that an order from SDE was imminent or reason to anticipate that SDE would issue a preventive measure enjoining the enforcement of the exclusivity provision.  In fact, CNO was confident that SDE would ultimately conclude that the exclusivity agreement did not have an anti-competitive effect in view of the availability of numerous qualified manufacturers of hydroelectric turbines and generators in Brazil and abroad.

## II.    FURTHER DETAILS CONCERNING THE NEGOTIATION OF THE JANUARY 11, 2006 AGREEMENT

5. In the course of negotiating the January 11, 2006 Agreement with General Electric, I exchanged a number of drafts of the agreement with Jeffrey Wiener and others at General Electric.

6. As a part of this negotiation process, on December 20, 2005, I sent an e-mail to Luiz Kuster and others at General Electric, attaching a draft of the agreement.  This

draft did not include the provisions requiring that General Electric not pursue the Project with any other party. Attached as Exhibit 1 to this Declaration is a true and correct copy of my e-mail dated December 20, 2005 to General Electric and the corresponding attachment, along with an English translation of the attachment and a certification of the translation.

7.  On December 29, 2005, I received two e-mails from General Electric in response to my e-mail of December 20, 2005. The first one, which I received at 6:45 a.m., attached another version of the draft agreement, in English, which had been sent initially by Jeffrey Wiener to Luiz Kuster and then by the latter to me. This version had differences from the draft that I had sent on December 20, 2005. Luiz Kuster's e-mail to me forwarded Jeffrey Wiener's e-mail to him from the day before. In Jeffrey Weiner's e-mail, he notes that senior management at General Electric needed to review the agreement before it was finalized, as did the General Electric legal department. Specifically, Mr. Wiener stated that the agreement had not yet been reviewed by "Steve Swift nor by Legal" and that General Electric needed "Sr. Mgmt & Legal review after the New Year." Jeffrey Smith and Scott Stalica of General Electric are copied on Jeffrey Wiener's e-mail and his e-mail notes their involvement in the negotiation of the agreement. Attached as Exhibit 2 to this Declaration is a true and correct copy of the e-mail I received from General Electric on December 29, 2005 at 6:45 a.m. and the corresponding attachment, along with an English translation of the e-mail and a certification of the translation.

8.  The second e-mail I received from General Electric on December 29, 2005, sent at 4:31 p.m., had two attachments. One of them, named "Rio Madeira ATA DE

REUNIÃO GE 201205 (Port-Ing)," showed the language of the draft that I had sent on December 20, 2005 in both Portuguese and English, side by side. The other file, named "Rio Madeira MOM GE comments comparado Boni" was a comparative version of the file attached to the e-mail previously sent by GE earlier on the same day. As with the other version of the December 20, 2005 draft of the agreement, this version did not include the provisions requiring that General Electric not pursue the Project with any other party. The comparative version, attached to the second December 29, 2005 e-mail from General Electric, shows the differences between the version that I had sent on December 20,2005 and the version that General Electric sent on December 29, 2005 in redline. An item 5(e) is created and item 5(i) is supplemented, among other changes. These items concern General Electric's rights to withdraw from the consortium and its liability and obligations should it chose to do so. As with the December 20, 2005 draft of the agreement, neither of the December 29, 2005 drafts of the agreement included the provisions requiring that General Electric not pursue the Project with any other party. Exhibit 3 to this Declaration is a true and correct copy of the e-mail I received from General Electric on December 29, 2005 at 4:31 p.m. and the corresponding attachments, along with an English translation of this e-mail and a certification of the translation.

9. On the following day, December 30, 2005, I sent a further revised draft of the agreement that included CNO's comments to Jeffrey Wiener and others at General Electric. CNO's comments are shown in redline and I note the changes made to items 5(e) and 5(h) (the latter of which previously had been item 5(i)) concerning General Electric's rights to withdraw from the consortium and its liability and

obligations should it chose to do so. As with the previous drafts of the agreement, this next draft did not include the provisions requiring that General Electric not pursue the Project with any other party. Exhibit 4 to this Declaration is a true and correct copy of my e-mail dated December 30, 2005 transmitting the December 30, 2005 draft of the agreement.

10. On January 9, 2006, I received an e-mail from Luiz Kuster with a new draft of the agreement, in which GE made additional changes, and I again note GE's insistence on changing items 5(e) and 5(h). The repeated revisions to these sections of the agreement show that the provisions concerning General Electric's rights to withdraw from the consortium and its liability and obligations should it chose to do so were heavily negotiated. Jeffrey Wiener and Jeffrey Smith are copied on this e-mail. This draft of the agreement was the one used to complete the negotiations and write the final version executed on January 11, 2006. Exhibit 5 to this Declaration is a true and correct copy of the e-mail I received from General Electric on January 9, 2006 and the corresponding attachment, along with an English translation of this e-mail and a certification of the translation.

11. On January 12, 2006, I sent an e-mail to Luiz Kuster and Jeffrey Wiener attaching the final version of the agreement, which had been executed the day before. Exhibit 6 to this Declaration is a true and correct copy of the e-mail I sent to General Electric on January 12, 2006 and the corresponding attachment, along with an English translation of this e-mail and a certification of the translation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____, 2007

_____
JOSÉ BONIFÁCIO PINTO JÚNIOR

# TRANSLATORS' CERTIFICATE

I, Timothy Yuan, hereby certify that I speak and write both the Portuguese and English languages; that I have translated the foregoing **9/27/2007 José Bonifácio Pinto Júnior Supplemental Declaration** to the best of my ability; and that it is a true and correct translation to the best of my knowledge, information, and belief.

_____    9/27/07
Signature                            Date

KAVITHA REDDY
NOTARY PUBLIC-STATE OF NEW YORK
No. 02RE6154611
Qualified in New York County
My Commission Expires October 23, 2010

TRIBUNAL FEDERAL DOS ESTADOS UNIDOS
DISTRITO SUL DE NOVA YORK

---

| | | |
|---|---|---|
| CONSTRUTORA NORBERTO ODEBRECHT S.A., | : | |
| | : | |
| Autora, | : | Ação Civil Nº |
| | : | 07-8014 (CM) |
| v. | : | |
| | : | |
| GENERAL ELECTRIC COMPANY, GENERAL | : | |
| ELECTRIC INTERNATIONAL, INC., GE | : | |
| INFRASTRUCTURE, INC., GE POWER SYSTEMS, | : | |
| INC., GE ENERGY LLC e GE HYDRO POWER, INC., | : | |
| | : | |
| Rés. | : | |

---

### DECLARAÇÃO SUPLEMENTAR DE JOSÉ BONIFÁCIO PINTO JÚNIOR EM OPOSIÇÃO AO PEDIDO DE INDEFERIMENTO APRESENTADO PELAS RÉS

JOSÉ BONIFÁCIO PINTO JÚNIOR, nos termos do 28 U.S.C. § 1746, faz as seguintes declarações:

1. Sou um Diretor de Projetos da Construtora Norberto Odebrecht S.A. ("CNO"), a autora desta ação e maior empresa de construção civil no Brasil. Apresento esta declaração suplementar em oposição ao pedido apresentado pela General Electric para o indeferimento da petição. Salvo indicação em contrário, tenho conhecimento pessoal dos fatos dispostos na presente Declaração.

### I. DETALHES ADICIONAIS REFERENTES AO CONHECIMENTO DA CNO ACERCA DA INVESTIGAÇÃO DA SDE

2. Na ocasião em que entrou com a presente ação, a CNO estava informada de que a Secretaria de Direito Econômico ("SDE") havia iniciado, em junho de 2007, uma investigação confidencial dos acordos de exclusividade da CNO com fornecedores

para o Projeto Rio Madeira, inclusive da disposição de exclusividade constante do Acordo de 11 de Janeiro de 2006 com a General Electric.

3. A SDE realizou sua investigação em sigilo. A CNO respondeu às perguntas da SDE e fez apresentações sobre o Projeto Rio Madeira, mas não houve nenhuma audiência e a CNO não teve a oportunidade de examinar ou responder a declarações ou afirmações factuais feitas pelas concorrentes, inclusive a General Electric, e outros órgãos do governo. À CNO também não se permitiu examinar ou oferecer comentários sobre o relatório elaborado pela equipe da SDE, no qual se discutiu o alegado efeito anti-competitivo dos acordos de exclusividade celebrados entre a CNO e (1) a General Electric e (2) seus fornecedores de equipamentos hidromecânicos.

4. Na ocasião em que entrou com esta ação, a CNO acreditava que a investigação da SDE continuava em andamento. A CNO não estava ciente de que a SDE estava prestes a emitir uma ordem nem tinha motivo para pensar que a SDE emitiria uma medida preventiva para proibir a aplicação da disposição de exclusividade. Na realidade, a CNO estava convicta de que a SDE chegaria à conclusão de que o acordo de exclusividade não tinha nenhum efeito anti-competitivo, à luz da disponibilidade de vários fabricantes qualificados de turbinas e geradores hidrelétricos no Brasil e outros países.

## II.  DETALHES ADICIONAIS ACERCA DA NEGOCIAÇÃO DO ACORDO DE 11 DE JANEIRO DE 2006

5. No decurso da negociação do Acordo de 11 de Janeiro de 2006 com a General Electric, troquei várias minutas do acordo com Jeffrey Wiener e outros indivíduos na General Electric.

2

6. Em 20 de dezembro de 2005, como parte desse processo de negociação, enviei um e-mail para Luiz Kuster e outros indivíduos na General Electric, com uma minuta do acordo em anexo. Essa minuta não incluía as disposições que exigiam a não participação da General Electric no Projeto com nenhuma outra parte. Em anexo à presente Declaração, o Documento 1 é uma cópia fiel e correta de meu e-mail datado em 20 de dezembro de 2005, destinado à General Electric, e do correspondente anexo, juntamente com uma tradução do anexo, em inglês, e a certificação da tradução.

7. Em 29 de dezembro de 2005, recebi dois e-mails da General Electric em resposta a meu e-mail de 20 de dezembro de 2005. O primeiro deles, recebido às 6:45 hs. da manhã, continha em anexo outra versão da minuta do acordo em inglês, que havia sido enviada, inicialmente, por Jeffrey Wiener para Luiz Kuster e deste para mim. Essa versão apresentava diferenças em relação à minuta que eu havia enviado no dia 20 de dezembro de 2005. O e-mail de Luiz Kuster para mim repassou o e-mail que Jeffrey Wiener lhe havia enviado na véspera. O e-mail de Jeffrey Wiener observa que a gerência superior da General Electric precisava analisar o acordo antes de sua finalização, assim como o departamento jurídico da General Electric. Especificamente, o Sr. Wiener afirmou que o acordo ainda não havia sido analisado por "Steve Swift nem pelo Jurídico" e que a General Electric precisava da "análise da Gerência Superior e do Jurídico após o Ano Novo." Jeffrey Smith e Scott Stalica da General Electric estão incluídos para receber cópias do e-mail de Jeffrey Wiener, o que indica seu envolvimento nas negociações do acordo. Em anexo à presente Declaração, como Documento 2, está uma cópia fiel e correta do e-mail que recebi

3

da General Electric no dia 29 de dezembro de 2005, às 6:45 da manhã, e do

respectivo anexo, juntamente com uma tradução do e-mail, em inglês, e a

certificação da tradução.

8. O segundo e-mail que recebi da General Electric no dia 29 de dezembro de 2005,

enviado às 16:31 hs., continha dois anexos. Um deles nomeado de "Rio Madeira

ATA DE REUNIÃO GE 201205 (Port-Ing)" apresentava o texto da minuta enviada

por mim no dia 20 de dezembro de 2005, em português e inglês, lado a lado. O

outro arquivo, nomeado "Rio Madeira MOM GE comments comparado Boni" era

uma versão comparada do arquivo anexado ao e-mail anteriormente enviado pela

GE, no mesmo dia 29. Como a outra versão da minuta do acordo, a de 20 de

dezembro de 2005, essa versão não incluía as disposições que exigiam a não

participação da General Electric no Projeto com nenhuma outra parte. Na versão

comparada do segundo e-mail de 29 de dezembro de 2005 da General Electric,

pode-se observar que as diferenças existentes entre a versão que enviei no dia 20 de

dezembro de 2005 e a versão que a General Electric enviou no dia 29 de dezembro

de 2005 estão apresentadas nas correções indicadas, podendo-se destacar, entre

outras, a criação do item 5(e) e a complementação do item 5(i). Esses itens tratam

dos direitos da General Electric de retirar-se do consórcio e de sua responsabilidade

e obrigações caso opte por fazê-lo. Como na minuta de 20 de dezembro de 2005 do

acordo, as duas minutas de 29 de dezembro de 2005 do acordo não incluíam as

disposições que exigiam a não participação da General Electric no Projeto com

nenhuma outra parte. O Documento 3, em anexo à presente Declaração, é uma

cópia fiel e correta do e-mail que recebi da General Electric em 29 de dezembro de

2005, às 16:31 hs., e dos respectivos anexos, juntamente com uma tradução desse e-mail, em inglês, e a certificação da tradução.

9.  No dia seguinte, 30 de dezembro de 2005, enviei para Jeffrey Wiener e outros indivíduos na General Electric outra minuta revisada do acordo, com os comentários da CNO. Os comentários da CNO estão apresentados nas correções indicadas e chamo a atenção para as alterações nos itens 5(e) e 5(h) (este último anteriormente foi denominado item 5(i)), referentes aos direitos da General Electric de retirar-se do consórcio e de sua responsabilidade e obrigações caso opte por fazê-lo. Como nas minutas anteriores do acordo, essa nova minuta não incluía as disposições que exigiam a não participação da General Electric no Projeto com nenhuma outra parte. O Documento 4, em anexo à presente Declaração, é uma cópia fiel e correta de meu e-mail datado em 30 de dezembro de 2005, transmitindo a minuta de 30 de dezembro de 2005 do acordo.

10. No dia 09 de janeiro de 2006, recebi de Luiz Kuster um e-mail com uma nova minuta do acordo onde a GE realizou outras alterações onde destaco a insistência da GE em alterar os itens 5(e) e 5(h). As repetidas revisões dessas seções do acordo demonstram a intensa negociação das disposições referentes aos direitos da General Electric de retirar-se do consórcio e de sua responsabilidade e obrigações caso opte por fazê-lo. Jeffrey Wiener e Jeffrey Smith receberam cópias desse e-mail. Essa minuta do acordo foi a minuta usada para concluir as negociações e redigir a versão final assinada no dia 11 de janeiro de 2006. O Documento 5, em anexo à presente Declaração, é uma cópia fiel e correta do e-mail que recebi da General Electric no

5

dia 9 de janeiro de 2006 e do respectivo anexo, juntamente com uma tradução desse e-mail, em inglês, e a certificação da tradução.

11. Em 12 de janeiro de 2006, enviei um e-mail para Luiz Kuster e Jeffrey Wiener com a versão final do acordo, assinada na véspera, em anexo. O Documento 6, em anexo à presente Declaração, é uma cópia fiel e correta do e-mail que enviei para a General Electric no dia 12 de janeiro de 2006 e do respectivo anexo, juntamente com uma tradução desse e-mail, em inglês, e a certificação da tradução.

Declaro, sob pena de perjúrio nos termos das leis dos Estados Unidos da América, que a Declaração acima é fidedigna e correta.

Firmado em _2 7 de dezembro_, 2007

JOSÉ BONIFÁCIO PINTO JÚNIOR

6