UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| CONSTRUTORA NORBERTO ODEBRECHT S.A., | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 07 CIV 8014 (CM) |
| v. | : | |
| GENERAL ELECTRIC COMPANY, GENERAL ELECTRIC INTERNATIONAL, INC., GE INFRASTRUCTURE, INC., GE POWER SYSTEMS, INC., GE ENERGY LLC and GE HYDRO POWER, INC., | : | |
| Defendants. | : | |

---

## DECLARATION OF JOÃO GRANDINO RODAS
## ON BRAZILIAN LAW

JOÃO GRANDINO RODAS, declares:

1.      I currently am the Dean and a full tenured professor of the University of São Paulo Law School.  I also currently serve as judge of the MERCOSUR Permanent Tribunal of Appeals.  In my close to forty years in the legal profession, I also have served as a judge on the Federal Court of Appeals for São Paulo, and as the Legal Adviser of the Brazilian External Affairs Ministry.

2.      I have a particular expertise in matters relating to economic and antitrust laws. Thus, between 2000 to 2004, I was the President of the Administrative Council for Economic Protection (Conselho Administrativo de Defesa Econômica ("CADE"), the primary federal agency responsible for enforcing Brazil's antitrust laws, and the only such government agency with the authority to determine that a particular practice is or is not anti-competitive as a matter

of law. I also have served as a Judge of the Administrative Tribunal of the Latin American Economic System (Full Portuguese Name ("SELA").

3.　　I hold law degrees from the University of São Paulo Law School and Harvard Law School (1978). My curriculum vitae is appended hereto as Exhibit 1.

4.　　I have been asked by Plaintiff, Construtora Norberto Odebrecht S.A. ("CNO"), to review an Order issued by the Office of Economic Law (Secretaria de Direito Econômico ("SDE") of the Ministry of Justice on September 14, 2007 and to give an opinion on each of the following issues:

a.　　whether SDE exceeded its powers under Brazilian law by declaring that the exclusivity clause in the January 11, 2006 Agreement between CNO and General Electric is anti-competitive and by issuing an injunction barring CNO from enforcing that clause;

b.　　whether the opinion of SDE that the exclusivity clause is unenforceable is a definitive ruling on the merits that is entitled to any deference before CADE or the courts;

c.　　whether the injunction prohibiting CNO from enforcing the exclusivity clause against General Electric bars CNO from seeking relief from the order in the Brazilian courts or in the New York litigation;

d.　　whether the Brazilian antitrust authorities or the Brazilian courts could apply Brazilian antitrust law to General Electric entities outside of Brazil;

e.　　whether the statements made in the declaration of Marcello Muriel dated September 12, 2007 are accurate statements of Brazilian law.

5.　　In giving my opinions on subjects (a)-(e) above, I have not been asked to review the ultimate merits of the SDE's determinations, only to identify some of the legal flaws and shortcomings in the SDE's analysis and actions, of which there are many.

6.　　A summary of my opinions is as follows:

- The SDE's Order is in violation of Article 14, Subparagraphs VIII, XI and XII, and Article 52, § 1 of Law No. 8,884/94, insofar as it exceeds the SDE's legal powers and encroaches on the legal powers of CADE.

- CADE is the only agency with legal authority to determine whether there has been a violation of Brazil's antitrust laws, as provided for by Article 7, Subparagraphs II and III of Law No. 8,8884/94. SDE does not have such authority under law, but is limited to gathering evidence to determine whether CADE should institute a proceeding and referring the matter to CADE for a decision on the merits..

- The SDE had no authority to render a decision on or to void the exclusivity clause in the January 11, 2006 Agreement.

- The SDE's Order violates Article 5, Subparagraph LV of the Federal Constitution, which ensures the accused the right to adversarial proceedings and due process, even in administrative proceedings.

- The SDE's Order was issued in violation of Article 3 the Law of Administrative Process (Law No. 9,784/99), which provides that those governed have a right to be informed of the progress of administrative proceedings in which they are affected parties, to have access to the records of the proceedings, to obtain copies of the documents contained therein, and to be informed of the decisions rendered.

- SDE did not provide CNO with access to the process, provide it with an opportunity to present a defense, or even inform CNO of the specific allegations being made against it.

- The SDE's Order is improper under Brazilian law because the SDE has imposed an injunction on CNO that has an irreversible effect -- even if the exclusivity clause is found to be enforceable. The SDE is only entitled to enter injunctions of a provisional, reversible nature.

- The SDE's Order is not supported by no rigorous economic analysis, delimitation of the relevant market for products and services, or of the relevant geographical market. This failure is a dereliction of the SDE's duties.

- The decision of the Federal Court on September 20, 2007 is incorrect because SDE clearly violated its own rules and regulations in issuing the preventive measure without first holding a formal Preliminary Inquiry or Administrative Process.

3

- Under Brazilian conflicts principles, Brazilian antitrust laws do not have extra-territorial effect.

- The SDE Order does not restrain Odebrecht's rights to appeal the ruling in the Brazilian courts or to seek to enforce the exclusivity clause against GE in foreign courts.

- The statements and opinions made in the Declaration of Marcelo Muriel dated September 12, 2007 are correct statements of Brazilian law.

- If Odebrecht had sought to sue GE in Brazil, it would have been required to serve GE by letters rogatory through diplomatic channels. The letter rogatory process is slow and would takes months if not a year or more to complete. As a practical matter, it would have been impossible for Odebrecht to perfect service on GE prior to the originally scheduled date for the Madeira River auction on October 30, 2007.

7.    In giving this opinion, I reviewed the following documents and such other materials as I felt necessary to issue this opinion:

- The SDE Order published in the Official Gazette on September 14, 2007.

- The Nota Técnica prepared by SDE.

- The decision of the Federal Court (1st Department) in Brasilia dated September 17, 2007 enjoining the enforcement of the SDE Order.

- The decision of the Federal Court (1st Department) in Brasilia dated September 20, 2007.

- The amicus curiae brief submitted to the Federal Court in the name of CADE.

- The memorandum of law submitted by General Electric in support of its motion to dismiss.

- The declaration of Marcelo Muriel dated September 12, 2007.

- The declaration of Ubiratan Mattos dated September 27, 2007 describing the background of the SDE investigation.

4

## I.     GENERAL CONSIDERATIONS ON BRAZILIAN ANTITRUST LAW

8.     The Protection of Competition in Brazil is regulated by Law No. 8,884 of June 11, 1994, the object of which is to protect the constitutional principles of freedom of initiative, free competition, social function of property, consumer protection and combating the abuse of economic power (a true and correct copy of Law No. 8,884/94 is appended hereto as exhibit 2 together with an English translation).

9.     Law No. 8,884/94 is applied by the Administrative Council for Economic Protection ("CADE" – Conselho Administrativo de Defesa Econômica), a Federal Semi-Autonomous State Agency linked to the Ministry of Justice, based in the Federal District, and composed of six Councilors and one Chairperson.

10.     CADE has basically two functions: the enforcement of Brazilian antitrust law and the prevention of anticompetitive conduct.  The preventative function consists of controlling acts and contracts that may lead to economic concentration or the abusive exercise of a dominant position, while the enforcement function seeks to identify and punish entities that have committed violations against the economic order.  It is a quasi-judicial body that hears testimony, considers evidence, and renders decisions on the merits.

11.     In addition to CADE, the Brazilian System for the Protection of Competition includes the Office of Economic Monitoring (Secretaria de Acompanhamento Econômico ("SEAE") of the Ministry of Finance and the SDE.  The SEAE is not involved in the present matter.

## II.     ADMINISTRATIVE PROCESS TO INVESTIGATE VIOLATIONS AGAINST THE ECONOMIC ORDER IN BRAZIL

12.     The process of investigating a violation against the economic order is two-phased – the first is the investigation itself, under the jurisdiction of SDE; the second is the decision-

5

making, under the sole jurisdiction of CADE. SDE can only refer cases of suspected antitrust violations to CADE.

13.     Pursuant to Ministerial Directive No. 4 of January 5, 2006, issued by the Ministry of Justice, the investigation of violations against the economic order is conducted in one of the following ways within SDE:

      (i)     Preparatory Administrative Procedure;

      (ii)    Preliminary Inquiry; and

      (iii)   Administrative Process.

14.     The Preparatory Administrative Procedure precedes the Preliminary Inquiry and the Administrative Process, and is initiated whenever SDE understands that there is insufficient evidence for opening a Preliminary Inquiry or Administrative Process (Article 47 § 1 of Ministerial Directive No. 4/2006).

15.     The Preparatory Administrative Procedure is confidential in nature and the decision to initiate a Preliminary Inquiry or Administrative Process is rendered within SDE (Article 47 § 2 of Ministerial Directive No. 4/2006).

16.     The Preliminary Inquiry, also conducted by SDE, consists of an investigatory procedure the purpose of which is to search for elements of violation against the economic order that are sufficient to initiate an Administrative Process. If the investigation, which should be completed within sixty days, finds that there is evidence of violation, an Administrative Process is initiated with the objective of verifying whether that evidence effectively constitutes a violation against the economic order.

17.     Should SDE decide to initiate a Preliminary Inquiry or Administrative Process, this must be done according to the procedures provided under Law No. 8,884/94 (due process of

law), which require that the defendant be given a detailed statement of the charges, an opportunity to see the evidence in support of the charges, the right to submit a defense, and the right to be heard.

18.     Once the evidentiary phase is completed, SDE issues a brief report and presents its preliminary conclusions, allowing the party to submit its final arguments. Then SDE issues an opinion closing the investigation or charging the party under investigation if there is probable cause to believe that the accused has violated the antitrust laws. In either case SDE refers the case to CADE for a decision on the merits whether the accused has violated the antitrust laws as charged.

19.     **Only CADE may render a decision on whether or not there exists a violation against the economic order**, as established under Article 7, Subparagraphs II and III of Law No. 8,884/94. That law provides *in verbis*:

> *Art. It is within the purview of CADE: (...)*
>
> *II – To render a decision on whether there exists a violation against the economic order and to apply the penalties provided under the law;*
>
> *III – to render a decision on processes initiated by the Office of Economic Law of the Ministry of Justice;*
>
> *(...)*

20.     **The investigation does not end within SDE.** If CADE understands there to be a need, it may supplement the evidence gathering, as CADE has the prerogative to request additional information that it deems pertinent to the case (*see* Article 7, Subparagraphs, IX, X, and XI of Law No. 8,884/94) and may order additional investigations. The party under investigation is assured the right to produce supplementary evidence (Article 43 of Law No. 8,884/94) and a right to be heard.

21.    CADE's decision is not subject to appeal within the administrative sphere, but may be challenged in the Judicial System, which has final say pursuant to Article 5, XXXV of the Brazilian Constitution, and may review the entire administrative act, that is, CADE's decision, and examine its merit, whether it is reasonable, thus avoiding the misuse of its function or the abuse of power. In this regard, the Superior Court of Justice has decided that:

> *1. In interpreting the law, those who apply it must focus on its definitive aspect to know the true meaning and reach of the standard. 2. **Administrative Acts must serve their purpose, meaning that the Judicial System's duty to be always mindful of excesses on the part of the Administration, which does not imply an invasion of its jurisdiction. 3.** Art. 86 of Law No. 8,666/93 imposes an administrative penalty for delays in the performance of a service contracted through a competitive bidding process, but does not authorize the establishment of an exorbitant percentage that characterizes the illicit enrichment of government entities. 4. Possibility of supplementary application of private law standards to administrative contracts (Art. 54 of the Law of Competitive Bidding). 5. Principle of Reason. 6. Appeal denied. Decision (RESP 330677-RS, JOSÉ DELGADO, DJ 02.04.02)*

## III.    THE ISSUANCE OF A PREVENTIVE MEASURE

22.    In its Order of September 14, 2007, the SDE issued a preventive measure similar to an injunction.

23.    The authority of the SDE to issue a preventive measure is based on Article 52 of Law No. 8,884/94 and is intended to ensure the effectiveness of the future decision to be rendered by CADE, and to prevent a party from thwarting the final goal of the process. It is a provisional remedy similar in all respects to restraining orders in civil cases.

24.    The SDE may, in any phase of an administrative process, adopt a preventive measure to order the cessation of an anticompetitive practice and to revert to a status quo if two circumstances are met: (1) *fumu bonis iuris* (sufficient evidence of an anticompetitive practice) and (2) *periculum in mora* (reasonable concern of irreparable or hard to repair injury to the market or that the final result of the process be moot should the alleged violations continue to be practiced).

25.     In the preventive measure, SDE may stipulate the immediate cessation of the practice and will order, whenever possible, the reversal to the status quo.  Under § 2 of the aforementioned Article 52 of Law No. 8,884/94, the decision of the SDE to issue a preventative measure may be voluntarily appealed to CADE within five days.

**IV.     THE ILLEGALITIES OF THE PREVENTIVE MEASURE IMPOSED BY SDE AND OF THE ADMINISTRATIVE PROCESS INITIATED AGAINST CNO**

26.     On 9/14/2007, SDE converted the Preparatory Administrative Procedure into an Administrative Process for the purpose of investigating the alleged cornering of the market to prevent (i) suppliers of generators, bulb turbines, and related equipment and (ii) suppliers of electrical, electromechanical, and hydromechanical equipment from participating in the auctions for the Madeira River Hydropower Plants.

27.     On the same date and in the same order, SDE issued a preventive measure, ordering (i) the cancellation of the exclusivity provision (but not the confidentiality provision) entered into in the January 11, 2006 Agreement between CNO and General Electric; and (ii) the partial cancellation of the exclusivity clause (but not the confidentiality clause) entered into in the "Confidentiality and Exclusivity Agreements" between CNO and its partners – Alstom, VA Tech, and Voith Siemens – to take effect only in the event that CNO does not win the auction.

28.     Furthermore, SDE established a daily penalty in the amount of R$ 100,000.00 (one hundred thousand reais), to apply until a final decision is reached in the Administrative Process, for noncompliance with the preventive measure.

**A.     Violation Of Due Process Of Law, Of The Principles Of Due Process And Adversarial Proceedings.**

29.     Prior to September 13, 2007, the SDE characterized its investigation as a mere Preparatory Administrative Procedure since there was no formal charge pending against CNO.

9

At this stage, a mere collection of information was underway, for which reason the investigation was conducted in a confidential manner, as allowed under Ministerial Directive No. 4/2006. There is no time limit for the completion of an informal inquiry.

30.    Had the SDE gathered sufficient evidence of a probable violation against the economic order the procedure should have been converted into a Preliminary Inquiry or Administrative Process prior to the issuance of a preventative measure, not only to provide for a proper and perfectly transparent gathering of evidence but, more importantly, to give the companies under investigation the opportunity to fully exercise their right to a defense and adversarial proceedings pursuant to the Federal Constitution and the general principles of law.

31.    The Law of Administrative Process (Law No. 9,784/99) (a copy of law No. 9,784/99 is appended hereto as exhibit 3 with an English translation of Article 3), which is applicable to all Federal Government entities, clearly establishes in its Article 3 that those governed have the right to be informed of the progress of formal administrative processes in which they are affected parties, to have access to the records, to obtain copies of documents contained therein and to be informed of the decisions rendered.

32.    However, notwithstanding all these guarantees, CNO did not have access to the process, SDE took advantage of the cloak of confidentiality of a Preparatory Administrative Procedure in order to review, process, and condemn CNO behind closed doors, without any right to a defense and without any formal charge against CNO.

33.    For months, the SDE gathered information from CNO's direct competitors (without obtaining CNO's responses to these accounts), in order to declare, under the cover of a mere preparatory procedure, the cancellation, in whole or in part, of four valid and enforceable agreements: the January 11, 2006 agreement between GE and CNO and the "Confidentiality and

10

Exclusivity Agreement" dated June 12, 2006, as amended on October 26, 2006, among CNO and Alstom Hydro Energia Brasil Ltda., VA Tech Hydro Brasil Ltda., and Voith Siemens Hydro Generation Ltda.

34.    Again, one must be reminded that the Administrative Process was initiated together with the accusation against CNO. The SDE failed to open a Preliminary Inquiry, or to actually conduct the proper procedures associated with an Administrative Process, prior to issuing the September 14, 2007 Order. This was a dereliction of the SDE's responsibilities.

35.    Consistent with an investigation that was no more than a Preparatory Administrative Procedure (which would not have justified even the initiation of a Preliminary Inquiry), the Technical Note that accompanied and provided the support for the September 14, 2007 Order contains no rigorous economic analysis, delimitation of the relevant markets or survey of data regarding the commercial conditions of supply, which could justify any finding of harm to the market or the auction. The Technical Note's analysis is fatally flawed by the failure to address the possibility that foreign manufacturers could lease manufacturing facilities in Brazil to manufacture turbines. IESA, for example, has a huge industrial plant in Araraquara that can be leased to fabricate turbines.

36.    It should be added that SDE ignored a significant part of the documents that were introduced in the record by several companies that received letters during the Preparatory Administrative Procedure and confirmed their capability of supplying bulb turbines according to the required specifications, requiring merely the third party's design. It is again necessary to make it clear that all it takes is to obtain a design or technology abroad and lease manufacturing facilities to build the turbines in Brazil, or enter into joint ventures with companies that have such manufacturing facilities.

11

**B.    SDE Exceeded Its Powers**

37.    Pursuant to the language in Article 52 of Law No. 8,884/94, the SDE or CADE may adopt preventive measures only when there is evidence that certain conduct causes or may cause irreparable or difficult to repair injury to the market.

38.    In the investigation of a violation against the economic order, it is within the purview of SDE to investigate the alleged facts and to gather sufficient elements for CADE's review.  The limits of SDE's activity and powers are established under Article 14 of Law No. 8,884/94, in verbis:

*Art. 14.  It is within the purview of SDE:*

*I – To monitor compliance with this law by watching and following market practices;*

*II – To permanently monitor the commercial activities and practices of individuals or corporations that occupy a dominant position in a relevant market for goods or services in order to prevent violations of the economic order, for which it may request the necessary information and documents, safeguarding the legal confidentiality, as the case may be;*

*III – To proceed, in light of evidence of violation of the economic order, to preliminary inquiries in order to initiate an administrative process;*

*IV – To reach a conclusion regarding the lack of evidence and thus to close the records of the preliminary inquiries;*

*V – To request information from any persons, agencies, authorities, and public or private entities, safeguarding the legal confidentiality, as the case may be, as well as order any investigations that may be required for the performance of its functions;*

*VI – To initiate an administrative process to investigate and combat violations of the economic order;*

*VII – To mandatorily seek CADE's confirmation when deciding on closing preliminary inquiries or administrative processes;*

*VIII – To transfer, for CADE's review, the processes that it initiates when it understands there to be a characterization of a violation of the economic order;*

*IX – To enter into an agreement of cessation under conditions it establishes, submitting it to CADE and enforcing the compliance therewith;*

*X – To suggest to CADE conditions for entering into an agreement of performance and to enforce the compliance therewith;*

*XI – To adopt preventive measures that lead to the cessation of a practice that constitutes a violation of the economic order, establishing a deadline for compliance therewith and the amount of a daily penalty to be applied in case of noncompliance;*

*XII – To receive and gather evidence in the processes for CADE's review, including consultations, and to enforce the compliance with the decisions rendered by CADE;*

*XIII – To guide public administration bodies with respect to the adoption of the measures required for compliance with this law;*

*XIV – To conduct studies and research for the purpose of guiding the policy for the prevention of violations of the economic order;*

*XV – To instruct the public with respect to the various forms of violation of the economic order and the means of preventing and combating them;*

*XVI – To carry out other attributions established under the law.*

39.    As set forth above, the only action that the SDE may take when it determines that there is insufficient evidence, is to close the records of a Preliminary Inquiry (Subparagraph IV). However, even in this case, SDE must seek CADE's ratification of its understanding (Subparagraph VII). **It is also clear that SDE's duty is limited to receiving and gathering evidence for processes to be adjudicated by CADE** (Subparagraph XII).

40.    Even the authority to adopt preventive measures pursuant to said Article 14, Subparagraph XI and Article 52, § 1 of Law No. 8,884/94 does not permit SDE to render a decision.  SDE's duty is limited only to ordering the cessation of a practice, without any implication of an advanced judgment regarding the claim, which is within CADE's sole jurisdiction.  And CADE itself can reach a decision only after the right to adversarial

13

proceedings is exercised, under strict adherence to due process of law, as guaranteed under Article 5, Subparagraph LV of the Federal Constitution.[1]

41.    It should also be noted that Brazilian Law is clear: **it is the exclusive jurisdiction of CADE to render decisions on the existence of a violation against the economic order and the processes initiated by SDE.**  In verbis:

> *Art. 7 It is under the purview of CADE:*
>
> *(...)*
>
> *II – To render a decision on whether there exists a violation against the economic order and to apply the penalties provided under the law;*
>
> *III – to render a decision on processes initiated by the Office of Economic Law of the Ministry of Justice;*
>
> *(...)*

42.    In this case, the SDE exceeded its powers when it ordered: (i) the immediate cancellation of the exclusivity provision (but not the confidentiality provision) of the January 11, 2006 Agreement between CNO and General Electric; and (ii) the partial cancellation of the exclusivity clause (but not the confidentiality provision) of the "Confidentiality and Exclusivity Agreement" between CNO and its partners – Alstom, VA Tech, and Voith Siemens – to take effect in the event CNO does not win the auction.  The SDE is not authorized to render a decision on or void contract clauses.

43.    Therefore, the SDE's decision is in violation of Article 14, Subparagraph VIII, XI and XII, and Article 52, § 1 of Law No. 8,884/94, insofar as it exceeds its powers, and also is in

---

[1] Litigants in a judicial or administrative action and the accused in general are ensured the right to adversarial proceedings and due process, with the means and resources inherent thereto.

violation of Article 5, Subparagraph LV of the Federal Constitution, which ensures the accused in general the right to adversarial proceedings and due process, even in administrative processes.

44.    Notwithstanding the above, the preventive measure granted by the SDE is an injunction and therefore it is temporary and provisional in nature and may be revoked at any time. In fact, the preventive measure may be lifted in the course of the formal administrative proceeding which has been instituted to consider whether there is cause to make a referral to CADE against CNO. A preventive measure may only become permanent after a decision from CADE, which has exclusive jurisdiction to adjudicate cases involving a violation of the economic order.

45.    Finally, it should be noted that CADE will render its decision only after the fact-finding phase of the SDE process and that, until now, CNO has not even submitted a defense and has not had the opportunity to exercise its right to due process and adversarial proceedings.

## C.    The Preventive Measure Adopted by SDE Is Inconsistent With The Legal Nature Of Preventive Measures

46.    Pursuant to the language in Article 52 of Law No. 8,884/94, SDE or CADE is responsible for adopting preventive measures when there is evidence that certain conduct causes or may cause irreparable or difficult to repair injury to the market, or renders the final result of the process moot.

47.    It is an established understanding among the most renowned scholars that a preventive measure is equivalent to a restraining order in a civil case and that it stems from a judge's general injunctive power provided under Article 798 of the CPC [Brazilian Code of Civil Procedure]. Therefore a preventive measure must be considered a provisional or interim remedy until a final decision is reached on the merits

48.     As explained by Professor José Roberto Bedaque, the "*admissibility of the anticipatory injunctive relief does not imply the acceptance of irreversibility of the anticipated effects. On the contrary, the injunctive nature of the relief imposes a provisional and revocable nature, which are characteristics that are incompatible with irreversibility.*"[2]

49.     Consistent with these legal boundaries to preventative measures, on September 8, 2007, the Brazilian Supreme Court decided to stay the effects of a decision adopted by CADE with respect to an act of concentration involving the Vale do Rio Doce company. According to the injunction granted by Justice Marco Aurélio, "*in light of the latent likelihood that the judgment that has been upheld by the Superior Court of Justice will be reversed once the interlocutory appeal and the extraordinary appeal are reviewed, with a decision in favor of the petition submitted by the appellant herein, all aspects of the case recommend that the injunction be granted in order to avoid the precipitation of events and the consequences thereof.*"[3]   That is, the Brazilian Supreme Court deemed it inappropriate to allow CADE to enter an order that, if later reversed, nonetheless would have had an irreversible effect

50.     The measure adopted by SDE in the September 14, 2007 Order purports to be neither provisional nor revocable.  It orders the immediate cancellation of the exclusivity clause entered into between CNO and General Electric so that General Electric will be free to join CNO's competitors in the auction of the Madeira River Hydropower Plant, which was scheduled to take place this coming October 30, 2007 and now has been postponed to November 22, 2007.

---

[2]   BEDAQUE, José Roberto dos Santos. Tutela cautelar e tutela antecipada: tutelas sumárias e de urgência (tentativa de sistematização) [Restraining Order and Anticipatory Relief: Summary and Urgent Injunctions (an Attempt at Systematization)]. São Paulo: Ed. Malheiros, 4th Edition, 2006, p. 269.

[3]   Petition 4.143-7 FEDERAL DISTRICT. Extraordinary Appeal No. 2007.01.00.024473-2/DF.

It further allows the cancellation of the exclusivity clauses entered into between CNO and its partners – Alstom, VA Tech and Voith-Siemens, in the event that CNO loses the auction.

51.    In other words, even if CADE determines that the exclusivity clauses were not anticompetitive, that decision will be moot, as the auction already will have been completed.  In fact, the very continuation of the administrative process investigating alleged anti-competitive practices will be moot by the time CADE reaches its decision.

52.    Therefore, in light of the fact that it purports to be an irreversible and not a provisional measure, I understand that the preventive measure imposed by SDE is illegal insofar as it violates Law No. 8,884/94.

53.    In the September 13 order (which was published in the Official Gazette on September 14, 2007), SDE directed the commencement of an Administrative Process.  In the course of this proceeding, CNO will have the right to contest the conclusions in the Nota Tecnica and to submit evidence at a hearing.  If CNO is successful, SDE will be required to vacate the preventive measure.

54.    The September 13 order, therefore, is merely temporary, and it is not a definitive expression of SDE's views.  As a practical matter, however, SDE's Administrative Process will not be concluded until long after the auction is held.

**D.    Another Illegality In The Technical Note: Initiation Of An Administrative Process To Investigate A Violation Against The Economic Order With Respect To Suppliers Of Electrical, Electromechanical, And Hydromechanical Equipment (other than Turbines)**

55.    As mentioned above, if the evidence of violation against the economic order is not sufficient to initiate an Administrative Process, the SDE may only open a Preliminary Inquiry. This procedure is established under the *opening paragraph* of Article 30 of Law No. 8,884/94.

17

56.    Throughout the Technical Note, SDE expressly concluded that there was insufficient evidence of an anti-competitive practice with respect to the suppliers of items (i) and (ii) above.  For example:

> 74.  For the construction of hydropower plants as large as Santo Antônio and Jirau, access to financing and insurers is critical to the feasibility of the project. However, it should be noted that, until the present time, the records do not contain sufficient evidence to indicate the existence of an anti-competitive practice on the part of Odebrecht for the purpose of restricting competing consortia's access to private banks and insurers.

> (...)

> 76.    The submissions do not contain either, until the present time, sufficient evidence to indicate the existence of an anti-competitive practice on the part of Odebrecht for the purpose of restricting competing consortia's access to suppliers of electrical and hydromechanical equipment.

Given these conclusions, for the SDE to have opened an Administrative Process of this nature, based solely on "complaints" from competitors that did not organize themselves for the auction in a timely fashion, but no economic analysis, and no due process, is at the very least an abuse.

57.    With respect to suppliers of electrical and hydromechanical equipment, no basis whatsoever for the opening of an Administrative Process is offered in the Technical Note, in flagrant violation of Article 2, Subparagraph VII of Law No. 9,784/99, which requires that the Public Administration indicate the de facto and de jure assumptions that underlie its decision.

58.    Law No. 8,884/94 is clear in its Article 30 that, in the absence of evidence of violation against the economic order, SDE could at most, based on the principle of legality, initiate a Preliminary Inquiry.

E.    **SDE Did Not Conduct A Proper Analysis Of The Potentially Affected Markets**

59.    It must be noted that exclusivity clauses are commonly used in commercial transactions in Brazil and are not presumed to be illegal under Law No. 8,884/94, thus requiring

18

an analysis of their effects case by case. Regarding this topic, Paula Forgioni offers the following commentary:

> *Considering the vertical agreements from a legal point of view, we cannot accept that they be reviewed if not with a case by case approach, in order to individualize the competitive effects that will be felt within a specific relevant market. The legal area of vertical agreements, more than any other antitrust principle, proves to be adverse to the establishment of fixed and unchanging rules, as part of modern economic theory wishes to do.*[4]

60.    In addition to a legal analysis, an economic analysis is indispensable, which is to say, the delimitation of the relevant market for the product and service as well as its geographic scope. The SDE did proceed to do this, and focused only on gathering information in the market from competitors, without an in-depth technical analysis, and justified the application of the preventive measure based on the argument that the agreements "according to all indications, can result in the cornering of the market" (Technical Note at 35).

61.    With respect to the review of conducts, CADE Resolution No. 20 of June 9, 1999 recommends the following steps be taken:

> *The main assumption to be initially verified in the analysis is that conducts that are harmful to competition, and not only to competitor(s) in general, require the pre-existence, the leveraging of a market for the benefit of another or the quest for a dominant position in the relevant market by those who practice them.*
>
> *Based on the rule of reason, these requirements constitute necessary but not sufficient conditions to consider a conduct to be harmful to competition. To reach this conclusion, one must assess its anti-competitive effects and weigh them against its potential offsetting benefits ("efficiencies").*
>
> *The basic steps of this analysis are:*
>
> *1.    Characterizing the conduct*
>
> *1.1    Identifying the nature of the conduct and defining its legal framework*

---

[4] FORGIONI, Paula. Os Fundamentos do Antitruste [The Basics of Antitrust]. São Paulo, Ed. Revista dos Tribunais, 2005, p. 461.

> *1.2     Verifying whether there is sufficient evidence of the conduct in the records.*
>
> *2.     Analyzing the Dominant Position*
>
> *2.1     Delimiting the relevant market(s).*
>
> *2.2     Estimating the participations in the group of companies in the relevant market(s).*
>
> *2.3     Analyzing the competitive conditions, both actual and potential (barriers to entry), in the relevant market(s) (including institutional conditions).*
>
> *3.     Analyzing the specific conduct*
>
> *3.1     Assessing the conduct's harm to competition in this/these (or other) market(s).*
>
> *3.2     Reviewing the possible gains from economic efficiency and other benefits generated by the conduct.*
>
> *3.3     Producing a final assessment (weighing) of the conduct's anti-competitive effects and economic efficiencies.*
>
> *According to the rule of reason, conduct that has anti-competitive effects which are not sufficiently outweighed by potential offsetting benefits/efficiencies shall be condemned.*

62.     There is no doubt that the Technical Note is also flawed in this regard, in failing to conduct a proper analysis, either from a legal point of view or from an economic perspective, of the competitive effects of the confidentiality agreements entered into by CNO.

**F.     THE SDE PREVENTIVE MEASURE DOES NOT PREVENT CNO FROM SEEKING JUDICIAL RELIEF IN THE BRAZILIAN COURTS OR IN THE PENDING ACTION IN U.S.**

63.     The SDE's preventive measure does not in any way prevent CNO from filing any action that it deems appropriate to protect its rights. The unfettered recourse to judicial relief is a basic and fundamental guarantee provided in Brazil under Art. 5, XXXV of the Federal Constitution.

64.     In light of the threat to a right enjoyed by CNO, which is about to suffer serious injury, precisely as a result of the preventive measure granted by the SDE, filing an action with a petition for urgent relief is perfectly appropriate. The Judicial System cannot refuse to consider the measure.

65.     It should be noted that it is not necessary to exhaust the options at the administrative level before filing a judicial action and, furthermore, that the administrative appeal against the SDE's decision does not stay the preventive measure while the appeal is pending. Therefore the serious risk of injury that CNO faces can be avoided only with a judicial decision.

## V.     THE REASONS WHY THE 1ST FEDERAL COURT OF THE FEDERAL DISTRICT'S DECISION IS MISTAKEN

66.     CNO filed a writ of mandamus against SDE in the 1st Federal Court of the Federal District in Brasilia to vacate the SDE Order and preventive measure.  The rules for a writ of mandamus are very strict.  The petitioner must show that the administrative agency, here SDE, exceeded its powers under the applicable statutes.  The court will not consider the merits of the case or substitute its judgment for that of the agency.   Consequently, the federal court's denial of the writ of mandamus on September 20, 2007 is not a decision on the merits that the SDE Order or the preventive measure was well founded or will be endorsed by CADE or upheld by the courts on the merits.

67.     In denying CNO's petition for an injunction, the Honorable Judge based her decision on two premises: (i) the investigation of disputed facts would not be proper in the context of a writ of mandamus; and (ii) the Judicial System would not be able to replace the SDE in its duties nor address the merit of the administrative act.

21

68.    I respectfully disagree with the court's decision.  CNO has appealed this decision to the intermediate federal court of appeals.  I understand that a decision is expected within a week.

**VI.    BRAZIL IS NOT AN ADEQUATE ALTERNATIVE FORUM FOR THE ENFORCEMENT OF THE EXCLUSIVITY AGREEMENT BETWEEN CNO AND GENERAL ELECTRIC**

69.    It is important to emphasize that Brazilian antitrust law does not have any extraterritorial effect.  Its application is restricted solely to Brazilian territory.  This signifies, obviously, that actions taken by the antitrust authorities do not have effect outside the limits of Brazilian territory.

70.    In addition, with respect to the legality of the SDE Order that considered the exclusivity clause in the September 11, 2006 contract to be illegal in Brazil, this action does not affect the validity of the contract in question outside Brazil.

**VII.    THE LEGAL OPINION OF MARCELLO MURIEL DATED SEPTEMBER 12, 2007 IS A CORRECT STATEMENT OF BRAZILIAN LAW**

71.    I have reviewed the legal opinions set forth in the Declaration of Marcello Muriel dated September 12, 2007 (attachment __).  The statements and opinions expressed in Dr. Muriel's declaration are correct statements of Brazilian law in all respects.  I adopt Dr. Muriel's opinion as my own and incorporate it herein by reference.

**VIII.    SERVICE OF PROCESS ON GE IN THE UNITED STATES**

72.    If CNO had chosen to sue the GE defendants in the New York action in Brazil, it would have had to resort to service by letters rogatory in the absence of a registered agent in Brazil.  The procedure for serving letters rogatory is formalistic and slow.  The documents have to be sent by the Brazilian Office of Foreign Affairs to the State Department in the United States in the proper form.  The State Department then arranges service on the named defendants.

22

73.     The process of serving foreign defendants by letters rogatory can easily take six months to a year to complete.  CNO would not have been able to complete service on GE prior to the October 30 date for the auction.   If CNO wanted to enjoin the GE defendants, its only practical recourse was to bring a lawsuit in the United States where the GE defendants were located and could be served in accordance with U.S. procedures.

## CONCLUSION

74.     In light of the analysis of the conduct adopted by SDE, one may conclude that the opening of the Administrative Process and the adoption of the preventive measure in the September 14, 2007 Order contain several illegalities.

75.     The Federal Constitution ensures CNO the right to challenge SDE's decision in the courts (Federal Constitution, Article 5, Subparagraph XXXV), including the courts of the United States.

76.     In addition, it is appropriate to file an appeal, which does not automatically stay the preventative measure, to CADE, which may uphold or revoke the preventive measure, in whole of in part (Article 52, § 2 of Law No. 8,884/94).  CADE is not bound by SDE's conclusions and may conduct a new review of the case, produce evidence and hear testimony. CADE's decision will prevail in the administrative sphere, but may be judicially reviewed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at São Paulo, State of São Paulo, on September 27, 2007.

_____
JOÃO GRANDINO RODAS

23