# EXHIBIT 2

Ministério da Justiça    Destaques do Governo



English Version

- Principal
- Institucional
  - O que é o CADE
  - Funções do CADE
  - Composição
  - CADE em Números
  - Horário de Funcionamento
  - Agenda do CADE
  - Taxas e Multas
  - Programa de Intercâmbio
  - Contato
- Internacional
  - Acordos Internacionais em Vigor
  - Legislation and Resolutions
  - Mercosul
  - OCDE
  - ICN
  - Organismos Internacionais
  - Outros Documentos/Other Documents
  - Peer Review
  - Regular Sessions Agenda
- Processual
  - Consulta processual
  - TCC
  - TCD
  - APRO
  - Medida Cautelar
  - Medida Preventiva
- Legislação
  - Constituição (artigos correlatos)
  - Leis
  - Decretos
  - Portarias
  - Resoluções
  - Regimento Interno
- Consulta Pública
- Jurisprudência
  - Pesquisa de Jurisprudência
  - Pesquisar por partes
  - Pesquisar por conselheiros
  - Pesquisar por processos
  - Súmula do CADE
- Sessões
  - Agenda Anual de Sessões
  - Pautas de sessões
    - Pautas das sessões ordinárias
    - Pautas das sessões extraordinárias
    - Pautas das sessões extraordinárias reservadas
    - Pautas das sessões reservadas

Conselho Administrativo de Defesa Econômica

- o Atas das sessões de distribuição
  - Sessões ordinárias de distribuição
  - Sessões extraordinárias de distrtibuição
  - Sessões reservadas de distribuição
- o Atas das sessões do plenário
  - Sessões ordinárias
  - Sessões extraordinárias
  - Sessões reservadas
- o Pauta Eletrônica
- o Gravações das sessões
- Licitação
  - o Licitação
  - o Registro de Preços
- Notícias
  - o Notícias
  - o Comunicados
  - o Cade Informa
- Publicações
  - o Revista de Direito Econômico
  - o Relatório Anual
  - o Cartilha do CADE
  - o Revista de Direito da Concorrência
- Restrito
  - o Clipping
  - o E-mail
  - o Proquest
- Site de Interesse

## Legislation and Resolutions

Law # 8884 of June 11, 1994

Law # 10149 of December 2, 2000

Resolution # 12

Resolution # 15

Resolution # 18

Resolution # 19

Resolution # 20

Resolution # 24

Resolution # 25

Resolution # 26

Resolution # 27

Resolution # 28

Resolution # 30

Conselho Administrativo de Defesa Econômica

Resolution # 32

Resolution # 36

Horizontal Merger Guidelines

**Brazilian antitrust laws**

# Law # 8.884
# of June 6th, 1994

LAW # 8884 OF JUNE 11, 1994
(OFFICIAL GAZETTE OF THE FEDERAL EXECUTIVE, JUNE 13, 1994)

> Changes the Administrative Council for Economic Defense — CADE into an independent agency, regulates antitrust measures, and makes other provisions.

THE PRESIDENT OF THE REPUBLIC:

I hereby make known that the Congress decrees and I sanction the following Law:

## TITLE I
## GENERAL PROVISIONS

### CHAPTER I
### OBJECT

Article 1. This Law sets out antitrust measures in keeping with such constitutional principles as free enterprise and open competition, the social role of property, consumer protection, and restraint of abuses of economic power.

Sole Paragraph. Society at large is entrusted with the legal rights protected herein.

### CHAPTER II
### TERRITORY

Article 2. Without prejudice to any agreements and treaties to which Brazil is a party, this Law applies to acts wholly or partially performed within the Brazilian territory, or the effects of which are or may be suffered therein.

Sole Paragraph. Foreign companies that operate or have a branch, agency, subsidiary, office, establishment, agent or representative in Brazil shall be deemed situated in the Brazilian territory.

## TITLE II
## THE ADMINISTRATIVE COUNCIL FOR ECONOMIC DEFENSE — CADE

### CHAPTER I
### INDEPENDENT AGENCY

Article 3. The Administrative Council for Economic Defense — CADE, an agency with authority throughout the Brazilian territory and created by Law # 4137 of September 10, 1962, shall henceforth become a federal independent agency (*autarquia federal*) reporting to the

Ministry of Justice, with headquarters and jurisdiction in the Federal District, and duly commissioned for performance of the duties set forth herein.

## CHAPTER II
## THE CADE BOARD

Article 4. The CADE Board shall be composed of a President and six Board Members chosen from among citizens older than thirty years of age reputed for their legal or economic knowledge and unblemished reputation, duly appointed by the President of the Republic after their approval by the Senate.

Paragraph 1. The term of office of the President and Board Members shall be two years, one reelection being hereby permitted.

Paragraph 2. The President and Board Member duties shall be discharged on an exclusive basis; accordingly, no overlapping of positions will be permitted, unless otherwise provided for in the Constitution.

Paragraph 3. In the event of resignation, death or termination of a CADE President, the senior or eldest Board Member (in this order) will take office as President until further appointment thereof, without prejudice to his/her corresponding duties as Board Member.

Paragraph 4. In the event of resignation, death or termination of a CADE Board Member, a new Board Member shall be appointed for the remaining term of office of the replaced member.

Paragraph 5. In the events set forth in the preceding paragraph or upon expiration of the terms of office of the councilmembers, the Council shall be reduced to less than the number established in article 49, the time frames set out in articles 28, 31, 32, 33, 35, 37, 39, 42, 45, 46, sole paragraph, 52, paragraph 2, 54, paragraphs 4, 6, 7 and 10, and 59, paragraph 1 of this law shall be considered automatically interrupted, and the case development shall be suspended, and the new terms shall begin immediately after restructuring of the quorum. (Provisory Measure # 1465-7/96, Article 1).

Article 5. The CADE President or Board Members may only be ousted by a decision of the Senate, a request of the President of the Republic, as a result of unappealable criminal sentencing of any such member for malicious crime, or in light of disciplinary action as set forth in Law # 8112 of December 11, 1990 and Law # 8429 of June 2, 1992, as well as owing to violation of any of the limitations dealt with in article 6 hereof.

Sole Paragraph. Any CADE Member's absence at three consecutive ordinary meetings, or twenty intermittent ordinary meetings, shall cause automatic termination of his/her term of office, except for leaves of absence duly approved by the CADE Board.

Article 6. The President and Board Members shall not:

I - receive fees, percentages or other compensation in any way or on any pretext;

II - act as a self-employed workers;

III - participate--as controlling parties, officers, managers, agents or attorneys in fact-- in any civil, commercial or like companies;

IV - render opinions on matters of their specialty, even if on a theoretical basis, or act as advisors to companies of any kind;

V - avail themselves of the media to render opinion on cases pending decision, or otherwise disparage orders, votes or sentences handed down by the courts, except for critique in case records, technical works or in the exercise of court duties; and

VI - carry out politics- or party-oriented activities.

CHAPTER III
AUTHORITY OF THE CADE BOARD

Article 7. The CADE Board shall:

I - ensure compliance with this Law and its regulations, as well as with the Board in-house rules;

II - resolve on purported violations of the economic order, and apply the penalties provided for by law;

III - resolve on proceedings instituted by the Economic Law Office - SDE of the Ministry of Justice;

IV - resolve on *ex officio* appeals from the SDE Secretary;

V - order that action be taken in restraint of violations of the economic order within the term scheduled therefor;

VI - approve both the cease-and-desist commitment (*compromisso de cessação de prática*) and the performance commitment, as well as order SDE to monitor compliance therewith;

VII - judge appeals against preventive action adopted by SDE or by the Board reporting official;

VIII - make its decisions known to interested parties;

IX - request information from individuals, agencies, authorities and other public or private entities, with due regard for the confidentiality ensured such information pursuant to law, if any, as well as determine the investigations required for performance of its duties;

X - request from the Federal Executive Branch agencies and from state, municipal, the Federal District and territorial authorities the taking of all acts required for compliance with this Law;

XI - retain the performance of examinations, inspections and studies, approving the respective professional fees and other expenditures on a case-by-case basis, all of which shall be borne by the company if it is eventually punished under this Law;

XII - analyze acts or conducts under any circumstance, subject to approval thereof pursuant to article 54 below, and establish a performance commitment as the case may be;

XIII - request court execution of its decisions pursuant to this Law;

XIV - request services and staff from any federal public agencies or entities;

XV - determine the adoption of administrative and court action by the CADE Attorney General Office;

XVI - sign contracts and agreements with Brazilian agencies or entities, and advance to the Minister of Justice for approval any such documents that are to be signed with foreign or international organisms;

XVII - answer consultations on matters within its sphere of authority;

XVIII - make the forms of violation of the economic order known to the public;

XIX - draft and approve its in-house rules on operations, criteria for resolutions, and organization of in-house services, including for the purpose of establishing the recess of the Board and the Attorney General Office on account of vacation; during such period, the statute of limitations as well as the term set forth in article 54, paragraph 6 hereof shall be suspended;

XX - draft the structure applying to the CADE staff, with due regard for article 37, II of the Constitution;

XXI - draft budgetary proposals pursuant to this Law; and

XXII - appoint the possible substitute of the Attorney General in the event of absences, dismissal or impairment.

## CHAPTER IV
## AUTHORITY OF THE CADE PRESIDENT

Article 8. The CADE President shall:

I - act as the CADE legal representative in and out of court;

II - preside over the CADE Board meetings, with the right to vote thereat, plus a casting vote;

III - distribute processes by lot at the Board meetings;

IV - call meetings and organize the corresponding agenda;

V - comply and cause compliance with the CADE decisions;

VI - determine that the CADE Attorney General Office take all court action required for execution of the CADE decisions and sentences;

VII - sign the cease-and-desist commitments, as well as performance commitments;

VIII - submit to the CADE Board for approval the budgetary proposal, as well as the intended assignment of the staff that is to render services to CADE; and

IX - guide, coordinate and supervise the CADE administrative activities.

## CHAPTER V
## AUTHORITY OF THE CADE BOARD MEMBERS

Article 9 - The CADE Board Members shall:

I - vote on cases and matters submitted to the CADE Board;

II. - issue orders and decisions on the cases for which they act as reporting members;

III. - submit to the CADE Board any requirements as to data and documents from individuals, agencies, authorities and other public or private entities, which data and documents are to be kept confidential pursuant to law, as the case may be, as well as order all investigations deemed required for performance of their duties;

IV - adopt preventive action, and establish a daily fine for noncompliance therewith; and

V - discharge all further duties ascribed thereto under the applicable rules.

## CHAPTER VI
## THE CADE ATTORNEY GENERAL OFFICE

Article 10. An Attorney General Office shall be commissioned with CADE to:

I - render legal assistance to CADE, and provide for defense thereof in court;

II - arrange for judicial execution of CADE decisions and sentences;

III - subject to the CADE Board preliminary approval, request court measures with a view to curbing violations of the economic order;

IV - arrive at court settlements for cases involving violations of the economic order, subject to the CADE Board preliminary approval after hearing a representative of the Attorney General of the Republic;

V - render opinion on cases under the CADE authority;

VI - ensure compliance with this Law; and

VII - perform all further action incumbent thereon under the in-house rules.

Article 11. The Attorney General--appointed by the Minister of Justice, and duly commissioned by the President of the Republic after consultation and approval of the Senate-- shall be a Brazilian citizen with unblemished reputation and renowned legal expertise.

Paragraph 1. The Attorney General shall attend the CADE meetings, with no right to vote thereat.

Paragraph 2. The Attorney General shall be subject to the same rules on term of office, reelection, disqualification, termination and replacement as those applying to the CADE Board Members.

Paragraph 3. In the event of absences, temporary separation or impairment of the Attorney General, the plenary body will indicate and the CADE President will appoint a possible substitute to act for a period not exceeding ninety (90) days, with no need for Federal Senate approval; such substitute shall be entitled to compensation for the position held during such substitution.

## TITLE III
## THE ATTORNEY GENERAL OF THE REPUBLIC AND CADE

Article 12. The Attorney General of the Republic, after hearing the Higher Council, shall appoint a member of the Attorney General Office of the Republic to handle the cases submitted to CADE for review.

Sole Paragraph. CADE may request that the Attorney General Office of the Republic cause enforcement of the CADE decisions or of the cease-and-desist commitments, as well as that it adopt all court action provided for in article 6, XIV (b) of Supplementary Law No. 75 of May 20, 1993.

## TITLE IV
## THE ECONOMIC LAW OFFICE

Article 13. The Economic Law Office of the Ministry of Justice — SDE, as structured pursuant to law, will be headed by a Secretary appointed by the Minister of Justice from among Brazilian citizens of renowned legal or economic expertise and unblemished reputation, duly commissioned by the President of the Republic.

Article 14. SDE shall:

I - ensure compliance with this Law by monitoring and following up on market practices;

II - provide for ongoing follow-up on business activities and practices from individuals

or legal entities with overriding control over a relevant market for a certain product or service, in order to prevent violations of the economic order; for such purposes, all pertinent data and documents may be required, with due regard for the confidential status thereof pursuant to law, if any;

III - carry out preliminary investigations on purported violations of the economic order, for further instatement of administrative proceedings;

IV - acknowledge the lack of grounds or evidence, and shelve the preliminary investigation records;

V - request data from individuals, agencies, authorities and other public or private entities, with due regard for the confidential status thereof under the law, if any, as well as determine the action required for exercise of its duties;

VI - commence administrative proceedings intended to investigate and restrain violations of the economic order;

VII - appeal *ex officio* to CADE for shelving of preliminary investigations or administrative proceedings;

VIII - send on to CADE, for review, any cases commenced by SDE, if a violation of the economic order has been duly evidenced;

IX - sign a cease-and-desist commitment on the agreed conditions and submit it to CADE, as well as monitor compliance therewith;

X - advise CADE of certain conditions for signing of a performance commitment, and monitor compliance therewith;

XI - adopt preventive measures intended to cease the act characterized as a violation of the economic order, and establish the deadline for compliance therewith as well as a daily fine applying to default thereon;

XII - receive and substantiate cases to be judged by CADE, including consultations, and monitor compliance with the CADE decisions;

XIII - advise the public authorities as to the adoption of any action required for compliance herewith;

XIV - carry out studies and researches with a view to improving antitrust policies;

XV - advise the public of the various forms of violation of the economic order, as well as the means to curb such violations; and

XVI - perform other duties as provided for by law.

TITLE V
VIOLATIONS OF THE ECONOMIC ORDER

# CHAPTER I
## GENERAL PROVISIONS

Article 15 - This Law applies to individuals, public or private companies, as well as to any individual or corporate associations, established *de facto* and *de jure* — even on a provisional basis — irrespective of a separate legal nature, and notwithstanding the exercise of activities regarded as a legal monopoly.

Article 16. The company and each of its managers or officers shall be jointly liable to the various forms of violation of the economic order.

Article 17. The companies or entities within a same economic group *de facto* and *de jure* shall be jointly liable to violations of the economic order.

Article 18. The legal nature of any party charged with violation of the economic order may be disregarded whenever any such violation entails abuse of power and rights, violation of the law, illicit facts or acts, or any breach of bylaws or articles of association. This legal nature shall also be disregarded in the event of bankruptcy, insolvency, discontinuance or suspended operations of the underlying company owing to poor management thereof.

Article 19. The antitrust measures set forth herein do not exclude any punishment inflicted on other legal acts pursuant to law.

# CHAPTER II
## VIOLATIONS

Article 20. Notwithstanding malicious intent, any act in any way intended or otherwise able to produce the effects listed below, even if any such effects are not achieved, shall be deemed a violation of the economic order:

I - to limit, restrain or in any way injure open competition or free enterprise;

II - to control a relevant market of a certain product or service;

III - to increase profits on a discretionary basis; and

IV - to abuse one's market control.

Paragraph 1. Achievement of market control as a result of competitive efficiency does not entail an occurrence of the illicit act provided for in item II above.

Paragraph 2. Market control occurs when a company or group of companies controls a substantial share of a relevant market as supplier, agent, purchaser or financier of a product, service or related technology.

Paragraph 3. The *dominant position* mentioned in the preceding paragraph is presumed when a company or group of companies controls twenty percent (20%) of the relevant market; this percentage is subject to change by CADE for specific sectors of the

economy.

Article 21. The acts spelled out below, among others, will be deemed a violation of the economic order, to the extent applicable under article 20 and items thereof:

I - to set or offer in any way--in collusion with competitors--prices and conditions for the sale of a certain product or service;

II - to obtain or otherwise procure the adoption of uniform or concerted business practices among competitors;

III - to apportion markets for finished or semi-finished products or services, or for supply sources of raw materials or intermediary products;

IV - to limit or restrain market access by new companies;

V - to pose difficulties for the establishment, operation or development of a competitor company or supplier, purchaser or financier of a certain product or service;

VI - to bar access of competitors to input, raw material, equipment or technology sources, as well as to their distribution channels;

VII - to require or grant exclusivity in mass media advertisements;

VIII - to agree in advance on prices or advantages in public or administrative biddings;

IX - to affect third-party prices by deceitful means;

X - to regulate markets of a certain product or service by way of agreements devised to limit or control technological research and development, the production of products or services, or to dampen investments for the production of products and services or distribution thereof;

XI - to impose on distributors, retailers and representatives of a certain product or service retail prices, discounts, payment conditions, minimum or maximum volumes, profit margins, or any other marketing conditions related to their business with third parties;

XII - to discriminate against purchasers or suppliers of a certain product or service by establishing price differentials or discriminatory operating conditions for the sale or performance of services;

XIII - to deny the sale of a certain product or service within the payment conditions usually applying to regular business practices and policies;

XIV - to hamper the development of or terminate business relations for an indeterminate period, in view of the terminated party's refusal to comply with unreasonable or non-competitive clauses or business conditions;

XV - to destroy, render unfit for use or take possession of raw materials, intermediary or finished products, as well as destroy, render unfit for use or constrain the operation of any equipment intended to manufacture, distribute or transport them;

XVI - to take possession of or bar the use of industrial or intellectual property rights or technology;

XVII - to abandon of cause abandonment or destruction of crops or harvests, without provenly good cause;

XVIII - to unreasonably sell products below cost;

XIX - to import any assets below cost from an exporting country other than those signatories of the GATT Antidumping and Subsidies Codes;

XX - to discontinue or greatly reduce production, without provenly good cause;

XXI - to partially or fully discontinue the company's activities, without provenly good cause;

XXII - to retain production or consumer goods, except for ensuring recovery of production costs;

XXIII - to condition the sale of a product to acquisition of another or contracting of a service, or to condition performance of a service to contracting of another or purchase of a product; and

XXIV - to impose abusive prices, or unreasonably increase the price of a product or service.

Sole Paragraph. For the purpose of characterizing an imposition of abusive prices or unreasonable increase of prices, the following items shall be considered, with due regard for other relevant economic or market circumstances:

I - the price of a product or service, or any increase therein, vis-à-vis any changes in the cost of their respective input or with quality improvements;

II - the price of a product previously manufactured, as compared to its market replacement without substantial changes;

III - the price for a similiar product or service, or any improvement thereof, on like competitive markets; and

IV - the existence of agreements or arrangements in any way, which cause an increase in the prices of a product or service, or in their respective costs.

Article 22. (VETOED)

Sole Paragraph. (VETOED)

# CHAPTER III
## PENALTIES

Article 23. The following antitrust penalties shall apply:

I - for companies: a fine from one to thirty percent of the gross pretax revenue thereof as of the latest financial year, which fine shall by no means be lower than the advantage obtained from the underlying violation, if assessable;

II - for managers directly or indirectly liable to their company's violation: a fine from ten to fifty percent of the fine imposed on said company, which shall be personally and exclusively imposed on the manager; and

III - in the case of other individuals and other public or private legal entities, as well as any *de facto* or *de jure* associations of entities or persons, even temporary ones, with or without legal identity, that do not engage in business activities, when it is not feasible to use the gross sales value, the fine will be 6,000 (six thousand) to 6,000,000 (six million) UFIR or any other index replacing it.

Sole Paragraph. Fines imposed on recurring violations shall be doubled.

Article 24. Without prejudice to the provisions of the preceding article, the fines listed below may be individually or cumulatively imposed on violations, whenever the severity of the facts or the public interest so requires:

I - at the violator's expense, half-page publication of the summary sentence in a court-appointed newspaper for two consecutive days, from one to three consecutive weeks;

II. - ineligibility for official financing or participation in bidding processes involving purchases, sales, works, services or utility concessions with the federal, state, municipal and the Federal District authorities and related entities, for a period equal to or exceeding five years;

III. - annotation of the violator on the Brazilian Consumer Protection List;

IV - recommendation that the proper public agencies:

(a) grant compulsory licenses for patents held by the violator; and

(b) deny the violator installment payment of federal overdue debts, or order total or partial cancellation of tax incentives or public subsidies;

V - the company's spin-off, transfer of corporate control, sale of assets, partial discontinuance of activities, or any other antitrust measure required for such purposes.

Article 25. If any acts or situations detrimental to the economic order are not discontinued after a CADE Board decision to this effect, or in the event preventive measures or any cease-and-desist commitment set forth herein are not complied with, a daily fine equal

to or higher than 5,000 (five thousand) Fiscal Reference Units — UFIR or replacing index shall apply, which fine may be increased as many as twenty times in accordance with the severity of the violation and the violator's economic status.

Article 26. In the event any data or documents requested by CADE, SDE, SEAE or other public entity acting under this Law are unreasonably denied, concealed, tampered with or delayed, this shall constitute a violation subject to a daily fine of 5,000 (five thousand) UFIR, which fine may be increased up to twentyfold in keeping with the violator's economic status.

Article 27. The penalties provided for in this Law shall apply with due regard for:

I - the severity of the violation;

II - the violator's good faith;

III - the advantages obtained or envisaged by the violator;

IV - actual or threatened occurrence of the violation;

V - the extent of damages or threatened damages to open competition, the Brazilian economy, consumers, or third parties;

VI - the adverse economic effects on the market;

VII - the violator's economic status; and

VIII - recurrences.

## CHAPTER IV
## STATUTE OF LIMITATIONS

Article 28. Violations of the economic order become time-barred five years after the date of the corresponding violation or, in the event of repeated or ongoing violations, after the date in which any such act has ceased.

Paragraph 1. Any administrative or court action intended to investigate purported violations of the economic order stays the statute of limitations set forth herein.

Paragraph 2. This statute of limitations is stayed during the effectiveness of a cease-and-desist commitment or performance commitment.

## CHAPTER V
## CAUSE OF ACTION

Article 29. Injured parties may — for themselves or for the privies under article 82 of Law #. 8078 of September 11, 1990 — defend their individual or diffuse interests in court by way of antitrust measures and the awarding of losses and damages suffered in connection therewith, irrespective of the corresponding administrative proceeding which shall not be stayed in view of the court action.

TITLE VI
ADMINISTRATIVE PROCEEDINGS

CHAPTER I
PRELIMINARY INVESTIGATIONS

Article 30. SDE may carry out preliminary investigations *ex officio* or at the written and reasonable request of interested parties; no disclosure as to any such investigations shall be made whenever the evidence as to purported violation of the economic order does not suffice to immediate commencement of administrative proceedings.

Paragraph 1. During preliminary investigations, the SDE Secretary may adopt any of the steps set forth in article 35 hereof, including requests for clarification addressed to the defendant.

Paragraph 2. Commencement of administrative proceedings out of formal complaints addressed by the Senate or the House of Representatives is not conditioned to preliminary investigations.

Article 31. After conclusion of preliminary investigations  within sixty days, the SDE Secretary shall order commencement of a corresponding administrative proceeding or the shelving thereof, subject to *ex officio* appeal to CADE in this latter case.

CHAPTER II
COMMENCEMENT AND DISCOVERY OF ADMINISTRATIVE PROCEEDINGS

Article 32. Administrative proceedings shall be instituted no later than eight days after cognizance of the underlying fact, formal complaint or closing of the preliminary investigations, as per order issued by the SDE Secretary providing for the facts to be verified thereunder.

Article 33. The defendant shall be summoned to file a defense within fifteen days.

Paragraph 1. The initial summons shall bear the entire tenor of the order providing for institution of the administrative proceeding and the corresponding formal complaint, as the case may be.

Paragraph 2. The defendant shall be first personally summoned by mail against receipt or, in case of failure thereof, by notice published in the Official Gazette of the Federal Executive and in a newspaper widely circulated in the state in which the defendant is resident or headquartered, with due regard for the periods required for attachment of the receipt notice or publication, as the case may be.

Paragraph 3. Any summons under subsequent proceedings shall be made by publication in the Official Gazette of the Federal Executive, in which the name of the defendant and respective attorney shall be mentioned.

Paragraph 4. The defendant's holders, officers or managers, or duly appointed attorney,

may follow up on administrative proceedings, with full access to the case records at SDE and CADE.

Article 34. Failure to file a defense in due course after duly notified to that effect will entail the defendant's judgment by default and acknowledgment of the charges against it/him, subject to all further terms irrespective of prior notice in that respect. The *in absentia* defendant may take part in any phase of the proceeding without recourse of preceding acts.

Article 35. Upon lapse of time for filing a defense, SDE will order investigations and the production of evidence required thereby; SDE may order that the defendant, any individuals or companies, public entities or agencies provide data, clarifications or documents within fifteen days, with due regard for the confidentiality applying thereto under the law, as the case may be.

Sole Paragraph. The investigations and evidence required by the SDE Secretary, including hearing of witnesses, shall be concluded within forty-five days, extendable for a like period with good cause.

Article 36. Federal authorities, as well as officers of independent agencies, federal government-owned companies and mixed-capital companies, shall render all assistance and collaboration required by CADE or SDE, including as regards preparation of technical reports on the matters under the authority thereof, under penalty of liability.

Article 37. The defendant shall produce any evidence within forty-five days after submission of defense, as well as put forth new documents at any time before the discovery phase lapses.

Sole Paragraph. The defendant may ask the SDE Secretary to set out a date, time and place for hearing of a maximum of three witnesses.

Article 38. The Economic Policy Secretariat of the Ministry of Finance (SEAE) shall be informed by official letter of the institution of any administrative proceedings, and the Secretariat may elect to render an opinion on the matters within its sphere of authority, before the discovery phase lapses.

Article 39. Upon conclusion of the discovery phase, the defendant will be summoned to put forth his/its final arguments within five days, after which the SDE Secretary will issue a substantiated report resolving on forwarding of the case records to CADE for review or shelving thereof, subject to an *ex officio* appeal to CADE in this latter case.

Article 40. The SDE Secretary, the CADE members, and their civil servants and officials shall exert their best efforts to develop and conclude preliminary investigations and administrative proceedings in the interest of proper expedition as required for clarification of the facts, under penalty of liability.

Article 41. The SDE Secretary decisions cannot be appealed to higher ranks.

## CHAPTER III
### CADE JUDGMENT ON ADMINISTRATIVE PROCEEDINGS

Article 42. Once the proceedings have been found admissible, the CADE President will randomly distribute such proceedings to the Reporting Official, who will be afforded a twenty-day term to render an opinion thereon.

Article 43. The reporting official may order supplementary investigations or request further information pursuant to article 35 hereof, as well as allow for the production of new evidence to the case whenever he/she considers the existing data insufficient for a final determination on the case.

Article 44. Upon invitation of the CADE President in response to an indication of the reporting official, any person may provide CADE with clarifications on relevant matters.

Article 45. Upon board judgments--the date of which will be made known to the parties at least five days in advance--the Attorney General and the defendant, or his/its attorney, will be respectively offered the floor for fifteen minutes each.

Article 46. The CADE decision--which in any event shall be duly substantiated against violations of the economic order--shall contain:

I - a detailed report on the violating acts, and an indication as to the antitrust action to be taken by the proper authorities;

II - the terms for commencement and conclusion of the action referred to in the preceding item;

III - the applicable fine; and

IV - a daily fine to apply while the violation is in effect.

Sole Paragraph. The CADE decision shall be published within five days in the Official Gazette of the Federal Executive.

Article 47. CADE shall monitor compliance with its decisions.

Article 48. Total or partial noncompliance with the CADE decision shall be reported to the CADE President, who will ask the Attorney General to provide for execution thereof via court channels.

Article 49. The CADE decisions shall be taken by majority vote, with the attendance of a minimum of five members.

Article 50. The CADE decisions do not qualify for Executive Branch review; accordingly, any such decisions shall be promptly executed, the Attorney General Office being then advised in this respect for the purpose of taking all legal action within its sphere of authority.

Article 51. The CADE regulations and in-house rules shall further regulate administrative proceedings.

## CHAPTER IV
## PREVENTIVE MEASURES AND CEASE-AND-DESIST ORDERS

Article 52. The SDE Secretary or reporting official may--upon his/her own initiative or at the request of the CADE Attorney General--adopt preventive measures in any instance of administrative proceedings, whenever there are signs or sound reasons to believe that the defendant directly or indirectly caused or may cause irreparable or substantial damages to the market, or that he/it may render the final outcome of the proceedings ineffective.

Paragraph 1. The preventive measures issued by the SDE Secretary or reporting official shall order prompt cessation of damaging acts and the resumption of the preceding situation, if reasonably feasible, as well as impose a daily fine pursuant to article 25 hereof.

Paragraph 2. The SDE Secretary or CADE reporting official decision on adoption of preventive measures may be voluntarily appealed to the CADE Board within five days, without suspensive effects.

## CHAPTER V
## CEASE-AND-DESIST COMMITMENTS

Article 53. CADE or SDE — *ad referendum* CADE — may agree on a commitment to cease acts under investigation in any instance of administrative proceedings, which commitment shall by no means entail a confession as to the matter under analysis nor acknowledgment of guilt for the acts thereunder.

Paragraph 1. The commitment shall provide for:

(a) the defendant's commitment to cease the action under investigation in due course;

(b) a daily fine to be imposed in the event of default under article 25 hereof; and

(c) the defendant's commitment to issue periodical reports on the defendant's market performance, and an undertaking to make proper authorities aware of any changes in its corporate structure, control, activities and location.

Paragraph 2. The case will be on hold while the cease-and-desist commitment is duly complied with, and after a preestablished time this case will be shelved if all conditions set out in the corresponding commitment have been fully met.

Paragraph 3. The conditions spelled out in the commitment may be changed by CADE if they are provenly overburdensome for the defendant, provided that any such changes do not cause damages to third parties or to the society at large, and that the new conditions do not entail a violation of the economic order.

Paragraph 4. The cease-and-desist commitment constitutes an extrajudicial execution instrument; accordingly, execution of this commitment shall be promptly petitioned in the event of default thereon or if monitoring thereof is in any way hampered, pursuant to articles 60 *et seq.* hereof.

TITLE VII.
MONITORING MECHANISMS

CHAPTER I.
MONITORING OF ACTS AND AGREEMENTS

Article 54. Any acts that may limit or otherwise restrain open competition, or that result in the control of relevant markets for certain products or services, shall be submitted to CADE for review.

Paragraph 1. CADE may authorize any acts referred to in the main section of this article, provided that they meet the following requirements:

I - they shall be cumulatively or alternatively intended to:

(a) increase productivity;

(b) improve the quality of a product or service; or

(c) cause an increased efficiency, as well as foster the technological or economic development;

II - the resulting benefits shall be ratably allocated among their participants, on the one part, and consumers or end-users, on the other;

III - they shall not drive competition out of a substantial portion of the relevant market for a product or service; and
IV - only the acts strictly required to attain an envisaged objective shall be performed for that purpose.

Paragraph 2. Any action under this article may be considered lawful if at least three of the requirements listed in the above items are met, whenever any such action is taken in the public interest or otherwise required to the benefit of the Brazilian economy, provided no damages are caused end-consumers or -users.

Paragraph 3. The acts dealt with in the main section of this article also include any action intended for any form of economic concentration, whether through merger with or into other companies, organization of companies to control third companies or any other form of corporate grouping, when the resulting company or group of companies accounts for twenty percent (20%) of a relevant market, or in which any of the participants has posted in its latest balance sheets an annual gross revenue equivalent to R$ 400,000,000 (four hundred million of Reais).

Paragraph 4. The acts dealt with in the main section of this article shall be submitted to SDE — duly accompanied by three counterparts of the corresponding documentation — in advance or no later than fifteen business days after the occurrence thereof, and SDE shall promptly forward one such counterpart to CADE and another to SEAE.

Paragraph 5. Noncompliance with the deadlines set forth in the preceding paragraph will be punishable with a fine in an amount between 60,000 (sixty thousand) UFIR and 6,000,000 (six million) UFIR, imposed by CADE without prejudice to the opening of an administrative proceeding pursuant to article 32 hereof.

Paragraph 6. Upon receipt of the SEAE technical report issued within thirty days, SDE shall pronounce thereon within this same period and then send the case and evidentiary documents on to the CADE Board, which shall resolve thereon within sixty days.

Paragraph 7. The effectiveness of any acts dealt with in this article will be conditioned to approval thereof, which approval shall be retroactive to the date of occurrence of such acts; if not looked into by CADE within the sixty-day period established in the preceding paragraph, the acts referred to above will be deemed automatically approved.

Paragraph 8. The terms set forth in paragraphs 6 and 7 hereof will be stayed while the clarifications and documents considered essential for review of the case by CADE, SDE or SEAE are not submitted as requested.

Paragraph 9. In the event the acts specified in this article are subject to suspensive conditions or have already caused fiscal or other effects to third parties, the CADE Board--if it elects to deny approval thereof--shall determine that all applicable action be taken to totally or partially revert — by way of dissolution, spin-off or sale of assets, partial cessation of activities, among others — any action or procedure damaging to the economic order, notwithstanding any civil liability for losses and damages caused third parties.

Paragraph 10. Without prejudice to the obligations of the parties involved, any change in the stock control of publicly-held companies or registration of amalgamations shall be reported to SDE by the Securities Commission - CVM and by the Brazilian Commercial Registry Department of the Ministry of Industry, Trade and Tourism - DNRC/MICT, respectively, within five business days for the SDE review, if applicable.

Article 55. The approval dealt with in the preceding article may be reviewed by CADE *ex officio* or at the SDE request, if this approval was based on false or misleading information rendered by the interested party, in the event of default on obligations assumed hereunder, or if the intended benefits have not been attained.

Article 56. The commercial registries or corresponding state entities cannot file any acts related to organization, transformation, amalgamation, merger or grouping of companies, as well as changes in incorporation acts, unless all such acts contain:

I - a clear-cut and detailed statement as to the subject matter thereof;

II - the interest of each partner, and the term for capitalization thereof;

III - full name and identification of each partner;

IV - the place where the headquarters is located and its respective address, including as regards any declared branches;

V - full name and identification of the company's officers;

VI - the term of duration of the company; and

VII - the number, type and value of the outstanding stock.

Article 57. Articles of dissolution shall state the reasons thereof, apart from a statement re the amount ascertained among the partners and an indication of the persons that are to assume the company's assets and liabilities.

## CHAPTER II
## PERFORMANCE COMMITMENT

Article 58. The CADE Board will define performance commitments to be assumed by any interested parties that submitted acts for review pursuant to article 54 hereof, so as to ensure compliance with the conditions established in paragraph 1 thereof.

Paragraph 1. Performance commitments will take into consideration the extent of international competition in a certain industry and their effect on employment levels, among other relevant circumstances.

Paragraph 2. Performance commitments shall provide for volume or quality objectives to be attained within predetermined terms, compliance with which will be monitored by SDE.

Paragraph 3. Failure without good cause to comply with performance commitments shall cause the CADE approval to be revoked pursuant to article 55 hereof, followed by the opening of an administrative proceeding for the adoption of the applicable measures.

## CHAPTER III
## CONSULTATION

Article 59. (REPEALED)

## TITLE VIII
## COURT EXECUTION OF CADE DECISIONS

## CHAPTER I
## PROCESSING

Article 60. The CADE Board decisions imposing fines, as well as obligations to do or not to do, constitute an extrajudicial execution instrument.

Article 61. Executions exclusively intended to collection of fines shall be carried out pursuant to Law # 6830 of September 22, 1980.

Article 62. In the event of executions intended to collection of fines and compliance with obligations to do or not to do, the courts shall order specific performance of any such obligations, or otherwise provide for acts that ensure an outcome equilavent to compliance therewith in practical terms.

Paragraph 1. An obligation to do or not to do can only lead into a suit for losses and damages its specific performance or obtainment of an equivalent outcome in practical terms is not possible.

Paragraph 2. Losses and damages shall be paid without prejudice to any applicable fines.

Article 63. Execution shall be carried out by all means, including by way of intervention in the company, if necessary.

Article 64. The CADE decisions shall be executed at the federal courts of the Federal District, or at the courts with jurisdiction over the executed party's headquarters or domicile, at the CADE discretion.

Article 65. Motions or like action against an execution instrument shall not stay the execution itself, unless an amount corresponding to the fines imposed is deposited in court, and a bond is posted as determined by the courts to ensure compliance with a final decision on the case, including as regards daily fines.

Article 66. Depending on the severity of the violation of the economic order, and should there be sound reasons to believe in irreparable or substantial damages, the courts may order prompt adoption of all or a portion of the action required under the execution instrument, notwithstanding the deposit of fines in court or the posting of bonds.

Article 67. Daily fines on an ongoing violation shall be apply as from the deadline established by CADE for voluntary compliance with the CADE decision, up to the day of actual performance thereof.

Article 68. The execution of CADE decisions shall be afforded priority over other kinds of action, except for habeas corpus and writ of mandamus.

## CHAPTER II
## JUDICIAL INTERVENTION

Article 69. The courts shall order intervention in a company whenever required to ensure specific performance hereunder, and appoint a receiver.

Sole Paragraph. The court decision on intervention shall be duly substantiated, as well as accurately establish the action to be taken by the appointed receiver.

Article 70. If the executed party rebuts a court-appointed receiver within forty-eight hours on the arguments of ineptitute or lack of good standing, and if this claim is duly evidenced in three days, the courts shall render a decision thereon within this same period.

Article 71. If the rebuttal is granted, the courts shall appoint another receiver within five days.

Article 72. The intervention may be terminated early if the obligation that gave rise

thereto has been provenly complied with in full.

Article 73. The court intervention shall be limited to those acts required for compliance with the court decision that gave rise thereto, and shall be effective for a maximum period of one hundred and eighty days; the receiver shall be held liable for his/her acts and omissions, especially in the event of abuse of power and departure from the original purposes of his/her appointment.

Paragraph 1. The receiver will be subject to articles 153 through 159 of Law # 6404 of December 15, 1976, to the extent applicable.

Paragraph 2. The receiver will be entitled to a compensation stipulated by the courts, which may replace him/her at any time and whenever the receiver becomes insolvent, is charged with active or passive corruption or malfeasance in office, or violation of his/her duties.

Article 74. The courts may withdraw the company's managers from their duties if they are provenly preventing performance of acts incumbent on the receiver. Any such managers shall be replaced as provided for in the company's bylaws or articles of association.

Paragraph 1. If any managers still prevent the receiver from taking proper action after adoption of the procedures set forth in the main section of this article, then the courts shall proceed as per paragraph 2 below.

Paragraph 2. If a majority of the company's managers deny assistance to the court-appointed receiver, the courts shall order that the receiver take over the company's management.

Article 75. The receiver shall:

I - perform or order performance of all acts required under the execution process;

II - advise the courts of any irregularities committed by the company's management and of which the receiver may become aware; and

III - submit to the courts a monthly report on his/her activities.

Article 76. The expenses arising from the intervention hereunder shall be borne by the executed party.

Article 77. Upon lapse of the intervention, the receiver shall provide the federal courts with a detailed report on his/her action, and either propose the dismissal or shelving of the case or ask for an extension of the intervention period should the execution decision have not been fully performed in due course.

Article 78. Whoever opposes or prevents any intervention or, after termination thereof, performs any acts that directly or indirectly annul its effects in whole or in part, or even fails to comply with legal orders from the court-appointed receiver, will be held criminally liable for resistance, disobedience or coercion under the execution process,   pursuant to articles 329,

330 and 344 of the Penal Code.

## TITLE IX
## FINAL AND TEMPORARY PROVISIONS

Article 79. (VETOED)

Sole Paragraph. (VETOED)

Article 80. The CADE Attorney shall henceforth become an Attorney General official duly commissioned to the independent agency created hereunder, jointly with the CADE President and Board Member positions.

Article 81. The Executive Branch shall send to the Congress within sixty days a bill of law on the permanent staff of the new independent agency, as well as on the duties and compensation applying to the CADE President, the Board Members, and the Attorney General.

Paragraph 1. While CADE is not provided with staff of its own, civil servants may be temporarily assigned to this independent agency by commission or otherwise, without prejudice to the remuneration and other benefits originally afforded thereto, including for the purpose of representing this independent agency in court.

Paragraph 2. The CADE President shall prepare and submit to the Board for approval a list of servants required for the independent agency, who may be placed at SDE disposal.

Article 82. (VETOED)

Article 83. The Code of Civil Procedure, as well as Laws # 7347 of July 24, 1985 and 8078 of September 11, 1990, also apply to the administrative and court proceedings set forth herein.

Article 84. The fines provided for herein shall be converted into Brazilian currency on the date of actual payment thereof, duly collected to the Fund dealt with in Law # 7347 of July 24, 1985.

Article 85. Article 4, VII of Law # 8137 of December 27, 1990 shall henceforth read as follows:

"Article 4. (...)

VII - increase without good cause the price of a certain product or service, in view of one's market control."

Article 86. Article 312 of the Code of Criminal Procedure shall henceforth read as follows:

"Article 312. - Preventive imprisonment may be decreed so as to safeguard public or economic order in the interest of the criminal process, or to ensure enforcement of criminal

laws, whenever a crime was provenly committed, or if there is sufficient evidence as to its perpetrator."

Article 87. - Article 39 of Law # 8078 of September 11, 1990 shall henceforth read as follows, with the additional items below:

"Article 39. The supplier of a certain product or service cannot, among other abusive practices:

(...)

IX - refuse to sell products or render services directly to whomever is willing to purchase them against prompt payment,  except for intermediation cases duly regulated by special laws; and

X - increase without good cause the price of a certain product or service."

Article 88. - Article 1 of Law # 7347 of July 24, 1985 shall henceforth read as follows, with the additional item below:

"Article 1. - Without prejudice to class actions, this Law applies to actions for moral and property damages arising from:

(...)

V - violation of the economic order."

Sole Paragraph. Article 5, II of Law # 7347 of July 24, 1985 shall henceforth read as follows:

"Article 5. (...)

II - include in its institutional purposes the protection to the environment, consumers, economic order, open competition, or the artistic, aesthetic, historical, tourism, and landscape heritage;

(...)"

Article 89. CADE shall be invited to take part as assistant in court actions involving application of this Law.

Article 90. The periods for consultations submitted under article 74 of Law # 4137 of September 10, 1962, as amended by article 13 of Law # 8158 of January 8, 1991, are hereby interrupted, with due regard for Title VII, Chapter I hereof.

Article 91. This Law does not apply to dumping and subsidies cases dealt with in the Accords for Implementation of Article VI of the General Agreement on Customs Tarrifs and Trade, duly enacted by Decrees # 93941 and 93962 of January 16 and 22, 1987, respectively.

Article 92. All provisions to the contrary are hereby revoked, as are Laws # 4137 of September 10, 1962; 8158 of January 8, 1991; and 8002 of March 14, 1990, except for article 36 of Law # 8880 of May 27, 1994, which remains effective.

Article 93. This Law takes effect on the date of its publication.

ITAMAR FRANCO
President of the Republic


ALEXANDRE DE PAULA DUPEYRAT MARTINS
Minister of Justice

Ministério da Justiça    Destaques do Governo



- Principal
- Institucional
  - O que é o CADE
  - Funções do CADE
  - Composição
  - CADE em Números
  - Horário de Funcionamento
  - Agenda do CADE
  - Taxas e Multas
  - Programa de Intercâmbio
  - Contato
- Internacional
  - Acordos Internacionais em Vigor
  - Legislation and Resolutions
  - Mercosul
  - OCDE
  - ICN
  - Organismos Internacionais
  - Outros Documentos/Other Documents
  - Peer Review
  - Regular Sessions Agenda
- Processual
  - Consulta processual
  - TCC
  - TCD
  - APRO
  - Medida Cautelar
  - Medida Preventiva
- Legislação
  - Constituição (artigos correlatos)
  - Leis
  - Decretos
  - Portarias
  - Resoluções
  - Regimento Interno
- Consulta Pública
- Jurisprudência
  - Pesquisa de Jurisprudência
  - Pesquisar por partes
  - Pesquisar por conselheiros
  - Pesquisar por processos
  - Súmula do CADE
- Sessões
  - Agenda Anual de Sessões
  - Pautas de sessões
    - Pautas das sessões ordinárias
    - Pautas das sessões extraordinárias
    - Pautas das sessões extraordinárias reservadas
    - Pautas das sessões reservadas

Conselho Administrativo de Defesa Econômica                                    Page 2 of 24

- o Atas das sessões de distribuição
  - Sessões ordinárias de distribuição
  - Sessões extraordinárias de distrtibuição
  - Sessões reservadas de distribuição
- o Atas das sessões do plenário
  - Sessões ordinárias
  - Sessões extraordinárias
  - Sessões reservadas
- o Pauta Eletrônica
- o Gravações das sessões
- Licitação
  - o Licitação
  - o Registro de Preços
- Notícias
  - o Notícias
  - o Comunicados
  - o Cade Informa
- Publicações
  - o Revista de Direito Econômico
  - o Relatório Anual
  - o Cartilha do CADE
  - o Revista de Direito da Concorrência
- Restrito
  - o Clipping
  - o E-mail
  - o Proquest
- Site de Interesse

**LEI Nº 8.884, DE 11 DE JUNHO DE 1994.**

Mensagem de veto

Transforma o Conselho Administrativo de Defesa Econômica (Cade) em Autarquia, dispõe sobre a prevenção e a repressão às infrações contra a ordem econômica e dá outras providências.

**O PRESIDENTE DA REPÚBLICA** Faço saber que o Congresso Nacional decreta e eu sanciono a seguinte lei:

TÍTULO I

Das Disposições Gerais

CAPÍTULO I

Da Finalidade

Art. 1º Esta lei dispõe sobre a prevenção e a repressão às infrações contra a ordem econômica, orientada pelos ditames constitucionais de liberdade de iniciativa, livre concorrência, função social da propriedade, defesa dos consumidores e repressão ao abuso do poder econômico.

Parágrafo único. A coletividade é a titular dos bens jurídicos protegidos por esta lei.

CAPÍTULO II

Da Territorialidade

Art. 2º Aplica-se esta lei, sem prejuízo de convenções e tratados de que seja signatário o Brasil, às práticas cometidas no todo ou em parte no território nacional ou que nele produzam ou possam produzir efeitos.

~~Parágrafo único. Reputa-se situada no Território Nacional a empresa estrangeira que opere ou tenha no Brasil filial, agência, sucursal, escritório, estabelecimento, agente ou representante.~~

§ 1º Reputa-se domiciliada no Território Nacional a empresa estrangeira que opere ou tenha no Brasil filial, agência, sucursal, escritório, estabelecimento, agente ou representante. *(Redação dada pela Lei nº 10.149, de 21.12.2000)*

§ 2º A empresa estrangeira será notificada e intimada de todos os atos processuais, independentemente de procuração ou de disposição contratual ou estatutária, na pessoa do responsável por sua filial, agência, sucursal, escritório ou estabelecimento instalado no Brasil. *(Redação dada pela Lei nº 10.149, de 21.12.2000)*

TÍTULO II

Do Conselho Administrativo de Defesa Econômica (Cade)

CAPÍTULO I

Da Autarquia

Art. 3º O Conselho Administrativo de Defesa Econômica (Cade), órgão judicante com jurisdição em todo o território nacional, criado pela Lei nº 4.137, de 10 de setembro de 1962, passa a se constituir em autarquia federal, vinculada ao Ministério da Justiça, com sede e foro no Distrito Federal, e atribuições previstas nesta lei.

CAPÍTULO II

Da Composição do Conselho

Art. 4º O Plenário do Cade é composto por um Presidente e seis Conselheiros escolhidos dentre cidadãos com mais de trinta anos de idade, de notório saber jurídico ou econômico e reputação ilibada, nomeados pelo Presidente da República, depois de aprovados pelo Senado Federal. *(Redação dada pela Lei nº 9.021, de 30.3.95)*

§ 1º O mandato do Presidente e dos Conselheiros é de dois anos, permitida uma recondução.

§ 2º Os cargos de Presidente e de Conselheiro são de dedicação exclusiva, não se admitindo qualquer acumulação, salvo as constitucionalmente permitidas.

§ 3º No caso de renúncia, morte ou perda de mandato do Presidente do Cade, assumirá o Conselheiro mais antigo ou o mais idoso, nessa ordem, até nova nomeação, sem prejuízo de suas atribuições.

§ 4º No caso de renúncia, morte ou perda de mandato de Conselheiro, proceder-se-á a nova nomeação, para completar o mandato do substituído.

§ 5º Se, nas hipóteses previstas no parágrafo anterior, ou no caso de encerramento de mandato dos Conselheiros, a composição do Conselho ficar refuzida a número inferior ao estabelecido no art. 49, considerar-se-ão automaticamente interrompidos os prazos previstos nos arts. 28, 31, 32, 33, 35, 37, 39, 42, 45, 46, parágrafo único, 52, § 2º, 54, §§ 4º, 6º, 7º e 10, e 59, § 1º, desta Lei, e suspensa a tramitação de processos, iniciando-se a nova contagem imediatamente após a recomposição do quorum. *(Incluído pela Lei nº 9.470, de 10.7.97)*

Conselho Administrativo de Defesa Econômica

Art. 5º A perda de mandato do Presidente ou dos Conselheiros do Cade só poderá ocorrer em virtude de decisão do Senado Federal, por provocação do Presidente da República, ou em razão de condenação penal irrecorrível por crime doloso, ou de processo disciplinar de conformidade com o que prevê a Lei nº 8.112, de 11 de dezembro de 1990 e a Lei nº 8.429, de 2 de junho de 1992, e por infringência de quaisquer das vedações previstas no art. 6º.

Parágrafo único. Também perderá o mandato, automaticamente, o membro do Cade que faltar a três reuniões ordinárias consecutivas, ou vinte intercaladas, ressalvados os afastamentos temporários autorizados pelo Colegiado.

Art. 6º Ao Presidente e aos Conselheiros é vedado:

I - receber, a qualquer título, e sob qualquer pretexto, honorários, percentagens ou custas;

II - exercer profissão liberal;

III - participar, na forma de controlador, diretor, administrador, gerente, preposto ou mandatário, de sociedade civil, comercial ou empresas de qualquer espécie;

IV - emitir parecer sobre matéria de sua especialização, ainda que em tese, ou funcionar como consultor de qualquer tipo de empresa;

V - manifestar, por qualquer meio de comunicação, opinião sobre processo pendente de julgamento, ou juízo depreciativo sobre despachos, votos ou sentenças de órgãos judiciais, ressalvada a crítica nos autos, em obras técnicas ou no exercício do magistério;

VI - exercer atividade político-partidária.

CAPÍTULO III

Da Competência do Plenário do Cade

Art. 7º Compete ao Plenário do Cade:

I - zelar pela observância desta lei e seu regulamento e do Regimento Interno do Conselho;

II - decidir sobre a existência de infração à ordem econômica e aplicar as penalidades previstas em lei;

III - decidir os processos instaurados pela Secretaria de Direito Econômico do Ministério da Justiça;

IV - decidir os recursos de ofício do Secretário da SDE;

V - ordenar providências que conduzam à cessação de infração à ordem econômica, dentro do prazo que determinar;

VI - aprovar os termos do compromisso de cessação de prática e do compromisso de desempenho, bem como determinar à SDE que fiscalize seu cumprimento;

VII - apreciar em grau de recurso as medidas preventivas adotadas pela SDE ou pelo Conselheiro-Relator;

VIII - intimar os interessados de suas decisões;

IX - requisitar informações de quaisquer pessoas, órgãos, autoridades e entidades públicas ou privadas, respeitando e mantendo o sigilo legal quando for o caso, bem como determinar as diligências que se fizerem necessárias ao exercício das suas funções;

X - requisitar dos órgãos do Poder Executivo Federal e solicitar das autoridades dos Estados, Municípios, Distrito Federal e Territórios as medidas necessárias ao cumprimento desta lei;

XI - contratar a realização de exames, vistorias e estudos, aprovando, em cada caso, os respectivos

Conselho Administrativo de Defesa Econômica                    Page 5 of 24

honorários profissionais e demais despesas de processo, que deverão ser pagas pela empresa, se vier a ser punida nos termos desta lei;

XII - apreciar os atos ou condutas, sob qualquer forma manifestados, sujeitos à aprovação nos termos do art. 54, fixando compromisso de desempenho, quando for o caso;

XIII - requerer ao Poder Judiciário a execução de suas decisões, nos termos desta lei;

XIV - requisitar serviços e pessoal de quaisquer órgãos e entidades do Poder Público Federal;

XV - determinar à Procuradoria do Cade a adoção de providências administrativas e judiciais;

XVI - firmar contratos e convênios com órgãos ou entidades nacionais e submeter, previamente, ao Ministro de Estado da Justiça os que devam ser celebrados com organismos estrangeiros ou internacionais;

XVII - responder a consultas sobre matéria de sua competência;

XVIII - instruir o público sobre as formas de infração da ordem econômica;

XIX - elaborar e aprovar seu regimento interno dispondo sobre seu funcionamento, na forma das deliberações, normas de procedimento e organização de seus serviços internos, inclusive estabelecendo férias coletivas do Colegiado e do Procurador-Geral, durante o qual não correrão os prazos processuais nen aquele referido no § 6º do art. 54 desta lei. *(Redação dada pela Lei nº 9.069, de 29.6.95)*

XX - propor a estrutura do quadro de pessoal da autarquia, observado o disposto no inciso II do art. 37 da Constituição Federal;

XXI - elaborar proposta orçamentária nos termos desta lei.

XXII - indicar o substituto eventual do Procurador-Geral nos casos de faltas, afastamento ou impedimento. *(Incluído pela Lei nº 9.069, de 29.6.95)*

CAPÍTULO IV

Da Competência do Presidente do Cade

Art. 8º Compete ao Presidente do Cade:

I - representar legalmente a autarquia, em juízo e fora dele;

II - presidir, com direito a voto, inclusive o de qualidade, as reuniões do Plenário;

III - distribuir os processos, por sorteio, nas reuniões do Plenário;

IV - convocar as sessões e determinar a organização da respectiva pauta;

V - cumprir e fazer cumprir as decisões do Cade;

VI - determinar à Procuradoria as providências judiciais para execução das decisões e julgados da autarquia;

VII - assinar os compromissos de cessação de infração da ordem econômica e os compromissos de desempenho;

VIII - submeter à aprovação do Plenário a proposta orçamentária, e a lotação ideal do pessoal que prestará serviço à entidade;

IX - orientar, coordenar e supervisionar as atividades administrativas da entidade.

CAPÍTULO V

Conselho Administrativo de Defesa Econômica

Da Competência dos Conselheiros do Cade

Art. 9º Compete aos Conselheiros do Cade:

I - emitir voto nos processos e questões submetidas ao Plenário;

II - proferir despachos e lavrar as decisões nos processos em que forem relatores;

III - submeter ao Plenário a requisição de informações e documentos de quaisquer pessoas, órgãos, autoridades e entidades públicas ou privadas, a serem mantidas sob sigilo legal, quando for o caso, bem como determinar as diligências que se fizerem necessárias ao exercício das suas funções;

IV - adotar medidas preventivas fixando o valor da multa diária pelo seu descumprimento;

V - desincumbir-se das demais tarefas que lhes forem cometidas pelo regimento.

CAPÍTULO VI

Da Procuradoria do Cade

Art. 10. Junto ao Cade funcionará uma Procuradoria, com as seguintes atribuições:

I - prestar assessoria jurídica à autarquia e defendê-la em juízo;

II - promover a execução judicial das decisões e julgados da autarquia;

III - requerer, com autorização do Plenário, medidas judiciais visando à cessação de infrações da ordem econômica;

IV - promover acordos judiciais nos processos relativos a infrações contra a ordem econômica, mediante autorização do Plenário do Cade, e ouvido o representante do Ministério Público Federal;

V - emitir parecer nos processos de competência do Cade;

VI - zelar pelo cumprimento desta lei;

VII - desincumbir-se das demais tarefas que lhe sejam atribuídas pelo Regimento Interno.

Art. 11. O Procurador-Geral será indicado pelo Ministro de Estado da Justiça e nomeado pelo Presidente da República, dentre brasileiros de ilibada reputação e notório conhecimento jurídico, depois de aprovado pelo Senado Federal.

§ 1º O Procurador-Geral participará das reuniões do Cade, sem direito a voto.

§ 2º Aplicam-se ao Procurador-Geral as mesmas normas de tempo de mandato, recondução, impedimentos, perda de mandato e substituição aplicáveis aos Conselheiros do Cade.

§ 3º Nos casos de faltas, afastamento temporário ou impedimento do Procurador-Geral, o Plenário indicará e o Presidente do Cade nomeará o substituto eventual, para atuar por prazo não superior a 90 (noventa) dias, dispensada a aprovação pelo Senado Federal, fazendo ele jus à remuneração do cargo enquanto durar a substituição. *(Redação dada pela Lei nº 9.069, de 29.6.95)*

TÍTULO III

Do Ministério Público Federal Perante o Cade

Art. 12. O Procurador-Geral da República, ouvido o Conselho Superior, designará membro do Ministério Público Federal para, nesta qualidade, oficiar nos processos sujeitos à apreciação do Cade.

Parágrafo único. O Cade poderá requerer ao Ministério Público Federal que promova a execução de seus

Conselho Administrativo de Defesa Econômica

julgados ou do compromisso de cessação, bem como a adoção de medidas judiciais, no exercício da atribuição estabelecida pela alínea b do inciso XIV do art. 6º da Lei Complementar nº 75, de 20 de maio de 1993.

## TÍTULO IV

### Da Secretaria de Direito Econômico

Art. 13. A Secretaria de Direito Econômico do Ministério da Justiça (SDE), com a estrutura que lhe confere a lei, será dirigida por um Secretário, indicado pelo Ministro de Estado de Justiça, dentre brasileiros de notório saber jurídico ou econômico e ilibada reputação, nomeado pelo Presidente da República.

Art. 14. Compete à SDE:

I - zelar pelo cumprimento desta lei, monitorando e acompanhando as práticas de mercado;

II - acompanhar, permanentemente, as atividades e práticas comerciais de pessoas físicas ou jurídicas que detiverem posição dominante em mercado relevante de bens ou serviços, para prevenir infrações da ordem econômica, podendo, para tanto, requisitar as informações e documentos necessários, mantendo o sigilo legal, quando for o caso;

III - proceder, em face de indícios de infração da ordem econômica, a averiguações preliminares para instauração de processo administrativo;

IV - decidir pela insubsistência dos indícios, arquivando os autos das averiguações preliminares;

V - requisitar informações de quaisquer pessoas, órgãos, autoridades e entidades públicas ou privadas, mantendo o sigilo legal quando for o caso, bem como determinar as diligências que se fizerem necessárias ao exercício das suas funções;

VI - instaurar processo administrativo para apuração e repressão de infrações da ordem econômica;

VII - recorrer de ofício ao Cade, quando decidir pelo arquivamento das averiguações preliminares ou do processo administrativo;

VIII - remeter ao Cade, para julgamento, os processos que instaurar, quando entender configurada infração da ordem econômica;

IX - celebrar, nas condições que estabelecer, compromisso de cessação, submetendo-o ao Cade, e fiscalizar o seu cumprimento;

X - sugerir ao Cade condições para a celebração de compromisso de desempenho, e fiscalizar o seu cumprimento;

XI - adotar medidas preventivas que conduzam à cessação de prática que constitua infração da ordem econômica, fixando prazo para seu cumprimento e o valor da multa diária a ser aplicada, no caso de descumprimento;

XII - receber e instruir os processos a serem julgados pelo Cade, inclusive consultas, e fiscalizar o cumprimento das decisões do Cade;

XIII - orientar os órgãos da administração pública quanto à adoção de medidas necessárias ao cumprimento desta lei;

XIV - desenvolver estudos e pesquisas objetivando orientar a política de prevenção de infrações da ordem econômica;

XV - instruir o público sobre as diversas formas de infração da ordem econômica, e os modos de sua prevenção e repressão;

XVI - exercer outras atribuições previstas em lei.

Conselho Administrativo de Defesa Econômica

## TÍTULO V

### Das Infrações da Ordem Econômica

### CAPÍTULO I

### Das Disposições Gerais

Art. 15. Esta lei aplica-se às pessoas físicas ou jurídicas de direito público ou privado, bem como a quaisquer associações de entidades ou pessoas, constituídas de fato ou de direito, ainda que temporariamente, com ou sem personalidade jurídica, mesmo que exerçam atividade sob regime de monopólio legal.

Art. 16. As diversas formas de infração da ordem econômica implicam a responsabilidade da empresa e a responsabilidade individual de seus dirigentes ou administradores, solidariamente.

Art. 17. Serão solidariamente responsáveis as empresas ou entidades integrantes de grupo econômico, de fato ou de direito, que praticarem infração da ordem econômica.

Art. 18. A personalidade jurídica do responsável por infração da ordem econômica poderá ser desconsiderada quando houver da parte deste abuso de direito, excesso de poder, infração da lei, fato ou ato ilícito ou violação dos estatutos ou contrato social. A desconsideração também será efetivada quando houver falência, estado de insolvência, encerramento ou inatividade da pessoa jurídica provocados por má administração.

Art. 19. A repressão das infrações da ordem econômica não exclui a punição de outros ilícitos previstos em lei.

### CAPÍTULO II

### Das Infrações

Art. 20. Constituem infração da ordem econômica, independentemente de culpa, os atos sob qualquer forma manifestados, que tenham por objeto ou possam produzir os seguintes efeitos, ainda que não sejam alcançados:

I - limitar, falsear ou de qualquer forma prejudicar a livre concorrência ou a livre iniciativa;

II - dominar mercado relevante de bens ou serviços;

III - aumentar arbitrariamente os lucros;

IV - exercer de forma abusiva posição dominante.

§ 1º A conquista de mercado resultante de processo natural fundado na maior eficiência de agente econômico em relação a seus competidores não caracteriza o ilícito previsto no inciso II.

§ 2º Ocorre posição dominante quando uma empresa ou grupo de empresas controla parcela substancial de mercado relevante, como fornecedor, intermediário, adquirente ou financiador de um produto, serviço ou tecnologia a ele relativa.

§ 3º A posição dominante a que se refere o parágrafo anterior é presumida quando a empresa ou grupo de empresas controla 20% (vinte por cento) de mercado relevante, podendo este percentual ser alterado pelo Cade para setores específicos da economia.*(Redação dada pela Lei nº 9.069, de 29.6.95)*

Art. 21. As seguintes condutas, além de outras, na medida em que configurem hipótese prevista no art. 20 e seus incisos, caracterizam infração da ordem econômica;

I - fixar ou praticar, em acordo com concorrente, sob qualquer forma, preços e condições de venda de bens ou de prestação de serviços;

Conselho Administrativo de Defesa Econômica

II - obter ou influenciar a adoção de conduta comercial uniforme ou concertada entre concorrentes;

III - dividir os mercados de serviços ou produtos, acabados ou semi-acabados, ou as fontes de abastecimento de matérias-primas ou produtos intermediários;

IV - limitar ou impedir o acesso de novas empresas ao mercado;

V - criar dificuldades à constituição, ao funcionamento ou ao desenvolvimento de empresa concorrente ou de fornecedor, adquirente ou financiador de bens ou serviços;

VI - impedir o acesso de concorrente às fontes de insumo, matérias-primas, equipamentos ou tecnologia, bem como aos canais de distribuição;

VII - exigir ou conceder exclusividade para divulgação de publicidade nos meios de comunicação de massa;

VIII - combinar previamente preços ou ajustar vantagens na concorrência pública ou administrativa;

IX - utilizar meios enganosos para provocar a oscilação de preços de terceiros;

X - regular mercados de bens ou serviços, estabelecendo acordos para limitar ou controlar a pesquisa e o desenvolvimento tecnológico, a produção de bens ou prestação de serviços, ou para dificultar investimentos destinados à produção de bens ou serviços ou à sua distribuição;

XI - impor, no comércio de bens ou serviços, a distribuidores, varejistas e representantes, preços de revenda, descontos, condições de pagamento, quantidades mínimas ou máximas, margem de lucro ou quaisquer outras condições de comercialização relativos a negócios destes com terceiros;

XII - discriminar adquirentes ou fornecedores de bens ou serviços por meio da fixação diferenciada de preços, ou de condições operacionais de venda ou prestação de serviços;

XIII - recusar a venda de bens ou a prestação de serviços, dentro das condições de pagamento normais aos usos e costumes comerciais;

XIV - dificultar ou romper a continuidade ou desenvolvimento de relações comerciais de prazo indeterminado em razão de recusa da outra parte em submeter-se a cláusulas e condições comerciais injustificáveis ou anticoncorrenciais;

XV - destruir, inutilizar ou açambarcar matérias-primas, produtos intermediários ou acabados, assim como destruir, inutilizar ou dificultar a operação de equipamentos destinados a produzi-los, distribuí-los ou transportá-los;

XVI - açambarcar ou impedir a exploração de direitos de propriedade industrial ou intelectual ou de tecnologia;

XVII - abandonar, fazer abandonar ou destruir lavouras ou plantações, sem justa causa comprovada;

XVIII - vender injustificadamente mercadoria abaixo do preço de custo;

XIX - importar quaisquer bens abaixo do custo no país exportador, que não seja signatário dos códigos Antidumping e de subsídios do Gatt;

XX - interromper ou reduzir em grande escala a produção, sem justa causa comprovada;

XXI - cessar parcial ou totalmente as atividades da empresa sem justa causa comprovada;

XXII - reter bens de produção ou de consumo, exceto para garantir a cobertura dos custos de produção;

XXIII - subordinar a venda de um bem à aquisição de outro ou à utilização de um serviço, ou subordinar a prestação de um serviço à utilização de outro ou à aquisição de um bem;

Conselho Administrativo de Defesa Econômica

XXIV - impor preços excessivos, ou aumentar sem justa causa o preço de bem ou serviço.

Parágrafo único. Na caracterização da imposição de preços excessivos ou do aumento injustificado de preços, além de outras circunstâncias econômicas e mercadológicas relevantes, considerar-se-á:

I - o preço do produto ou serviço, ou sua elevação, não justificados pelo comportamento do custo dos respectivos insumos, ou pela introdução de melhorias de qualidade;

II - o preço de produto anteriormente produzido, quando se tratar de sucedâneo resultante de alterações não substanciais;

III - o preço de produtos e serviços similares, ou sua evolução, em mercados competitivos comparáveis;

IV - a existência de ajuste ou acordo, sob qualquer forma, que resulte em majoração do preço de bem ou serviço ou dos respectivos custos.

Art. 22. (Vetado).

Parágrafo único. (Vetado).

CAPÍTULO III

Das Penas

Art. 23. A prática de infração da ordem econômica sujeita os responsáveis às seguintes penas:

I - no caso de empresa, multa de um a trinta por cento do valor do faturamento bruto no seu último exercício, excluídos os impostos, a qual nunca será inferior à vantagem auferida, quando quantificável;

II - no caso de administrador, direta ou indiretamente responsável pela infração cometida por empresa, multa de dez a cinqüenta por cento do valor daquela aplicável à empresa, de responsabilidade pessoal e exclusiva ao administrador.

III - No caso das demais pessoas físicas ou jurídicas de direito público ou privado, bem como quaisquer associações de entidades ou pessoas constituídas de fato ou de direito, ainda que temporariamente, com ou sem personalidade jurídica, que não exerçam atividade empresarial, não sendo possível utilizar-se o critério do valor do faturamento bruto, a multa será de 6.000 (seis mil) a 6.000.000 (seis milhões) de Unidades Fiscais de Referência (Ufir), ou padrão superveniente.*(Incluído pela Lei nº 9.069, de 29.6.95)*

Parágrafo único. Em caso de reincidência, as multas cominadas serão aplicadas em dobro.

Art. 24. Sem prejuízo das penas cominadas no artigo anterior, quando assim o exigir a gravidade dos fatos ou o interesse público geral, poderão ser impostas as seguintes penas, isolada ou cumulativamente:

I - a publicação, em meia página e às expensas do infrator, em jornal indicado na decisão, de extrato da decisão condenatória, por dois dias seguidos, de uma a três semanas consecutivas;

II - a proibição de contratar com instituições financeiras oficiais e participar de licitação tendo por objeto aquisições, alienações, realização de obras e serviços, concessão de serviços públicos, junto à Administração Pública Federal, Estadual, Municipal e do Distrito Federal, bem como entidades da administração indireta, por prazo não inferior a cinco anos;

III - a inscrição do infrator no Cadastro Nacional de Defesa do Consumidor;

IV - a recomendação aos órgãos públicos competentes para que:

a) seja concedida licença compulsória de patentes de titularidade do infrator;

b) não seja concedido ao infrator parcelamento de tributos federais por ele devidos ou para que sejam cancelados, no todo ou em parte, incentivos fiscais ou subsídios públicos;

Conselho Administrativo de Defesa Econômica

V - a cisão de sociedade, transferência de controle societário, venda de ativos, cessação parcial de atividade, ou qualquer outro ato ou providência necessário para a eliminação dos efeitos nocivos à ordem econômica.

Art. 25. Pela continuidade de atos ou situações que configurem infração da ordem econômica, após decisão do Plenário do Cade determinando sua cessação, ou pelo descumprimento de medida preventiva ou compromisso de cessação previstos nesta lei, o responsável fica sujeito a multa diária de valor não inferior a 5.000 (cinco mil) Unidades Fiscais de Referência (Ufir), ou padrão superveniente, podendo ser aumentada em até vinte vezes se assim o recomendar sua situação econômica e a gravidade da infração.

Art. 26. A recusa, omissão, enganosidade, ou retardamento injustificado de informação ou documentos solicitados pelo Cade, SDE, Seae, ou qualquer entidade pública atuando na aplicação desta lei, constitui infração punível com multa diária de 5.000 Ufirs, podendo ser aumentada em até vinte vezes se necessário para garantir sua eficácia em razão da situação econômica do infrator. *(Redação dada pela Lei nº 9.021, de 30.3.95)*

§ 1º O montante fixado para a multa diária de que trata o caput deste artigo constará do documento que contiver a requisição da autoridade competente. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 2º A multa prevista neste artigo será computada diariamente até o limite de noventa dias contados a partir da data fixada no documento a que se refere o parágrafo anterior. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 3º Compete à autoridade requisitante a aplicação da multa prevista no caput deste artigo. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 4º Responde solidariamente pelo pagamento da multa de que trata este artigo, a filial, sucursal, escritório ou estabelecimento, no País, de empresa estrangeira. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 5º A falta injustificada do representado ou de terceiros, quando intimados para prestar esclarecimentos orais, no curso de procedimento, de averiguações preliminares ou de processo administrativo, sujeitará o faltante à multa de R$ 500,00 (quinhentos reais) a R$ 10.700,00 (dez mil e setecentos reais), conforme sua situação econômica, que será aplicada mediante auto de infração pela autoridade requisitante. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

Art. 26-A. Impedir, obstruir ou de qualquer outra forma dificultar a realização de inspeção autorizada pela SDE ou SEAE no âmbito de averiguação preliminar, procedimento ou processo administrativo sujeitará o inspecionado ao pagamento de multa de R$ 21.200,00 (vinte e um mil e duzentos reais) a R$ 425.700,00 (quatrocentos e vinte e cinco mil e setecentos reais), conforme a situação econômica do infrator, mediante a lavratura de auto de infração pela Secretaria competente. *(Artigo incluído pela Lei nº 10.149, de 21.12.2000)*

Art. 27. Na aplicação das penas estabelecidas nesta lei serão levados em consideração:

I - a gravidade da infração;

II - a boa-fé do infrator;

III - a vantagem auferida ou pretendida pelo infrator;

IV - a consumação ou não da infração;

V - o grau de lesão, ou perigo de lesão, à livre concorrência, à economia nacional, aos consumidores, ou a terceiros;

VI - os efeitos econômicos negativos produzidos no mercado;

VII - a situação econômica do infrator;

VIII - a reincidência.

CAPÍTULO IV

Conselho Administrativo de Defesa Econômica

Da Prescrição

Art. 28. Prescrevem em cinco anos as infrações da ordem econômica, contados da data da prática do ilícito ou, no caso de infração permanente ou continuada, do dia em que tiver cessado. *(Artigo revogado pela Lei nº 9.873, de 23.11.99)*

§ 1º Interrompe a prescrição qualquer ato administrativo ou judicial que tenha por objeto a apuração de infração contra a ordem econômica.

§ 2º Suspende-se a prescrição durante a vigência do compromisso de cessação ou de desempenho.

CAPÍTULO V

Do Direito de Ação

Art. 29. Os prejudicados, por si ou pelos legitimados do art. 82 da Lei nº 8.078, de 11 de setembro de 1990, poderão ingressar em juízo para, em defesa de seus interesses individuais ou individuais homogêneos, obter a cessação de práticas que constituam infração da ordem econômica, bem como o recebimento de indenização por perdas e danos sofridos, independentemente do processo administrativo, que não será suspenso em virtude do ajuizamento de ação.

TÍTULO VI

Do Processo Administrativo

CAPÍTULO I

Das Averiguações Preliminares

~~Art. 30. A SDE promoverá averiguações preliminares, de ofício ou à vista de representação escrita e fundamentada de qualquer interessado, das quais não se fará qualquer divulgação, quando os indícios de infração da ordem econômica não forem suficientes para instauração imediata de processo administrativo.~~
~~§ 1º Nas averiguações preliminares o Secretário da SDE poderá adotar quaisquer das providências previstas no art. 35, inclusive requerer esclarecimentos do representante.~~

Art. 30. A SDE promoverá averiguações preliminares, de ofício ou à vista de representação escrita e fundamentada de qualquer interessado, quando os indícios de infração à ordem econômica não forem suficientes para a instauração de processo administrativo. *(Redação dada Pela Lei 10.149, de 21.12.2000)*

§ 1º Nas averiguações preliminares, o Secretário da SDE poderá adotar quaisquer das providências previstas nos arts. 35, 35-A e 35-B, inclusive requerer esclarecimentos do representado ou de terceiros, por escrito ou pessoalmente. *(Redação dada Pela Lei nº 10.149, de 21.12.2000)*

§ 2º A representação de Comissão do Congresso Nacional, ou de qualquer de suas Casas, independe de averiguações preliminares, instaurando-se desde logo o processo administrativo.

§ 3º As averiguações preliminares poderão correr sob sigilo, no interesse das investigações, a critério do Secretário da SDE. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

Art. 31. Concluídas, dentro de sessenta dias, as averiguações preliminares, o Secretário da SDE determinará a instauração do processo administrativo ou o seu arquivamento, recorrendo de ofício ao Cade neste último caso.

CAPÍTULO II

Da Instauração e Instrução do Processo Administrativo

Art. 32. O processo administrativo será instaurado em prazo não superior a oito dias, contado do conhecimento do fato, da representação, ou do encerramento das averiguações preliminares, por despacho fundamentado do Secretário da SDE, que especificará os fatos a serem apurados.

ConsMelho Administrativo de Defesa Econômica

Art. 33. O representado será notificado para apresentar defesa no prazo de quinze dias.

§ 1° A notificação inicial conterá inteiro teor do despacho de instauração do processo administrativo e da representação, se for o caso.

§ 2° A notificação inicial do representado será feita pelo correio, com aviso de recebimento em nome próprio, ou, não tendo êxito a notificação postal, por edital publicado no Diário Oficial da União e em jornal de grande circulação no Estado em que resida ou tenha sede, contando-se os prazos da juntada do Aviso de Recebimento, ou da publicação, conforme o caso.

§ 3° A intimação dos demais atos processuais será feita mediante publicação no Diário Oficial da União, da qual deverão constar o nome do representado e de seu advogado.

§ 4° O representado poderá acompanhar o processo administrativo por seu titular e seus diretores ou gerentes, ou por advogado legalmente habilitado, assegurando-se-lhes amplo acesso ao processo na SDE e no Cade.

Art. 34. Considerar-se-á revel o representado que, notificado, não apresentar defesa no prazo legal, incorrendo em confissão quanto à matéria de fato, contra ele correndo os demais prazos, independentemente de notificação. Qualquer que seja a fase em que se encontre o processo, nele poderá intervir o revel, sem direito à repetição de qualquer ato já praticado.

~~Art. 35. Decorrido o prazo de apresentação da defesa, a SDE determinará a realização de diligências e a produção de provas de interesse da Secretaria, sendo-lhe facultado requisitar do representado, de quaisquer pessoas físicas ou jurídicas, órgãos ou entidades públicas, informações, esclarecimentos ou documentos, a serem apresentados no prazo de quinze dias, mantendo-se o sigilo legal, quando for o caso.~~
~~Parágrafo único. As diligências e provas determinadas pelo Secretário da SDE, inclusive inquirição de testemunha, serão concluídas no prazo de quarenta e cinco dias, prorrogável por igual período em caso de justificada necessidade.~~

Art. 35. Decorrido o prazo de apresentação da defesa, a SDE determinará a realização de diligências e a produção de provas de interesse da Secretaria, a serem apresentadas no prazo de quinze dias, sendo-lhe facultado exercer os poderes de instrução previstos nesta Lei, mantendo-se o sigilo legal quando for o caso. *(Redação dada pela Lei n° 10.149, de 21.12.2000)*

§ 1° As diligências e provas determinadas pelo Secretário da SDE, inclusive inquirição de testemunhas, serão concluídas no prazo de quarenta e cinco dias, prorrogável por igual período em caso de justificada necessidade. *(Redação dada pela Lei n° 10.149, de 21.12.2000)*

§ 2° Respeitado o objeto de averiguação preliminar, de procedimento ou de processo administrativo, compete ao Secretário da SDE autorizar, mediante despacho fundamentado, a realização de inspeção na sede social, estabelecimento, escritório, filial ou sucursal de empresa investigada, notificando-se a inspecionada com pelo menos vinte e quatro horas de antecedência, não podendo a diligência ter início antes das seis ou após às dezoito horas. *(Redação dada pela Lei n° 10.149, de 21.12.2000)*

§ 3° Na hipótese do parágrafo anterior, poderão ser inspecionados estoques, objetos, papéis de qualquer natureza, assim como livros comerciais, computadores e arquivos magnéticos, podendo-se extrair ou requisitar cópias de quaisquer documentos ou dados eletrônicos .*(Redação dada pela Lei n° 10.149, de 21.12.2000)*

Art. 35-A. A Advocacia-Geral da União, por solicitação da SDE, poderá requerer ao Poder Judiciário mandado de busca e apreensão de objetos, papéis de qualquer natureza, assim como de livros comerciais, computadores e arquivos magnéticos de empresa ou pessoa física, no interesse da instrução do procedimento, das averiguações preliminares ou do processo administrativo, aplicando-se, no que couber, o disposto no art. 839 e seguintes do Código de Processo Civil, sendo inexigível a propositura de ação principal. *(Artigo incluído pela Lei n° 10.149, de 21.12.2000)*

§ 1° No curso de procedimento administrativo destinado a instruir representação a ser encaminhada à SDE, poderá a SEAE exercer, no que couber, as competências previstas no *caput* deste artigo e no art. 35 desta Lei. *(Parágrafo incluído pela Lei n° 10.149, de 21.12.2000)*

§ 2° O procedimento administrativo de que trata o parágrafo anterior poderá correr sob sigilo, no interesse das investigações, a critério da SEAE. *(Parágrafo incluído pela Lei n° 10.149, de 21.12.2000)*

Art. 35-B. A União, por intermédio da SDE, poderá celebrar acordo de leniência, com a extinção da ação

Conselho Administrativo de Defesa Econômica

punitiva da administração pública ou a redução de um a dois terços da penalidade aplicável, nos termos deste artigo, com pessoas físicas e jurídicas que forem autoras de infração à ordem econômica, desde que colaborem efetivamente com as investigações e o processo administrativo e que dessa colaboração resulte: *(Artigo incluído pela Lei nº 10.149, de 21.12.2000)*

I - a identificação dos demais co-autores da infração; e *(Inciso incluído pela Lei nº 10.149, de 21.12.2000)*

II - a obtenção de informações e documentos que comprovem a infração noticiada ou sob investigação. *(Inciso incluído pela Lei nº 10.149, de 21.12.2000)*

§ 1º O disposto neste artigo não se aplica às empresas ou pessoas físicas que tenham estado à frente da conduta tida como infracionária. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 2º O acordo de que trata o *caput* deste artigo somente poderá ser celebrado se preenchidos, cumulativamente, os seguintes requisitos: *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

I - a empresa ou pessoa física seja a primeira a se qualificar com respeito à infração noticiada ou sob investigação; *(Inciso incluído pela Lei nº 10.149, de 21.12.2000)*

II - a empresa ou pessoa física cesse completamente seu envolvimento na infração noticiada ou sob investigação a partir da data de propositura do acordo; *(Inciso incluído pela Lei nº 10.149, de 21.12.2000)*

III - a SDE não disponha de provas suficientes para assegurar a condenação da empresa ou pessoa física quando da propositura do acordo; e *(Inciso incluído pela Lei nº 10.149, de 21.12.2000)*

IV - a empresa ou pessoa física confesse sua participação no ilícito e coopere plena e permanentemente com as investigações e o processo administrativo, comparecendo, sob suas expensas, sempre que solicitada, a todos os atos processuais, até seu encerramento. *(Inciso incluído pela Lei nº 10.149, de 21.12.2000)*

§ 3º O acordo de leniência firmado com a União, por intermédio da SDE, estipulará as condições necessárias para assegurar a efetividade da colaboração e o resultado útil do processo. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 4º A celebração de acordo de leniência não se sujeita à aprovação do CADE, competindo-lhe, no entanto, quando do julgamento do processo administrativo, verificado o cumprimento do acordo: *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

I - decretar a extinção da ação punitiva da administração pública em favor do infrator, nas hipóteses em que a proposta de acordo tiver sido apresentada à SDE sem que essa tivesse conhecimento prévio da infração noticiada; ou *(Inciso incluído pela Lei nº 10.149, de 21.12.2000)*

II - nas demais hipóteses, reduzir de um a dois terços as penas aplicáveis, observado o disposto no art. 27 desta Lei, devendo ainda considerar na gradação da pena a efetividade da colaboração prestada e a boa-fé do infrator no cumprimento do acordo de leniência. *(Inciso incluído pela Lei nº 10.149, de 21.12.2000)*

§ 5º Na hipótese do inciso II do parágrafo anterior, a pena sobre a qual incidirá o fator redutor não será superior à menor das penas aplicadas aos demais co-autores da infração, relativamente aos percentuais fixados para a aplicação das multas de que trata o art. 23 desta Lei. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 6º Serão estendidos os efeitos do acordo de leniência aos dirigentes e administradores da empresa habilitada, envolvidos na infração, desde que firmem o respectivo instrumento em conjunto com a empresa, respeitadas as condições impostas nos incisos II a IV do § 2º deste artigo. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 7º A empresa ou pessoa física que não obtiver, no curso de investigação ou processo administrativo, habilitação para a celebração do acordo de que trata este artigo, poderá celebrar com a SDE, até a remessa do processo para julgamento, acordo de leniência relacionado a uma outra infração, da qual não tenha qualquer conhecimento prévio a Secretaria. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 8º Na hipótese do parágrafo anterior, o infrator se beneficiará da redução de um terço da pena que lhe

Conselho Administrativo de Defesa Econômica

for aplicável naquele processo, sem prejuízo da obtenção dos benefícios de que trata o inciso I do § 4º deste artigo em relação à nova infração denunciada. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 9º Considera-se sigilosa a proposta de acordo de que trata este artigo, salvo no interesse das investigações e do processo administrativo. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 10. Não importará em confissão quanto à matéria de fato, nem reconhecimento de ilicitude da conduta analisada, a proposta de acordo de leniência rejeitada pelo Secretário da SDE, da qual não se fará qualquer divulgação. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

§ 11. A aplicação do disposto neste artigo observará a regulamentação a ser editada pelo Ministro de Estado da Justiça. *(Parágrafo incluído pela Lei nº 10.149, de 21.12.2000)*

Art. 35-C. Nos crimes contra a ordem econômica, tipificados na Lei nº 8.137, de 27 de novembro de 1990, a celebração de acordo de leniência, nos termos desta Lei, determina a suspensão do curso do prazo prescricional e impede o oferecimento da denúncia. *(Artigo incluído pela Lei nº 10.149, de 21.12.2000)*

Parágrafo único. Cumprido o acordo de leniência pelo agente, extingue-se automaticamente a punibilidade dos crimes a que se refere o *caput* deste artigo. *(Parágra único incluído pela Lei nº 10.149, de 21.12.2000)*

Art. 36. As autoridades federais, os direitos de autarquia, fundação, empresa pública e sociedade de economia mista e federais são obrigados a prestar, sob pena de responsabilidade, toda a assistência e colaboração que lhes for solicitada pelo Cade ou SDE, inclusive elaborando pareceres técnicos sobre as matérias de sua competência.

Art. 37. O representado apresentará as provas de seu interesse no prazo máximo de quarenta e cinco dias contado da apresentação da defesa, podendo apresentar novos documentos a qualquer momento, antes de encerrada a instrução processual.

Parágrafo único. O representado poderá requerer ao Secretário da SDE que designe dia, hora e local para oitiva de testemunhas, em número não superior a três.

Art. 38. A Secretaria de Acompanhamento Econômico do Ministério da Fazenda será informada por ofício da instauração do processo administrativo para, querendo, emitir parecer sobre as matérias de sua especialização, o qual deverá ser apresentado antes do encerramento da instrução processual. *(Redação dada pela Lei nº 9.021, de 30.3.95)*

Art. 39. Concluída a instrução processual, o representado será notificado para apresentar alegações finais, no prazo de cinco dias, após o que o Secretário de Direito Econômico, em relatório circunstanciado, decidirá pela remessa dos autos ao Cade para julgamento, ou pelo seu arquivamento, recorrendo de ofício ao Cade nesta última hipótese.

Art. 40. As averiguações preliminares e o processo administrativo devem ser conduzidos e concluídos com a maior brevidade compatível com o esclarecimento dos fatos, nisso se esmerando o Secretário da SDE, e os membros do Cade, assim como os servidores e funcionários desses órgãos, sob pena de promoção da respectiva responsabilidade.

Art. 41. Das decisões do Secretário da SDE não caberá recurso ao superior hierárquico.

CAPÍTULO III

Do Julgamento do Processo Administrativo pelo Cade

Art. 42. Recebido o processo, o Presidente do Cade o distribuirá, mediante sorteio, ao Conselheiro-Relator, que abrirá vistas à Procuradoria para manifestar-se no prazo de vinte dias. *(Redação dada pela Lei nº 9.069, de 29.6.95)*

Art. 43. O Conselheiro-Relator poderá determinar a realização de diligências complementares ou requerer novas informações, na forma do art. 35, bem como facultar à parte a produção de novas provas, quando entender insuficientes para a formação de sua convicção os elementos existentes nos autos.

Art. 44. A convite do Presidente, por indicação do Relator, qualquer pessoa poderá apresentar esclarecimento ao Cade, a propósito de assuntos que estejam em pauta.

Conselho Administrativo de Defesa Econômica                                    Page 16 of 24

Art. 45. No ato do julgamento em plenário, de cuja data serão intimadas as partes com antecedência mínima de cinco dias, o Procurador-Geral e o representado ou seu advogado terão, respectivamente, direito à palavra por quinze minutos cada um.

Art. 46. A decisão do Cade, que em qualquer hipótese será fundamentada, quando for pela existência de infração da ordem econômica, conterá:

I - especificação dos fatos que constituam a infração apurada e a indicação das providências a serem tomadas pelos responsáveis para fazê-la cessar;

II - prazo dentro do qual devam ser iniciadas e concluídas as providências referidas no inciso anterior;

III - multa estipulada;

IV - multa diária em caso de continuidade da infração.

Parágrafo único. A decisão do Cade será publicada dentro de cinco dias no Diário Oficial da União.

Art. 47. O Cade fiscalizará o cumprimento de suas decisões. *(Redação dada pela Lei nº 9.069, de 29.6.95)*

Art. 48. Descumprida a decisão, no todo ou em parte, será o fato comunicado ao Presidente do Cade, que determinará ao Procurador-Geral que providencie sua execução judicial.

Art. 49. As decisões do Cade serão tomadas por maioria absoluta, com a presença mínima de cinco membros.

Art. 50. As decisões do Cade não comportam revisão no âmbito do Poder Executivo, promovendo-se, de imediato, sua execução e comunicando-se, em seguida, ao Ministério Público, para as demais medidas legais cabíveis no âmbito de suas atribuições.

Art. 51. O Regulamento e o Regimento Interno do Cade disporão de forma complementar sobre o processo administrativo.

CAPÍTULO IV

Da Medida Preventiva e da Ordem de Cessação

Art. 52. Em qualquer fase do processo administrativo poderá o Secretário da SDE ou o Conselheiro-Relator, por iniciativa própria ou mediante provocação do Procurador-Geral do Cade, adotar medida preventiva, quando houver indício ou fundado receio de que o representado, direta ou indiretamente, cause ou possa causar ao mercado lesão irreparável ou de difícil reparação, ou torne ineficaz o resultado final do processo.

§ 1º Na medida preventiva, o Secretário da SDE ou o Conselheiro-Relator determinará a imediata cessação da prática e ordenará, quando materialmente possível, a reversão à situação anterior, fixando multa diária nos termos do art. 25.

§ 2º Da decisão do Secretário da SDE ou do Conselheiro-Relator do Cade que adotar medida preventiva caberá recurso voluntário, no prazo de cinco dias, ao Plenário do Cade, sem efeito suspensivo.

CAPÍTULO V

Do Compromisso de Cessação

~~Art. 53. Em qualquer fase do processo administrativo poderá ser celebrado, pelo Cade ou pela SDE ad referendum do Cade, compromisso de cessação de prática sob investigação, que não importará confissão quanto à matéria de fato, nem reconhecimento de ilicitude da conduta analisada. (Vide Lei nº 9.873, de 23.11.99)~~
~~§ 1º O termo de compromisso conterá, necessariamente, as seguintes cláusulas:~~
~~a) obrigações do representado, no sentido de fazer cessar a prática investigada no prazo estabelecido;~~
~~b) valor da multa diária a ser imposta no caso de descumprimento, nos termos do art. 25;~~