# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

CONSTRUTORA NOBERTO ODEBRECHT S.A., :

                Plaintiff,       :     Civil Action No.

v.

GENERAL ELECTRIC COMPANY, GENERAL :
ELECTRIC INTERNATIONAL, INC., GE
INFRASTRUCTURE, INC., GE POWER
SYSTEMS, INC., GE ENERGY LLC and
GE HYDRO POWER, INC.,

                Defendants.

---

**DECLARATION OF MARCELO ANTONIO MURIEL IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

MARCELO ANTONIO MURIEL, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a member of the law firm of Mattos Muriel Kestener Advogados. I hold a law degree from the University of Sao Paulo (class of 1985) and I am admitted to the Sao Paulo, Rio de Janeiro and Federal District Sections of the Brazilian Bar. I have more than 20 years' experience as a lawyer advising and representing multinational clients in cross-border transactions and litigation matters. I also hold a Certificate of Proficiency in English of the University of Cambridge (UK) and I am fluent in other languages. My curriculum vitae is appended hereto.

2. I submit this declaration to assist the Court in construing applicable Brazilian law related to the application for a preliminary injunction to enforce an exclusivity obligation voluntarily assumed by the GE Defendants. I have reviewed the Minutes of Meeting dated

-1-

January 11, 2006 ("January 11th Agreement"), the Non-Disclosure Agreement dated May 16, 2005 ("Confidentiality Agreement"), and the relevant correspondence between General Electric and Construtora Noberto Odebrecht S.A. ("CNO") relating to the Rio Madeira Project.

3. The Confidentiality Agreement and the January 11th Agreement are valid and lawful agreements under the laws of Brazil and would be enforceable in accordance with its terms.

4. The January 11th Agreement outlines the confidential commercial terms under which GE would participate in a consortium headed by CNO and would supply turbines for use in the Santo Antonio phase of the Rio Madeira project. In addition, section 5(a) of the January 11th Agreement contains an exclusivity provision that reads: "if GE does not enter the Construction Consortium or exits the Construction Consortium under any provision of this MOM [Agreement], then GE shall maintain the Confidentiality Agreement until its expiry and further agrees not to pursue this Project with any other Party."

5. The exclusivity provision set forth above does not violate any statutory provision of Brazilian Law or relevant public policy. Exclusivity provisions of this type are often used in the construction industry in connection with large projects undertaken by joint ventures or consortia. The purpose of demanding that a party enter into an exclusivity agreement as a condition of joining a bidding group or consortium is to require the prospective partner or consortium member to make a firm commitment to the group effort, knowing that they will be excluded from participating in the project altogether if they withdraw from the group. It is intended for the protection of the other members of the bidding group or consortium.

6. Section 5(a) of the January 11, 2006 Agreement also contains a short-hand

reference to the Confidentiality Agreement which makes the January 11, 2006 a confidential document pursuant to the terms of the Confidentiality Agreement.

7. Section 19 of the Confidentiality Agreement confers exclusive jurisdiction on the courts of the City of São Paulo for disputes arising from said Agreement. Forum selection clauses, however, are construed narrowly in Brazil. Under Brazilian law, Section 19 would be deemed to mean that the Courts of Sao Paulo would have exclusive jurisdiction over disputes arising from a violation of the non-disclosure obligations assumed in the Confidentiality Agreement, but not disputes generally among the parties on other subjects beyond the scope of the Agreement.

8. A Brazilian court would not extend the scope of the forum selection clause in the Confidentiality Agreement to the January 11th Agreement. Instead the court would construe the Confidentiality Agreement to apply only to disputes arising from the disclosure of the document or the information contained therein. A dispute over the commercial terms of the MOM, for example, would be beyond the scope of the Confidentiality Agreement and would not be subject to the forum selection provision.

9. Under Brazilian law, an anti-compete provision and a confidentiality agreement are considered separate and distinct obligations. GE's agreement in the January 11th Agreement "not to pursue this Project with any other Party" means that GE is barred from directly or indirectly selling turbines to a competing consortium, aiding or advising a rival consortium, or becoming a member of a consortium submitting a bid on the Madeira Project. This blanket prohibition even precludes GE from sharing its own trade secrets with CNO's competitors. The anti-compete provision is beyond the scope of the Confidentiality Agreement and, therefore, not

-3-

subject to the forum selection provision contained therein. As far as the Brazilian courts are concerned, CNO is free to sue the GE Defendants in whatever court has personal jurisdiction over them, including the Courts of New York. The general rule under Brazilian Civil Procedural Law is for lawsuits to be filed at defendant's domicile.

10. Brazilian law recognizes that improper disclosure of proprietary and confidential information may result in irreparable injuries which cannot be rectified by monetary damages. For that reason, article 798 of the Code of Civil Procedure determines that the interested party may seek specific performance of the contractual provision in question or injunctive relief, so as to avoid the irreparable injuries that would otherwise be caused by the contractual breach.

11. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at São Paulo, State of São Paulo, on September 12, 2007.

MARCELO ANTONIO MURIEL

**Marcelo A. Muriel**

- Law Degree of the University of São Paulo Law School, class of 1985
- Certificate of Proficiency in English by the University of Cambridge (UK) (June 1982), and conversation skills in English, French, Spanish and Japanese
- Admitted to the Brazilian Bar Association (São Paulo, Rio de Janeiro and Brasilia Chapters)
- Founding partner of Mattos Muriel Kestener Advogados, with offices in São Paulo and Brasília, DF (Brazil)
- Former partner of Pinheiro Neto Advogados (August 1983 through March 2005)
- From January through June 1992 - secondment to the law firm Nagashima & Ohno, in Tokyo
- Member of the International Bar Association
- Member of the Brazilian Arbitration Committee
- Member of the Latin American Committee on Arbitration of the International Chamber of Commerce – ICC, Paris
- Former reporting member of the Special Committee on Judiciary Reform at the São Paulo Chapter of the Brazilian Bar Association
- Board member and former president of the Brazilian Society of Studies on Asia and the Pacific Rim (SOBAP)
- Board Member and Coordinator of the Judiciary Committee of CESA, the Brazilian Association of Law Firms
- Chairman of the Board of Trustees of the Kunito Miyasaka Foundation, a charity devoted to cultural activities in Brazil
- Former chairman of the Arbitration Committee of the Brazilian Bar Association, São Paulo
- Over 20 years of experience in a variety of legal matters, with emphasis on cross-border litigation, product liability and tort litigation, corporate disputes, issues related to financial institutions, domestic and international arbitration