UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

CONSTRUTORA NORBERTO ODEBRECHT S.A., :
:
                     Plaintiff, :    07 Civ. 8014 (CM)
:
v. :
:
GENERAL ELECTRIC COMPANY, GENERAL :
ELECTRIC INTERNATIONAL, INC., GE :
INFRASTRUCTURE, INC., GE POWER :
SYSTEMS, INC., GE ENERGY LLC and :
GE HYDRO POWER, INC., :
:
                    Defendants. :

---

**UBIRATAN MATTOS**, pursuant to 28 U.S.C. §1746, declares as follows:

    1.    I am a member of the Brazilian bar and a partner in the law firm of Mattos Muriel Kestener Advogados. In 1977 I received my Juris Doctor degree from the University of São Paulo Law School and earned a Masters in Comparative Law from the University of Illinois Law School in 1981. For the past thirty years, I have practiced in the areas of complex civil litigation, antitrust, and international trade law. I am fluent in English. A true and correct copy of my curriculum vitae is appended hereto as exhibit 1.

    2.    I have been retained by plaintiff Construtora Norberto Odebrecht S.A. ("CNO") to represent the company in connection with an investigation commenced by the Secretariat de Direito Econômico ("SDE") in June of this year. The investigation was initiated after complaints were received by SDE from CNO's competitors in the construction business that CNO had entered into exclusivity/non-compete and confidentiality agreements with suppliers that had an anti-competitive effect on their

ability to participate in the bidding process for the construction and operation of the Santo Antônio and Jirau hydroelectric facilities on the Madeira River. The government announced in August that the auction would be held on October 30, 2007. More recently, the government announced the postponement of the auction to November 22, 2007.

3. An investigation is the first step in the administrative process leading up to a formal administrative process preparatory to charging an entity with anti-competitive practices. Under the applicable rules, the investigation is conducted informally and confidentially. Until a formal administrative proceeding is initiated, the target of the investigation has no right to confront witnesses, to know the charges, or to comment on the staff's report before it is made public.

4. CNO responded to questions from SDE and made a general presentation to SDE's staff on the Madeira River project. Despite repeated requests, CNO was not permitted to review complaints and factual submissions filed by its competitors and government agencies with SDE. In particular, SDE did not permit CNO to see the correspondence from any of the General Electric entities named as defendants in this action (collectively, "GE") and GE Hydro Inepar do Brasil S.A.("the GE Joint Venture").

5. I have only recently learned that the GE Joint Venture sent one letter to SDE on July 27, 2007, in response to a letter request from SDE on July 19, 2007. In it, the GE Joint Venture stated that it was a party to only one agreement with CNO – the Confidentiality Agreement (a true and correct copy of the GE Joint Venture's letter to SDE dated July 27, 2007 is appended hereto as exhibit 2 together with a certified English translation).

2

6. I have recently further learned that GE sent correspondence to SDE, as well. It is clear from this correspondence that Stanley Smith, the General Manager for Power Generation Sales for GE Energy, based in Schenectady, New York, has been GE's key contact with the Brazilian government during the SDE investigation.

7. For example, on August 1, 2007, Mr. Smith sent a letter to SDE in response to SDE's letter request to GE dated July 27, 2007. Mr. Smith submitted a copy of the January 11, 2006 Agreement with this letter and detailed the exclusivity provisions contained therein. Mr. Smith also made assertions concerning the negotiation of the January 11, 2006 Agreement and GE's decision to withdraw from the consortium on March 16, 2005 (a true and correct copy of Stanley Smith's letter to SDE dated August 1, 2007 is appended hereto as exhibit 3 together with a certified English translation).

8. In addition, Mr. Smith sent another letter to SDE on August 7, 2007, responding to a letter request from SDE dated August 2, 2007. Among other things, Mr. Smith expressed the view that all entities under the control of the General Electric group were subject to the January 11, 2006 Agreement and, more specifically, that the GE Joint Venture was subject to this Agreement. Mr. Smith also acknowledged CNO's position that the GE Joint Venture was free to manufacture equipment for the Madeira River project, so long as it used only its own resources, and not resources from other GE entities. However, Mr. Smith complained that this release of the GE Joint Venture was insufficient because the GE Joint Venture did not have the information and technology necessary to design the turbines and generators; that information and technology resides with GE entities outside Brazil and the GE Joint Venture does not have the right to obtain it. Thus, the GE Joint Venture's participation in the Madeira River project would be

limited to serving as a subcontractor of other competitors with such capability, such as Alstom or Hitachi (a true and correct copy of Stanley Smith's letter to SDE dated August 7, 2007 is appended hereto as exhibit 4 together with a certified English translation).

9. In response to a further letter request from SDE dated August 31, 2007, Mr. Smith sent a letter to SDE on September 3, 2007. In this letter, Mr. Smith detailed certain information received from CNO and confirmed that GE only returned this information to CNO on May 17, 2007 (despite the fact that it withdrew from the consortium on March 16, 2005). Mr. Smith also made an unsupported assertion that it would be possible for GE to compete against CNO without infringing on CNO's intellectual property, but stated that GE had not yet decided whether to join another consortium (a true and correct copy of Stanley Smith's letter to SDE dated September 3, 2007 is appended hereto as exhibit 5 together with a certified English translation).

10. CNO did not get a chance to review the entire file compiled by SDE until it challenged the agency's action in the Federal Court of Brasilia pursuant to a writ of mandamus.

11. The representations in GE's motion to dismiss that CNO had an opportunity to litigate before SDE are simply untrue. This was a confidential investigation conducted by the SDE staff, not an adversary proceeding. SDE did not disclose its intentions or the timing of any action it intended to take.

12. I had no advance notice that SDE would issue an order, much less a preventive measure enjoining enforcement of the exclusivity provision in the January 11, 2006 Agreement. My first knowledge of the order was when it was published in the Official Gazette on September 14, 2007, two days after CNO filed its complaint in New

4

York. When we were finally able to review the agency file, it was apparent that the order was hastily issued. The SDE staff had written to the Ministry of Mines and Energy on September 13 requesting information pertinent to the investigation.

13. As explained more fully in the accompanying declaration of Professor Grandino, the issuance of a preventive measure (injunction) purporting to invalidate the exclusivity agreement in effect between CNO and GE at the commencement of a formal administrative procedure before CNO had an opportunity to be heard was a violation of CNO's right to due process. There was no reason to anticipate that SDE would short circuit the administrative process by issuing a preventive measure.

14. As the SDE's Technical Note acknowledges, exclusivity agreements are not per se illegal (Technical Note at ¶69). The SDE staff concluded, however, that there was probable cause to issue a preventive measure based on *ex parte* self-serving communications from CNO's competitors and from government ministries.

15. The SDE preventive measure is not a complete and final determination on the merits. It is based on a preliminary finding that an antitrust law violation may be present (*fumus boni iuris*), but it is not a determination on the merits. SDE is merely an investigatory agency that may make referrals to the Conselho Administrativo de Defesa Econônomica ("CADE"), a quasi-judicial body. Only CADE can make a final determination in the administrative sphere that the exclusivity/non-compete agreement between CNO and GE restrains competition. This decision on the merits can only be made after assuring the accused party the right of full defense and an adversarial proceeding. In the case under analysis, SDE overstepped its bounds by purporting to invalidate the exclusivity agreement at the same time that it commenced a formal

5

administrative proceeding and only then gave CNO the right to submit a defense. This is totally unusual in the Brazilian system. CNO was only allowed access to the dockets, and granted a period of time to file its defense, after the preventive measure (decision) was drafted, approved, signed and published in the Official Gazette.

16.    The analysis in the Technical Note is conspicuously flawed. It is based almost entirely on inaccurate or misleading factual representations submitted by CNO's competitors, GE, and/or the Ministry of Mines and Energy. For example, the contention that the information provided by CNO to GE is in the public record or is out-dated is demonstrably false. In fact, CNO shared critical information with GE in the year between the signing of the original Confidentiality Agreement on May 16, 2005 and the withdrawal of GE from the consortium on March 15, 2006. The hydrological profile compiled by CNO (which is not part of the public record) alone contains invaluable information for the design of the rotors used in the turbines. The importance of the information shared with GE is evidenced by the fact that Construtora Carmargo Corrêa, CNO's chief rival, recently said publicly that it was eager to get its hands on CNO's design for the power house (a true and correct copy of the article in the September 15th edition of *Valor*, Brazil's leading business and economics publication, is appended hereto as exhibit 6 together with a certified English translation).

17.    Another glaring error in the Technical Note is that it ignores the possibility that foreign manufacturers could lease industrial facilities in Brazil to build turbines and, thereby, avoid the 14% import tax. VA Tech Hydro, one of CNO's turbine suppliers, does not have its own facilities in Brazil. Consequently, SDE's conclusion that foreign manufacturers cannot submit competitive bids for turbines is simply wrong. Similarly,

6

the Report does not address the fact that the Brazilian government itself is responsible for limiting the number of vendors bidding for the Madeira River project by imposing a 14% tax on imported turbines and generators. This is a discriminatory trade practice that creates a trade barrier against foreign competition.

18.     Based on its flawed analysis, SDE found that there was probable cause that the exclusionary clause had an anti-competitive effect. This is a not a final or definitive ruling on the merits that the exclusionary clause in the GE agreement is anti-competitive and invalid. In theory, SDE could vacate the preventive measure after the formal administrative process which was initiated by the Order is concluded. If SDE finds that the exclusionary clause is anti-competitive after a full-blown administrative hearing, the next step in the process is to refer the matter to CADE for an adjudication on the merits. Only CADE can make the determination that the exclusivity agreement is invalid. As a practical matter, however, the formal process will not be concluded until after the auction is held.

19.     CNO sought immediate review of the SDE order by filing a writ of mandamus in federal court. The standards of review pursuant to a writ of mandamus are very narrow. The reviewing court is only allowed to determine whether the agency (here SDE) exceeded its statutory authority in taking the action being challenged. This is not a review of the merits of the administrative action. Consequently, the denial of a writ of mandamus does not mean that the court approves the agency action or that the action is correct.

On September 17, 2007, the first business day subsequent to the date on which the SDE order was published, a federal court in Brasilia stayed the SDE order and the preventive

measure until SDE had an opportunity to respond and a full hearing could be held. (A true and correct copy of the Federal Court order dated September 17, 2007 is appended hereto as exhibit 7 together with a certified English translation).

20. GE claims in its brief that it did not know of the stay because the proceeding in the federal court was confidential. This is disingenuous. As soon as the stay was entered, everyone in the industry knew that it was in effect. Also, the order was publicized in all the main Brazilian newspapers and on the internet. AMEL, the bidding consortium headed by Construtora Carmargo Corrêa, even had time to file a brief seeking reversal of the stay.

21. The judge conducted a hearing on September 20, 2007, at which attorneys from SDE, CADE and the federal prosecutor's office were present. A federal prosecutor submitted an *amicus curiae* brief in which he purported to set forth CADE's position on the SDE order (a true and correct copy of the CADE *amicus curiae* brief is appended hereto as exhibit 8 together with a certified English translation). This brief takes the position that SDE had sufficient authority under Brazilian law to issue the injunction canceling the exclusivity provision of the January 11, 2006 Agreement and also takes the position that SDE had sufficient grounds to issue the injunction.

22. In response to information presented at the hearing and in the *amicus curiae* brief, the judge reversed her earlier decision and revoked the injunction staying the SDE order (a true and correct copy of the Federal Court order dated September 20, 2007 is appended hereto as exhibit 9 together with a certified English translation). The court did so because it concluded that the stringent requirements for a writ of mandamus were not met.

8

23. CNO has appealed the September 20, 2007 decision to the intermediate federal court of appeals. A decision is expected to be rendered in the course of next week.

24. Separately, CNO has also appealed the preventive measure to CADE and will file early next week its defense in the administrative proceedings initiated by SDE.

25. CNO's efforts seeking to reverse the SDE preventive measure in the administrative and judicial spheres either in Brazil or in any other jurisdiction is per se neither a violation of nor noncompliance with such administrative decision. Such efforts are considered, under Article 5, item XXXV of the Brazilian Federal Constitution, as the exercise of the right to recourse to the Judiciary, in which the right of full defense and the right to adversarial proceedings are enshrined (Federal Constitution, Article 5, item LV).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: São Paulo, Brazil
       September 27, 2007

_____
UBIRATAN MATTOS