# EXHIBIT 8

OFFICE OF THE ADVOCATE GENERAL OF THE UNION
OFFICE OF THE FEDERAL PROSECUTOR GENERAL
OFFICE OF THE PROSECUTOR GENERAL OF CADE

---

/stamp: Federal Justice System, 1st Court – DF, p. 982/

/date stamp: Clerk's Office, 1st Court, 20 SEP 2007, 5:49PM, 003778/

**H.E. the Federal Judge of the 1st Federal Court of the Judiciary Section of the Federal District.**

| | |
|---|---|
| **Records No.** | 2007.34.00.033182-4 |
| **Class** | Writ of Mandamus |
| **Petitioner** | Construtora Norberto Odebrecht S.A. |
| **Respondent** | Secretariat of Economic Law, Ministry of Justice |
| **CADE Pet. No.** | 508/2007 |

The **Administrative Council of Economic Protection (CADE)**, a Semi-Autonomous Federal Agency, by the Federal Prosecutor subscribed below, hereby appears before Your Honor, in compliance with the decision appearing on p. 196, to provide the following comments and make the requests below:

---

**OFFICE OF THE ADVOCATE GENERAL OF THE UNION**
**OFFICE OF THE FEDERAL PUBLIC PROSECUTOR**
**OFFICE OF THE FEDERAL PROSECUTOR OF CADE**

---

1. The dispute pertains to the legality and validity of the confidentiality and exclusivity clauses that the petitioner imposed on suppliers of generators and turbines. According to the petitioner, the clauses are legal and valid as they seek to protect its commercial, individual, and private interests, having shared strategic and confidential technical information regarding its engineering and electromechanical designs with turbine suppliers.

2. SDE has already described and substantially demonstrated to the Court, through its information that the facts submitted by the petitioner are false. The information alleged to be confidential are in the public domain and available on ANEEL's page on the worldwide computer network. Full reimbursement is provided for. Finally, most of the sensitive information, which requires confidentiality on the part of turbine suppliers, is transmitted from the latter to the petitioner and not vice-versa.

3. Therefore, there is no legitimate ground to support the exclusivity, non-compete, and confidentiality clause to the extent that it was imposed by the petitioner on its potential suppliers, which begs the question: what is the purpose of the clause?

4. From an antitrust perspective, all confidentiality, non-compete, and exclusivity clauses, particularly the latter two, must be placed under rigorous scrutiny as these clauses are all too often used to create obstacles to competition, raising the costs for competitors and fostering the foreclosure of the market.[1] In this case, the tactic, as SDE indicates, consists of raising the costs of competitors' access to suppliers of turbines with manufacturing facilities in Brazil, thus preventing them from participating in the auction in a competitive manner.

5. The Brazilian Competition Protection System, which includes CADE, is responsible for reviewing the anti-competitive aspects of such clauses, to determine: (1) the period of its effectiveness; (2) the

---

[1] Herbert Hovenkamp, Federal Antitrust Policy: The Law of Competition and its Practice, p. 436, 2005, West: St. Paul.

**OFFICE OF THE ADVOCATE GENERAL OF THE UNION**
**OFFICE OF THE FEDERAL PUBLIC PROSECUTOR**
**OFFICE OF THE FEDERAL PROSECUTOR OF CADE**

---

volume and size of the obstacles to entry; (3) the structure of the sector and the viability of competition after such clauses are imposed, among other potential anti-competitive effects.[2]

6. In its decision, SDE reviewed all of these factors; it confirmed and demonstrated to this Court that: the petitioner promoted the foreclosure of the market by imposing an exclusivity clause on all suppliers of generators and bulb turbine with manufacturing facilities in Brazil, thus raising the costs or making it unfeasible for competitors to participate in the auction. The barriers to entry are insurmountable, as the importation of generators and turbines is unfeasible, either due to tax costs or to the impossibility of obtaining BNDES credit lines, and the structure set up by the petitioner impedes or raises difficulties for the participation of competitors in the auction. In its review of the market structure, SDE demonstrated and proved that any consortium, to be competitively viable, must imply the participation of a company on the scale of Alstom/GE/Voith Siemens, all bound by an exclusivity clause imposed by the petitioner. The purpose of the period of effectiveness of the clauses is to hinder the competition, as the companies with an exclusivity and confidentiality clause will not be able to supply its products to another consortium even if the petitioner is not successful in its bid.

7. Based on this data and in light of a confidentiality clause that is at least ironic, as it seeks to protect information that is in the public domain, and an exclusivity and non-compete clause imposed with the clear purpose of promoting the foreclosure of the market and leaving the petitioner with no competition in the auction, thus allowing it to impose whatever price it wishes on the government authority, SDE, in order to effectively foster free competition, voided the non-compete clause entered into between the petitioner and GE and partially voided the exclusivity obligation on the part of Alstom, VA Tech, and Voith Siemens (after the auction).

---

[2] Hovenkamp, *Op. cit.*, p. 443.

**OFFICE OF THE ADVOCATE GENERAL OF THE UNION**
**OFFICE OF THE FEDERAL PUBLIC PROSECUTOR**
**OFFICE OF THE FEDERAL PROSECUTOR OF CADE**

---

8. Without arguments against the merit of SDE's decision, the petitioner clings to groundless formal elements.

9. According to the petitioner, SDE can only investigate and order the cessation of an anti-competitive practice but cannot render a decision through a preventive measure. Therefore it would not have functional jurisdiction to impose the measure that it did. Against a simplistic argument, the literal meaning of the law: Law No. 8,884/94, Art. 2, VII, Art. 14, XI, and Art. 52.

10. The administrative process was carried out in accordance with due process and SDE informed and demonstrated that the petitioner was provided with the opportunity to submit a defense, exercising its right to adversarial proceedings and influencing the conviction and judgment of the proper administrative authority.

11. The discussion regarding the nature of the preventive measure, as to whether it constitutes interim relief or an injunction, is more cerebral than concrete. The Code of Civil Procedure (CPC) itself, in Art. 273, § 7, which applies to the administrative process in the context of antitrust (Law No. 8,884/94, Art. 83), establishes the fungibility between interim relief and an injunction. What is important, and that is the spirit of Law No. 8,884/94, Art. 52, opening paragraph, is that SDE was faced with an urgent situation, which is the case with interim relief and injunctions. In its assessment, based on facts and evidence indicated in its defense and technical note, it concluded that the lapse of time without effective and efficient action on the part of the public administration (Cf. Art. 37, opening paragraph) would cause irreparable or difficult-to-repair damage injury to the market, rendering the potential final result of the administrative process ineffective.

12. The situation will be irreversible if SDE does not make use of its legal prerogatives; while the SBDC acts to protect the entire collective, which is a diffuse and non-quantifiable interest (Law No. 8,884/94, Art. 1, sole paragraph), the petitioner acts to protect its merely individual, private and economic interest, which may be easily quantified and reestablished by compensation in

**OFFICE OF THE ADVOCATE GENERAL OF THE UNION**
**OFFICE OF THE FEDERAL PUBLIC PROSECUTOR**
**OFFICE OF THE FEDERAL PROSECUTOR OF CADE**

---

the context of civil reparation. Therefore, in the final analysis, the measure imposed by SDE is always reversible for the petitioner from an economic point of view. The same is not true with respect to the collective, which includes the entire population, consumers and competitors, which, due to the administration's inertia in making use of its prerogatives of urgency, will be irreparably and irrevocably subjected to a bidding process with a single participant, which will impose whatever price it wishes on the collective, as a result of the petitioner's foreclosure of the market with contractual clauses that are in violation of current legislation regarding competition, as SDE concluded and demonstrated.

13. The petitioner states that the principle of equity in the bidding process and free competition would have been violated and that SDE's measure would be clearly politically motivated. The argument is flawed in all respects. In fact, what SDE sought to specifically remove was an abusive contractual position that the petitioner created for the purpose, in SDE's understanding, of foreclosing the market in order to avoid competition and maximize its profits in a public bid, to the detriment of the collective.

14. Furthermore, based on the evidence gathered by SDE, the voidance declaration at the time was required. The Civil Code (CC), Art. 2,035, sole paragraph, establishes that *"No convention shall prevail if it is in contradiction to the public order..."* The 1988 Constitution changed the concept of public economic order in the context of conventions and contracts in an effort to direct them toward economic efficiency and social benefit. Therefore, the validity of a contractual convention must not be analyzed solely from the perspective of the Civil Code or specific legislation but also from the point of view of the right to competition (antitrust) and consumer protection.[3] Under circumstances such as these, SDE's action does not constitute a violation of the principle of equity but rather a way to skirt the abusive and illegal situation created by the petitioner, which foreclosed the market through an invalid clause in order to derive advantages in an auction in which it imposed exceptional costs to its competitors.

---

[3] François Terré *et al.* Droit Civil: Les Obligations, p. 380/383, 2002, Dalloz: Paris.

**OFFICE OF THE ADVOCATE GENERAL OF THE UNION**
**OFFICE OF THE FEDERAL PUBLIC PROSECUTOR**
**OFFICE OF THE FEDERAL PROSECUTOR OF CADE**

---

15. According to the petitioner, the procedure is illegal because the time limit of 8 days established under Law No. 8,884/94, Art. 32, was not observed. Any delay on the part of the public administration may be due to several reasons: high workload; staffing that is insufficient for the needs of the administration; the normal time required to comply with due process and its formalities, as well as and above all, the very complexity of the matter under administrative review.[4] All of these legitimate reasons affected the case and led to the justifiable use of time. Time limits, under penalty of becoming unrealistic, cannot be applied without giving consideration to the complexity, impact, and subtleties of the case at hand, lest it impairs the consistent and precise judgment of the public administration, which would ultimately go against the principle of efficiency (Cf. Art. 37, opening paragraph), thus preventing it from ensuring and bringing about the values of free market, free competition, and consumer protection (Cf. Art. 170, IV and V, and Art. 173, § 4). Furthermore, the established legal time limit is only a guideline, as it is an inadequate limit based on the principles of reason and proportionality[5] under penalty of violating the rights of the collective.

16. The requirements for the granting of an injunction are not fulfilled. There is no risk from the delay, as the petitioner will be able to participate in the bidding process under equal conditions and competitively with respect to the other participants. The risk of delay, however, is real for the collective, as the stay of the effects of SDE's decision exposes the collective to an auction without competition in a market foreclosed by the petitioner. There is no indication of good law in favor of the petitioner, as shown by the evidence gathered by SDE in the administrative process, which required a detailed investigation and study conducted jointly with several ministries and regulatory agencies. Therefore the petition for an injunction must be denied.

---

[4] Richard J. Pierce Jr., Administrative Law Treatise, vol. II, p. 833, 2002. Aspen Law: New York.
[5] H.W.R. Wade, Administrative Law, p. 221, 2004. Oxford University Press: Oxford.

---

OFFICE OF THE ADVOCATE GENERAL OF THE UNION
OFFICE OF THE FEDERAL PUBLIC PROSECUTOR
OFFICE OF THE FEDERAL PROSECUTOR OF CADE

---

17. The process must be terminated without a review of the merit, since a contract clause does not constitute a net and certain right that would justify the granting of a writ of mandamus, as SDE very well indicated. On the merit, the petition must be fully denied, for the reasons above. Finally, the CADE requests that its intervention be accepted under the condition of *amicus curiae* pursuant to Law No. 8,884/94, Art. 89.

Brasília, September 20, 2007

/s/

**Marcos Benaccino**
Federal Prosecutor

/s/

**Adalberto do Rêgo Maciel Neto**
Federal Prosecutor

# TRANSLATORS' CERTIFICATE

I, Timothy Yuan, hereby certify that I speak and write both the Portuguese and English languages; that I have translated the foregoing **9/20/2007 CADE Amicus Brief** to the best of my ability; and that it is a true and correct translation to the best of my knowledge, information, and belief.

_____   9/27/07
Signature                                                                             Date

KAVITHA REDDY
NOTARY PUBLIC-STATE OF NEW YORK
No. 02RE6154611
Qualified in New York County
My Commission Expires October 23, 2010




**ADVOCACIA-GERAL DA UNIÃO**
**PROCURADORIA-GERAL FEDERAL**
**PROCURADORIA FEDERAL DO CADE**

**Excelentíssimo Senhor Juiz Federal da 1ª Vara Federal da Seção Judiciária do Distrito Federal.**

| | |
|---|---|
| **Autos n.º** | 2007.34.00.033182-4 |
| **Classe** | Mandado de Segurança |
| **Requerente** | Construtora Norberto Odebrecht S.A. |
| **Requerido** | Secretaria de Direito Econômico da Secretaria de Econômico do Ministério da Justiça |
| **Pet. CADE n°** | 508 /2007 |

**Conselho Administrativo de Defesa Econômica - CADE,** autarquia federal, vem, pelo Procurador Federal *in fine* subscrito, à presença de V. Exa., em cumprimento às decisão de fls. 196, expor e requerer o quanto segue:



Setor Comercial Norte - SCN - Quadra 2 - Projeção C -CEP 70712-902 - Brasília - DF
Tel. (61) 3426.8412 – Fax (61) 3426.8568

**ADVOCACIA-GERAL DA UNIÃO**
**PROCURADORIA-GERAL FEDERAL**
**PROCURADORIA FEDERAL DO CADE**

---

1. A lide gira em torno da legalidade e validade das cláusulas de confidencialidade e exclusividade que a impetrante impôs a fornecedores de geradores e turbinas. Segundo a impetrante as cláusulas são legais e válidas porque visam proteger seus interesses comerciais, individuais e particulares, já que disponibilizou informações técnicas estratégicas e confidenciais de seus projetos civis e eletromecânicos aos fornecedores de turbinas.

2. A SDE já expôs e comprovou de forma substanciosa a este MM. Juízo, por meio de suas informações que os fatos apresentados pela impetrante são falsos. As informações ditas confidenciais são de domínio público e estão disponíveis na página da ANEEL na rede mundial de computadores. Há previsão de ressarcimento integral. Por fim a maior parte das informações sensíveis, que exigem confidencialidade, em relação aos fornecedores de turbina é transmitida por estes à impetrante e não o contrário.

3. Portanto, não há causa legitima que sustente a cláusula de exclusividade, não concorrência e confidencialidade na extensão imposta pela impetrante aos seus potenciais fornecedores, cabendo a pergunta: a que se presta tal cláusula?

4. Do ponto de vista do antitruste toda cláusula de confidencialidade, não concorrência e exclusividade, sobretudo as duas últimas, deve ser submetida a escrutínio severo, pois, não raras vezes, tais cláusulas são empregadas como forma de dificultar o exercício da concorrência, elevando os custos dos rivais promovendo o fechamento do mercado[1], no caso, a tática, ao que indica a SDE, se consubstancia em aumentar os custos de acesso dos rivais aos fornecedores de turbinas com planta no Brasil, impedindo que participem competitivamente do leilão.

5. Cabe ao Sistema Brasileiro de Defesa da Concorrência, ao qual a SDE integra, ponderar a anti-competitividade de tais cláusulas observando: (1) a duração de sua imposição; (2) o

---

[1] Herbert Hovenkamp, Federal Antitrust Policy: The Law of Competition and its Practice, p. 436, 2005, West: St Paul.



**ADVOCACIA-GERAL DA UNIÃO**
**PROCURADORIA-GERAL FEDERAL**
**PROCURADORIA FEDERAL DO CADE**

volume e o tamanho de barreiras à entrada; (3) a estrutura da indústria e a viabilidade da competição após a imposição de tais cláusulas, dentre outros possíveis efeitos anti-competitivos[2].

6. A SDE na sua decisão analisou todos estes fatores; comprovou e demonstrou a este MM. Juízo que: a impetrante promoveu o fechamento do mercado, vez que impôs cláusula de exclusividade a todos os fornecedores de geradores e turbinas de bulbo com planta no Brasil, aumentando os custos ou inviabilizando a participação de rivais no certame. As barreiras à entrada são insuperáveis, vez que a importação de geradores e turbinas é inviável seja pelos próprios custos tributários, seja pela impossibilidade de acesso a linhas de crédito por meio do BNDES, o quadro montado pela impetrante impede ou dificulta a participação de empresas rivais no leilão. Ao analisar a estrutura do mercado a SDE demonstrou e provou que qualquer consórcio competitivamente viável implica necessariamente na participação de uma empresa do porte da Alstom/GE/Voith Siemens, todas com cláusula de exclusividade imposta pela impetrante. A duração das cláusulas visa obstar a concorrência, vez que mesmo que a impetrante perca o leilão, as empresas com cláusula de exclusividade e confidencialidade não poderão fornecer seus produtos ao consórcio vencedor.

7. A partir destes dados, diante de uma cláusula de confidencialidade que é no mínimo irônica já que visa proteger informações que são de domínio público, cláusula de exclusividade e não concorrência imposta com o claro propósito de promover o fechamento do mercado a fim de que a impetrante não tenha concorrentes no leilão, permitindo que imponha o preço que bem entender ao poder público, a SDE visando promover a livre concorrência de forma efetiva pronunciou a nulidade da cláusula de não-concorrência da impetrante/GE e a nulidade parcial da obrigação de exclusividade por parte de Alstom, VA Tech e Voith Siemens (pós-leilão).

---

[2] Hovenkamp, *Op. cit.* p. 443.



**ADVOCACIA-GERAL DA UNIÃO**
**PROCURADORIA-GERAL FEDERAL**
**PROCURADORIA FEDERAL DO CADE**

---

8. Sem argumentos contra o mérito da decisão da SDE, a impetrante se apega a elementos formais, os quais não se sustentam.

9. Segundo a impetrante a SDE somente pode investigar e determinar a cessação da prática anti-concorrencial, mas não pode decidir em sede de medida preventiva. Logo não teria competência funcional para impor a medida que impôs. Contra argumentação primária, a literalidade da lei: Lei 8.884/94, art. 2º, VII, art. 14, XI e art. 52.

10. O processo administrativo seguiu o devido processo legal, a SDE informa e provou que foi dada ao impetrante oportunidade de apresentar defesa, exercendo o contraditório, influenciando a convicção e o juízo da autoridade administrativa competente.

11. A discussão a respeito da natureza da medida preventiva, se é forma de tutela antecipada ou medida cautelar é mais cerebrina que concreta, o próprio CPC, art. 273, § 7º, que se aplica ao processo administrativo no âmbito do antitruste (Lei 8.884/94, art. 83), prevê a fungibilidade entre tutela cautelar e antecipada. O que importa, e este é o espírito da Lei 8.884/94, art. 52, "caput", é que a SDE se deparou diante de uma situação de urgência, gênero no qual se incluem as tutelas cautelares e antecipadas, já que a seu juízo, fundada em fatos e provas expostos em sua defesa e em sua nota técnica, constatou que o transcurso do tempo sem uma atuação efetiva e eficiente por parte da administração pública (Cf, art. 37, "caput") imporiam ao mercado lesão irreparável ou de difícil reparação, tornando ineficaz o possível resultado final do processo administrativo.

12. Haverá irreversibilidade se a SDE não se utilizar de suas prerrogativas legais, pois enquanto o SBDC atua na defesa de toda a coletividade, interesse difuso e não quantificável (Lei 8.884/94, art. 1º, parágrafo único), a impetrante autua na defesa de seu interesse meramente individual, privado e econômico que pode ser facilmente quantificado e restabelecido por meio de indenização em



Página 4



**ADVOCACIA-GERAL DA UNIÃO**
**PROCURADORIA-GERAL FEDERAL**
**PROCURADORIA FEDERAL DO CADE**

---

sede de reparação civil. Portanto, em última instância, a medida imposta pela SDE é sempre reversível do ponto de vista econômico para o impetrante. O mesmo não se passa em relação à coletividade, que abrange toda a população, consumidores e concorrentes, que diante da inércia da administração em utilizar suas prerrogativas de urgência serão submetidos irreparavelmente e irrevogavelmente a licitação de um só concorrente que imporá o preço que desejar à coletividade, já que segundo juízo fundamentado da SDE, o impetrante fechou o mercado com base em cláusulas contratuais que ofendem a legislação da concorrência.

13. Afirma a impetrante que o princípio da igualdade no processo licitatório e livre concorrência teria sido violado e que a medida da SDE teria motivação claramente política. O argumento é falho em todos os aspectos. Na verdade o que SDE procurou estirpar pontualmente foi uma posição contratual abusiva criada pela impetrante com o propósito, segundo entendimento da SDE, de fechar mercado a fim de evitar concorrência e maximizar seus lucros em concorrência pública em prejuízo da coletividade.

14. Ademais, pelas provas apuradas pela SDE, o pronunciamento da nulidade naquela ocasião se fazia necessário. O CC, art. 2.035, parágrafo único, determina que *"Nenhuma convenção prevalecerá se contrariar preceitos de ordem pública..."*. A Constituição de 1988 transformou o conceito de ordem pública econômica no âmbito das convenções e contratos, há uma orientação no sentido de canalizá-los a uma eficiência econômica e utilidade social. Por conseguinte, a validade de uma convenção contratual não deve ser analisada apenas do ponto de vista do Código Civil ou legislação específica, mas também do ponto de vista do direito da concorrência (antitruste) e de proteção dos consumidores[3]. Em uma circunstância como esta a atitude da SDE não se constitui em violação ao princípio da igualdade, mas uma forma de contornar a situação abusiva e ilegal criada pela impetrante que fechava mercado por meio de uma cláusula inválida, a fim de se beneficiar de um leilão ao qual impunha custos anormais aos seus competidores.

---

[3] François Terré *et al*, Droit Civil: Les Obligations, p. 380/383, 2002, Dalloz: Paris.

**ADVOCACIA-GERAL DA UNIÃO**
**PROCURADORIA-GERAL FEDERAL**
**PROCURADORIA FEDERAL DO CADE**



15. Segundo a impetrante o procedimento é ilegal porque não foi cumprido o prazo de 8 dias imposto pela Lei 8.884/94, art. 32. Eventual demora por parte da administração pública pode ter diversas causas: carga de trabalho elevada; estrutura de pessoal precária e aquém das necessidades da administração, natural consumo de tempo exigido pelo cumprimento do devido processo legal e suas formalidades, bem como e sobretudo, a própria complexidade da matéria objeto de julgamento administrativo[4]. Todas estas causas, causas legítimas, incidiram no caso e levaram ao consumo justificável de tempo. Limites de tempo, sob pena de se tornarem irreais, não podem ser aplicados sem considerar a complexidade, impacto e sutilezas do caso concreto, sob pena de prejudicar o julgamento consistente e apurado por parte da administração pública, o que acabaria por negar vigência ao princípio da eficiência (CF, art. 37, "caput"), impedindo-a de garantir e concretizar os valores do livre mercado, livre concorrência e defesa do consumidor (CF, art. 170, IV e V c.c. art. 173, § 4º). Ademais o prazo legal estipulado é apenas diretivo, por se tratar de prazo impróprio regido pelos princípios da razoabiliade e proporcionalidade[5] sob pena de violar direitos da coletividade.

16. Não estão presentes os requisitos para concessão da liminar. Não há risco da demora, pois a impetrante poderá participar do processo licitatório em igualdade de condições e competição com os demais concorrentes. Perigo da demora há para a coletividade, visto que suspender os efeitos da decisão da SDE é expor aos administrados a um leilão sem competição, de mercado fechado pela impetrante. Não há fumaça do bom direito em favor do impetrante, como restou apurado pelas provas colacionadas pela SDE no processo administrativo que exigiu investigação minuciosa e estudo em parceria com vários ministérios e agências reguladoras. Desta feita, há que se negar provimento à liminar requerida.

---

[4] Richard J. Pierce Jr., Administrative Law Treatise, vol. II, p. 833, 2002, Aspen Law: New York.
[5] H.W.R. Wade, Administrative Law, p. 221, 2004, Oxford University Press: Oxford.





**ADVOCACIA-GERAL DA UNIÃO**
**PROCURADORIA-GERAL FEDERAL**
**PROCURADORIA FEDERAL DO CADE**

---

17. O processo deve ser extinto sem julgamrno do mérito, vez que cláusula contratual não se constitui em direito liquido e certo que legitime a impetração de mandado de segurança, como muito bem exposto pela SDE. No mérito, há que se negar provimento integral da demanda por conta das razões acima expostas. Por fim, requer o CADE que seja deferida sua intervenção no feito na condição de *amicus curiae,* na forma da Lei 8.884/94, art. 89.

Brasília, 20 de setembro de 2007.

Marcos Benaccnio
Procurador Federal

Adalberto do Rêgo Maciel Neto
Procurador Federal